UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,                    CASE NO: 14-20550-CR-ALTONAGA-5

      Plaintiff,

v.

LAZARO DANIEL COLLAZO,

      Defendant.

_____/

**DEFENDANT'S, LAZARO DANIEL COLLAZO, COLLECTIVE REPLY TO OPPOSITION OF THE OFFICE OF THE COMMISSIONER OF BASEBALL AND UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR THE ISSUANCE OF RULE 17(c) SUBPOENAS AND TO COMPEL THE UNITED STATES ATTORNEY'S OFFICE AND MAJOR LEAGUE BASEBALL TO COMPLY WITH THE <u>SUBPOENAS PRIOR TO TRIAL</u>**

The Defendant, LAZARO DANIEL COLLAZO, by and through undersigned counsel, hereby files his Collective Reply to the Opposition of the Office of the Commissioner of Baseball (hereinafter "MLB's Response") and United States' Response (hereinafter "USAO's Response") to Defendant's Motion for the Issuance of Rule 17(c) Subpoenas and to Compel the United States Attorney's Office and Major League Baseball to Comply with the Subpoenas Prior to Trial (hereinafter "Defendant's Motion").[1] In support of Defendant's Motion and the present Reply, Defendant states as follows:

## I.    <u>MEMORANDUM OF LAW</u>

Here, both the Rule 17(c) Subpoena to MLB and the USAO satisfy the 1) relevancy; 2) admissibility/evidentiary; and 3) specificity standard set forth in <u>*Nixon*</u> and its progeny, and thus Defendant's Motion should be granted and an Order entered issuing the subject Subpoenas.

---

[1] As both the Government and MLB have raised similar grounds in their respective Responses, the undersigned is filing a collective Reply to address the legal and factual issues raised in both Responses. The length of the present Reply is due to the fact that the undersigned counsel is filing one combined Reply to two separate Responses by the USAO and MLB.



QUINTERO BROCHE
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

The purpose and importance of subpoenas duces tecum and subpoenas in general to the judicial process are well known. The authority of courts to subpoena witnesses and evidence is a corollary of the duty to testify at judicial proceedings. *United States v. Liddy, 354 F. Supp. 208, 211 (D.D.C. 1972).* This duty to come forward with information relevant to the controversy at hand has been recognized as a fundamental instrument of justice since the earliest days of Anglo-American law. *Id.*

The *Nixon* Court concluded that to compel production of documents under Rule 17(c), the party seeking production "must clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity." *418 U.S. 683, 700, 94 S. Ct. 3090 (1974).* A defendant may obtain materials not subject to discovery under Rule 16, Fed. R. Crim. P., pursuant to a Rule 17(c) Subpoena, "as long as they are evidentiary." *U.S. v. Arditti, 955 F.2d 331,345 (5th Cir. 1992)(citing Bowman Dairy Co. v. U.S., 341 U.S. 214, 219, 71 S.Ct. 675, 678 (1951).* "Every subpoena must be a good faith effort…to obtain evidence." *Id.*

The first prong of this test—relevance—requires the Court to assess whether the documents sought have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See Fed.R.Evid. 401; See also United States v. Libby, 432 F. Supp. 2d 26, 31 (D.D.C. 2006).*[2] If the documents are deemed relevant, the Court must then determine whether they would be admissible. This inquiry is largely governed by the Federal Rules of Evidence. Under these Rules, documents sought pursuant to a Rule 17(c) subpoena can be deemed admissible for a variety of

---

[2] Collazo's position as to the relevance of the requested documents is set forth in detail in Defendant's Motion, as well as further expanded upon in the following portions of the instant Reply.



QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

purposes, including impeachment. *Nixon, 418 U.S. at 701, 94 S.Ct. 3090*. In addition to seeking documents that are both relevant and admissible, a Rule 17(c) subpoena must also be specific. The *Nixon* Court recognized that in some instances it may be impossible to "describe fully" the documents; therefore, the Court concluded that the specificity requirement could be satisfied if there is a "sufficient likelihood," demonstrated through rational inferences, that the documents being sought contain relevant and admissible evidence. *Nixon, 418 U.S. at 700, 94 S.Ct. 3090*. For the following reasons, both the proposed Rule 17(c) Subpoena to MLB and the USAO satisfy the standards in *Nixon* and should be issued by this Court.

### A.  LEGAL ISSUES COMMON TO BOTH MLB AND THE USAO'S RESPONSES

In each of their respective responses, MLB and the USAO raised unsupported arguments that the requests set forth in the subject Rule 17(c) Subpoenas were not sufficiently specific and constituted a fishing expedition by Collazo, that the records sought would not be admissible, and that Collazo is unable to obtain pre-trial production of impeachment evidence via a Rule 17(c) Subpoena. As set forth below, the arguments by MLB and the USAO are legally and factually unsupported. Furthermore, Federal case law clearly demonstrates Collazo's entitlement to the production of responsive records.

### THE REQUESTS IN THE RULE 17(C) SUBPOENAS TO THE USAO AND MLB ARE SUFFICIENTLY SPECIFIC TO LEAD TO RELEVANT AND EVIDENTIARY DOCUMENTS, AND ARE NOT INTENDED AS A FISHING EXPEDITION.

The specificity requirement ensures that Rule 17(c) subpoenas are used only to secure for trial certain documents or sharply defined groups of documents. *United States v. Anderson, 31 F. Supp. 2d 933, 945 (D. Kan. 1998)*. A request will usually be sufficiently specific where it limits documents to a reasonable period of time and states with reasonable precision the subjects to which

3



the documents relate. *United States v. RW Prof'l Leasing Servs. Corp., 228 F.R.D. 158, 162 (E.D .N.Y.2005)*. "Exquisite specificity" is not required. *United States v. Poindexter, 727 F.Supp. 1501, 1510 (D.D.C.1989)*. It is important to remember that "one of the major purposes of the specificity requirement is to provide the subpoenaed party or other party having standing with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility." *Anderson, 31 F.Supp.2d at 945*.

In *Nixon*, the Watergate special prosecutor was permitted to obtain audio tapes that the president was trying to retain, because he had shown that "there was **sufficient likelihood** that each of the tapes contain[ed] conversations relevant to the offenses charged in the indictment." *Nixon, 418 U.S. at 700*(emphasis added). The requesting party met this burden by offering sworn testimony of participants in the recorded conversations, or by **giving reasons that permitted a rational inference of relevance**, as well as by making a sufficient preliminary showing of admissibility. *Id.*

Similarly, the court in *LaRouche Campaign* held that the subpoenas complied with Rule 17(c), even though the defense counsel did not know what was in the out-takes of the NBC interviews of the witness. *841 F.2d at 1179–80*. Instead, the court referred to the *Nixon* standard of "a sufficient likelihood," and even the "likelihood" that facial expressions might show animus by the interviewee. *Id. (citing Nixon, 418 U.S. at 700, 94 S.Ct. 3090); See also United States v. King, 194 F.R.D. 569 (E.D. Va. 2000)*(Subpoena duces tecum requesting production of all unedited, unbroadcast videotapes, commonly known as "outtakes," of television reporter's interview of Government witness in criminal case, as well as any notes made by reporter during the interview satisfied requirements of relevancy, admissibility, and specificity, and was therefore enforceable;

4

witness's statements clearly and directly concerned allegations of the indictment, there was no uncertainty whether witness would testify, and statements in the interview would be useful for impeachment, and request was specific to any tapes or notes from conversations with witness).

Comparatively, in *U.S. v. Noriega*, which both MLB and the USAO rely on in support of their "fishing expedition" argument, the court found the subpoenas did not comply with Rule 17(c) specificity requirement. *764 F. Supp. 1480 (S.D. Fla. 1991)("*if the moving party cannot reasonably specify the information contained or **believed to be contained** in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused). In *Noriega*, the prosecution could have no idea what was on the tapes being requested since they did not even exist when the first subpoena was issued. *Id.* The prosecution simply hoped to find something of possible value which might bolster its case against Noriega. *Id. at 1493*. The subpoenas thus constituted a broad dragnet aimed at bringing in anything and everything contained in the recording regardless of their identifiable or foreseeable significance to the charges at issue in *Noriega*.

Here, unlike *Noriega*, the requests in both Rule 17(c) Subpoenas are reasonably calculated to lead to exculpatory and/or evidentiary material. The undersigned counsel has painstakingly undertaken to support each allegation and/or request with supporting documentation giving rise to a "sufficient likelihood" and/or "rational inference" that the requested documents will be evidentiary and relevant to the issues herein. *See Nixon, 418 U.S. at 697*. As a result, the requests herein go well beyond the "mere hope that some exculpatory material might turn up," which the *Cuthbertson* Court cautions against. *630 F.2d 139, 146 (3d Cir. 1980)*.

QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446–0303 • Fax: (305) 446–4503

As the Court in *Liddy* noted, here we have an "aggregation of comparable circumstances not likely to be repeated often in the future, but the entire situation evinces nothing but good faith on the part of" Collazo. *See United States v. Liddy, 354 F. Supp. 208, 216 (D.D.C. 1972)*(denying motion to quash subpoenas for interview outtakes in a criminal trial in which a chief government witness, having been offered immunity from prosecution, gave a lengthy and apparently comprehensive first person narrative account to newspaper reporters of the activities he would testify about at trial and requiring that the newspaper, now in possession of the only other known set of tapes, produce those tapes to give the defendants access to any impeachment evidence the recordings may contain). Here, the simultaneous investigations undertaken by the USAO and MLB pertain to the same individuals and entities at issue in this cause. These simultaneous and overlapping investigations led to inconsistencies in the documentary evidence, as well as witness statements which are relevant to Collazo's defense herein.

A similar situation arose in *U.S. v. Young*, where the defendant sought an order from the court granting leave to issue a subpoena duces tecum to Philip Fulmer,[3] the head football coach for the University of Tennessee, and another subpoena duces tecum to the National Collegiate Athletic Association ("NCAA"),[4] both non-parties to this criminal proceeding. *03-20400 BV, 2004 WL*

---

[3] The proposed subpoena directed to Philip Fulmer, the head football coach at the University of Tennessee, sought pretrial production of "all notes, recordings (audio or video), and any other memorialization or documentation made by Fulmer or his attorney of any interviews or discussions with the NCAA and with Tom Culpepper, a University of Alabama "booster", regarding the NCAA's investigation of the University of Alabama Football program in 2000 to 2002. In particular, it sought Fulmer and his attorney's notes and memorialization of interviews with the NCAA on March 9, 2000, May 23, 2000, and August 7, 2000; their notes of Fulmer and his attorney's eight-hour meeting with Tom Culpepper sometime before August 7, 2000; and Fulmer's one and one-half hour secret tape recording of the meeting with Culpepper." *Young, 2004 WL 784840, at *1.*

[4] With regard to the NCAA, Young sought "all memoranda, summaries, notes, recordings, or any other memorialization or documentation relating to information provided to the NCAA by Tom Culpepper, Phillip Fulmer, and any other confidential sources in connection with the NCAA's investigation of the University of Alabama Football program in 2000 to 2002; the case summary produced by the NCAA Enforcement Staff in connection with the investigation,; any recording or transcription of the November 17, 2001 hearing before the NCAA Committee on



QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

*784840 (W.D. Tenn. 2004)*. The court found that the requested documents were evidentiary and relevant and thus satisfied *Nixon*. *Id*. The defendant in *Young* was a local business man and a supporter of the University of Alabama, who was charged in a three-count indictment. *Id*. The indictment alleged that the defendant paid $150,000 in cash to a coach to ensure that a High School football player, Albert Means, would sign a letter of intent, attend college, and play football at the University of Alabama. *Id*.

In *Young*, the NCAA investigation of the University of Alabama's football program and recruiting practices focused on the same allegations and activities that gave rise to the indictment against the defendant. *Id*. *at \*3*. The NCAA investigation conducted by its Enforcement Staff consisted of numerous interviews of various high school and college football coaches and other individuals. *Id*. The investigation culminated in an Infractions Report issued in February 2002. Mr. Fulmer was identified as the confidential source referenced in the NCAA report. *Id*. In granting Young's Motion, the court concluded "clearly, the subject matter of the items sought by the defendant in the subpoenas are directly related to the allegations in the pending indictment against him, and the witnesses interviewed provided information to the NCAA about the subject matter at issue in this case." *Id*. Here, Collazo is requesting that this Court make the same rational and founded conclusions that the *Young* Court made in issuing the Rule 17(c) Subpoenas to Mr. Fulmer and the NCAA. As a result of the foregoing, Collazo's proposed Rule 17(c) Subpoenas to the USAO and MLB are crafted with a "sufficient likelihood" to lead to relevant and/or exculpatory evidence.

---

Infractions; and transcript, recordings, interview notes, summaries, or other memorialization of witness interviews conducted by the NCAA in connection with the investigation, including interviews that took place subsequent to the issuance of the infractions report, specifically interviews with Lynn Lang pursuant to the terms of Lang's plea agreement with the federal prosecutors."



QUINTERO BROCHE

75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446–0303 • Fax: (305) 446–4503

**DEFENDANT'S MOTION AND REPLY SET FORTH A SUFFICIENT PRELIMINARY SHOWING THAT THE REQUESTED DOCUMENTS ARE ADMISSIBLE/EVIDENTIARY UNDER _NIXON_.**

A defendant must make only a "sufficient preliminary showing that…the subpoenaed [documents] contain evidence admissible with respect to the offenses charged in the indictment." _See_ _Nixon_, _418 U.S. at 700, 94 S.Ct. at 3103._ Documents sought pursuant to a Rule 17(c) Subpoena can be deemed admissible for a variety of purposes, including impeachment. _Nixon_, _418 U.S. at 701, 94 S.Ct. 3090_; _See also_ _LaRouche Campaign_, _841 F.2d 1176, 1180 (1st Cir.1988)_(concluding that it was proper to disclose impeachment evidence before trial pursuant to a Rule 17(c) subpoena because the "putative key witness, whose general testimony is already known, is scheduled to testify"); _King, 194 F.R.D. at 574_("where it is known with certainty before trial that the witness will be called to testify, the admissibility determination, within the meaning of _Nixon_, can be made before trial, and the statements properly may be considered evidentiary"); _U.S. v. Carter_, 15 F.R.D. 367, 369 (D.D.C 1954)("manifestly a subpoena duces tecum may be used only for the production of documents that are admissible in evidence, and in addition, at most, for the production of documents that may be used for the purpose of impeaching a witness called by the opposing party"); _United States v. King_, 194 F.R.D. 569 (E.D. Va. 2000)(exculpatory evidence in the possession of third parties is subject to a subpoena duces tecum).

Admittedly, it will often be difficult at the pretrial stage to determine with precision the admissibility of certain documents; therefore, if a document is arguably relevant and admissible under the Rules of Evidence, the _Nixon_ "evidentiary" requirement is likely satisfied. _United States v. Libby_, _432 F. Supp. 2d 26, 31 (D.D.C. 2006)._

QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

In *Nixon*, the court concluded that there was a sufficient preliminary showing that each of the subpoenaed tapes contained evidence admissible with respect to the offenses charged in the indictment. *418 U.S. at 700-02, 94 S. Ct. at 3104.* The *Nixon* Court noted that "recorded conversations may also be admissible for the limited purpose of impeaching the credibility of any defendant who testifies or any other coconspirator who testifies. Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial. Here, however, there are other valid potential evidentiary uses for the same material, and the analysis and possible transcription of the tapes may take a significant period of time." *Id.* In *LaRouche Campaign* the court ruled that evidence of "inconsistent statements and bias" by a prosecution witness are "relevant evidence, **admissible at trial**." *841 F.2d 1180 (emphasis added).*

The other valid uses alluded to by *Nixon*, which are also applicable here, are set forth in detail in the factually similar case of *U.S. v. Young*. The *Young* court identified such "other valid potential evidentiary uses" as:

> As in *Nixon,* the items sought here appear to have valid potential evidentiary uses other than simply for impeachment. For example, the information contained in these memorializations may be used to refresh the memory of Culpepper about matters of which he previously had knowledge should he take the stand. They may also contain substantive matters that could be used by Young as part of his defense. Young indicates that Coach Fulmer may be called as a witness by the defense. His records could be used to refresh his recollection. Also, Belt, in his affidavit, offers his legal opinion that after reviewing the pending indictment against Young and having seen the NCAA's files, the materials he reviewed 'will provide admissible evidence in this case, as well as impeachment matters.' As in *Nixon,* the sought items should be disclosed. *Young, 2004 WL 784840, at *4.*

Here, as in *Young* and *Nixon*, there are many admissible evidentiary uses for the responsive documents sought herein. Collazo, via Defendant's Motion and this Reply, has met his



QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

preliminary showing of admissibility and thus the Rule 17(c) Subpoenas to the USAO and MLB should be issued by this Court.

### IMPEACHMENT EVIDENCE IS SUBJECT TO RULE 17(C).

In this Circuit, under *Silverman*, impeachment materials, including prior statements of the witness, may be subpoenaed by a Rule 17(c) subpoena. *United States v. Brown*, No. 11-60285, 2013 WL 1624205, at *4 (S.D. Fla. Apr. 15, 2013)(citing *United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir.1984)). Documents sought under Rule 17(c) for impeachment purposes have generally been deemed by other courts to satisfy *Nixon's* relevance and admissibility requirements. *See, Nixon, 418 U.S. at 701, 94 S.Ct. 3090*; *See also LaRouche Campaign*, 841 F.2d at 1180 (concluding that it was proper to disclose impeachment evidence before trial pursuant to a Rule 17(c) subpoena because the "putative key witness, whose general testimony is already known, is scheduled to testify"); *Cuthbertson II, 651 F.2d at 195*; *King, 194 F.R.D. at 569*("witness statements useful for impeachment purposes are evidentiary within the meaning of *Nixon*, and within the meaning of *Iozia*, 13 F.R.D. at 338, 340–41, the decision which *Nixon* held to supply the test for Rule 17(c) subpoenas"); *Liddy, 478 F.2d at 587–88*(pretrial production of impeachment testimony subject to interest and discretion of trial court in preventing unfairness and trial delays)(separate opinion of Leventhal, J.).

The rationale offered for generally eschewing the use of Rule 17(c) to secure impeachment, is inapplicable here, where Collazo is seeking the production of documents pertaining to prior statements made by the Government's star witnesses, Anthony Bosch and Carlos Acevedo, among others, who will undoubtedly be testifying at trial against Collazo. *See LaRouche Campaign, 841 F.2d at 1180* (when a person is almost certain to testify as a witness at trial and there is an indication

QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

of what that testimony will be, then pre-trial production is appropriate); *See also King, 194 F.R.D. at 575.*

As set forth in *United States v. Liddy*,

> When a witness has testified to facts material in the case, it is provable by way of impeachment that he has previously made statements relating to these same facts which are inconsistent with his present testimony. The making of these previous statements may be drawn out in cross-examination of the witness himself, or, if on such cross-examination the witness has denied making the statement, or has failed to remember it, the making of the statement may be proved by another witness....The theory of attack by prior inconsistent statements is not based on the assumption that the present testimony is false and the former statement true but rather upon the notion that talking one way on the stand and another way previously is blowing hot and cold, and raises a doubt as to the truthfulness of both statements. *United States v. Liddy*, 354 F. Supp. 208, 212 (D.D.C. 1972)(*citing* C. McCormick, Handbook of the Law of Evidence, (1954 ed.) at 63).

Furthermore, if the witness, after being afforded an opportunity to explain or deny the statement, does not admit having made the prior inconsistent statement, the statement itself is admissible as an exhibit. Fed.R.Evid. 613(b); *See also United States v. Truslow*, 530 F.2d 257, 264 (4th Cir.1975).

As a result of the foregoing it is clear that impeachment evidence to be used against witnesses at trial is not only subject to a Rule 17(c) Subpoena in this Circuit, but such documents also satisfy the admissibility standard of *Nixon*.

## B. **LEGAL ISSUES SPECIFIC TO THE USAO'S RESPONSE**

On December 8, 2014, the Government filed its Response to Defendant's Motion, opposing the issuance of the proposed Rule 17(c) Subpoena to the USAO. Beyond the arguments addressed in Section I(A) of the instant Reply, the USAO in its response has taken the unsupported position that the requests in the subject Rule 17(c) Subpoena are barred by Rule 16, *Fed. R. Crim. P.*, that the *Bowman* decision does not authorize the use of a Rule 17(c) Subpoena to reach beyond Rule

11



QUINTERO BROCHE
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

16, and that agreements which are too loose and/or vague are not subject to disclosure by the Government.

The facts herein create a substantial likelihood that the Government has documents in its care, custody, and control which are subject to a Rule 17(c) Subpoena beyond the requirements of Rule 16. *See Bowman, 341 U.S. 214, 220, 71 S.Ct. 675, 679, 95 L.Ed. 879.* To the extent that the Government continues to contend that there are no responsive documents in existence (ie. "there have been zero non-prosecution agreements in this case"),[5] the undersigned office requests that any documents responsive to the subject request(s) be produced to the Court for an *in-camera* inspection to determine whether or not such documents do exist, and if such documents exist whether Collazo is entitled to production. It is important to note that the undersigned's request for such documents was precipitated by the language of the Government's response via e-mail, giving rise to the reasonable inference that such agreements existed, but would not be subject to disclosure pursuant to *Brady*, etc.[6]

For the following reasons, Collazo's proposed Rule 17(c) Subpoena to the USAO only seeks the disclosure of relevant and evidentiary documents, in a good faith effort to obtain relevant evidence herein, and therefore the Rule 17(c) Subpoena to the USAO should be issued.

## THE *BOWMAN* COURT APPROVED THE LANGUAGE IN THE REQUESTS MADE BY COLLAZO TO THE USAO.

"There was no intention to exclude from the reach of process of the defendant any material that had been used before the grand jury or could be used at the trial. In short, any document or

---

[5] *See the USAO's Response, Page 9.*
[6] In response to the undersigned's November 10, 2014 e-mail to the Government requesting the documents sought in the proposed Rule 17(c) subpoena, the Government advised that "the USAO will not comply w/ any of those requests, as we don't view them as anything that are required to be disclosed &/or provided to you under any discovery or Brady rule."



QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

other materials, admissible as evidence, obtained by the Government by solicitation or voluntarily from third persons is subject to subpoena." *Bowman, 341 U.S. 214, 220, 71 S.Ct. 675, 679, 95 L.Ed. 879*. "Rule 17(c) may be used to obtain only evidentiary materials." *U.S. v. Cherry, 876 F.Supp. 547, 552 (S.D.N.Y.1995)(citing Bowman, 341 U.S. at 221, 71 S.Ct. 675)*. The Rule "is designed as an aid for obtaining relevant evidentiary material that the moving party may use at trial" even though the Government does not intend to use the same. *See Cuthbertson I, 630 F.2d at 144*.

The *Bowman* Court explained the reach of its decision, stating:

> Rule 16 deals with documents and other materials that are in the possession of the Government and provides how they may be made available to the defendant for his information. In the interest of orderly procedure in the handling of books, papers, documents and objects in the custody of the Government accumulated in the course of an investigation and subpoenaed for use before the grand jury and on the trial, it was provided by Rule 16 that the court could order such materials made available to the defendant for inspection and copying or photographing. In that way, the control and possession of the Government is not disturbed. Rule 16 provides the only way the defendant can reach such materials so as to inform himself. **But if such materials or any part of them are not put in evidence by the Government, the defendant may subpoena them under Rule 17(c) and use them himself.** It would be strange indeed if the defendant discovered some evidence by the use of Rule 16 which the Government was not going to introduce and yet could not require its production by Rule 17(c). **There may be documents and other materials in the possession of the Government not subject to Rule 16. No good reason appears to us why they may not be reached by subpoena under Rule 17(c) as long as they are evidentiary.** That is not to say that the materials thus subpoenaed must actually be used in evidence. It is only required that a good-faith effort be made to obtain evidence. *Bowman Dairy Co. v. United States, 341 U.S. at 219-20 (1951)(emphasis added)*.

Here, Collazo's third request to the USAO in the subject Rule 17(c) Subpoena was crafted in direct reliance on the language of the subject subpoena in *Bowman*.[7] As set forth in *Bowman*, the

---

[7] Request No.3 states "Copies of any and all documents, reports, memorandums, and/or communications turned over (either by solicitation or voluntarily) to the USAO from a third person and/or entity in connection with the investigation concerning Biogenesis of America, LLC., Lazaro Collazo, and/or the related distribution of Performance



QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

fact that such evidence is not subject to Rule 16 disclosure or will not be used as evidence, does not shield the production of such documents from a Rule 17(c) Subpoena, such as that proposed by Collazo.

### UNWRITTEN AGREEMENTS BETWEEN THE GOVERNMENT AND WITNESSES ARE SUBJECT TO THE REACH OF A RULE 17(C) SUBPOENA.

*Giglio* requires the government to disclose an agreement between a witness and the government that might motivate the witness to testify. *Tarver v. Hopper, 169 F.3d 710, 716 (11th Cir. 1999).* The government duty is to disclose evidence of **any understanding or agreement** as to prosecution of a key government witness. *See Brown v. Wainwright, 785 F.2d 1457, 1464 (11th Cir. 1986); See also Bell v. Bell, 512 F.3d 223, 233 (6th Cir. 2008)*("the existence of a less formal, unwritten or tacit agreement is also subject to *Brady*'s disclosure mandate"); *U.S. v. Sanfilippo, 564 F.2d 176, 178 (5th Cir.1977)*("the fact that the history of a witness shows that he might be dishonest does not render cumulative evidence that the prosecution promised immunity for testimony").

The wide-ranging panoply of agreements that are subject to disclosure was emphasized by the Eleventh Circuit as:

---

Enhancing Substances to minors and/or major league baseball players, including but not limited to Case Nos.: 14-cr-20555-DPG , 14-cr-20556-DPG, and 14-cr-20550-CMA." *See Exhibit 1 of Defendant's Motion*. Comparatively, the relevant portion of the subpoena in *Bowman*, which the Supreme Court explicitly approved, stated "'all documents, books, papers and objects (except memoranda prepared by Government counsel, and documents or papers solicited by or volunteered to Government counsel which consist of narrative statements of persons or memoranda of interviews), obtained by Government counsel, in any manner other than by seizure or process, (a) in the course of the investigation by Grand Jury No. 8949 which resulted in the return of the indictment herein, and (b) in the course of the Government's preparation for the trial of this cause, if such books, papers, documents and objects, (a) have been presented to the Grand Jury; or (b) are to be offered as evidence on the trial of the defendants, or any of them, under said indictment.'" *Bowman, 341 U.S. at 217, 71 S. Ct. at 677 (1951)*.

14



QUINTERO BROCHE™

75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

> *Giglio* does not require that the word 'promise' is a word of art that must be specifically employed. *Brown v. Wainwright, 785 F.2d 1457, 1464–65 (11th Cir.1986)*. Nor is the phrase "any understanding or agreement" limited to bona fide enforceable grants of immunity. *Haber v. Wainwright*, 756 F.2d 1520, 1524 (11th Cir.1985). "Even mere 'advice' by a prosecutor concerning the future prosecution of a key government witness may fall into the category of discoverable evidence since it constitutes an informal understanding which could directly affect the witness's credibility before the jury." *Id.* This Circuit has emphasized that "the thrust of *Giglio* and its progeny has been to ensure that the jury know the facts that might motivate a witness in giving testimony." *Alderman v. Zant*, 22 F.3d 1541, 1553-54 (11th Cir. 1994).

As a result of the foregoing, Collazo is entitled to the production of any and all agreements, promises, understandings between the Government and the witnesses against Collazo. Therefore, the USAO is not shielded from compliance with the Rule 17(c) Subpoena simply because they maintain that no material agreements exist, beyond those provided, where there are facts tending to show that the Government's star witnesses have been led to believe they will receive benefits beyond their plea agreements.

In the event, the Government maintains its position that there are no agreements, promises, understandings, with the witnesses in this cause beyond those already disclosed, then the Government should have no issue with compiling all materials in any way responsive to Defendant's request for subpoena production of any such unwritten agreements, and submitting these materials for in-camera inspection by this Court to first determine whether anything responsive exists in the first place. In the event this Court were to determine that the Government is not in possession of anything constituting unwritten agreements, promises, or understandings, as referenced above, then Defendant's requests for the same would be moot, and this Court would

15

QUINTERO BROCHE™

75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

be left to ponder why the Government did not previously advise of this fact from the outset rather than force the Defendant to file the instant Motion.[8]

### ANALYSIS OF DEFENDANT'S SPECIFICALLY TAILORED REQUESTS SUPPORT DEFENDANT'S ENTITLEMENT TO THE ISSUANCE OF THE RULE 17(c) SUBPOENA TO THE USAO.

Careful review of each of the requests for records/evidence contained in the Defendant's proposed Rule 17(c) Subpoena to the USAO reveals that under federal law, Defendant's requests are proper, that Defendant is entitled to the materials sought, and that the Government's opposition to production of the sought materials is meritless. In his proposed Subpoena, Mr. Collazo requested the following:

i.   *Copies of any and all communications, including but not limited to e-mails, telephonic recordings, facsimile transmissions, and/or letters, between your office and Anthony P. Bosch (Case No.: 14-cr-20555-DPG); Carlos J. Acevedo (Case No.: 14-cr-20556-DPG); Jorge A. Velazquez (Case No.: 14-cr-20550-CMA-2); Paulo Berejuk (Case No.: 14-cr-20550-CMA-6); Christopher B. Engroba (Case No.: 14-cr-20550-CMA-3); Juan C. Nunez (Case No.: 14-cr-20550-CMA-4); Yuri Sucart (Case No.: 14-cr-20550-CMA-1); and prior counsel for Lazaro D. Collazo (Case No.: 14-cr-20550-CMA-5). This request includes any and all communications with the above listed individuals' attorney(s).*

The Government's Response alleges that the recent Eleventh Circuit decision in *Doe No.1* is inapplicable to the circumstances herein because Collazo is not pursuing a civil cause of action under the Crime Victim Rights Act ("CVRA"). However, the *Doe* decision contains no language that would reasonably require that its holding be limited solely to the arena of a civil

---

[8] "There have been zero non-prosecution agreements executed by the Government and Collazo's coconspirators in this case." *See USAO's Response, Page 7.* Comparatively, in response to the undersigned's November 10, 2014 e-mail to the Government requesting the documents sought in the proposed Rule 17(c) subpoena, the Government advised that "the USAO will not comply w/ any of those requests, as we don't view them as anything that are required to be disclosed &/or provided to you under any discovery or Brady rule." This is not the position that the Government has now taken, in fact the Government's initial position gave rise to a reasonable inference that these documents existed, but would not be produced. *See Defendant's Motion, Page 6.*

16



QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446–0303 • Fax: (305) 446–4503

lawsuit under the CVRA. The _Doe_ Court expressly found that disclosure of plea negotiations/communications between the Government and counsel for the defendant is subject to a Rule 17(c) subpoena. Here, such a decision is relevant, regardless of the fact that it was applied in the context of a CVRA cause of action. The importance of such a distinction is that the _Doe_ Court noted that to be subject to a Rule 17(c) Subpoena, the disclosure of such communications must be relevant to an underlying fact in the cause of action. Here, disclosure is relevant to the existence of an agreement, promise, and/or understanding between the Government and crucial witnesses herein. Such understanding, the existence of which can be reasonably inferred from the facts and circumstances at issue herein (ie. Bosch's continued drug use and Acevedo's felonious possession of a firearm), would be directly germane to the accusations against Collazo in this case as well as the motivations of these witnesses to assist the Government and ultimately testify against Collazo.

Furthermore, it is important to note that Collazo is not seeking disclosure of statements made directly by the witnesses. Here, Collazo is seeking disclosure of communications between defense counsel for these witnesses and the Government. Such communications, pursuant to _Doe No. 1_, are subject to the reach of a Rule 17(c) Subpoena, as the one at issue herein.

ii.    _Copies of any and all communications, including but not limited to e-mails, telephonic recordings, facsimile transmissions, and/or letters, between your office and any and all individuals granted immunity, in any form whatsoever including any individual issued a Kastigar letter, in connection with any investigation concerning Biogenesis of America, LLC., and/or the related distribution of Performance Enhancing Substances to minors and/or major league baseball players, including but not limited to Case Nos.: 14-cr-20555-DPG , 14-cr-20556-DPG, and 14-cr-20550-CMA. This request includes any and all communications with the attorney(s) for the individuals involved in this request, as well as any non-prosecution agreements with said individuals._

17

Based on the discovery reviewed thus far, the undersigned counsel has reason to believe that the Government has developed understandings with witnesses that go beyond those provided thus far to Collazo. In the USAO's Response, the Government alleges that there are "zero non-prosecution agreements executed by the Government and Collazo's coconspirators in this case." *See USAO's Response, Page 7.* However, the USAO's Response begs the question of who is considered Collazo's co-conspirators in this case. Here, there were approximately twenty (20) individuals, which the undersigned has been made aware of, who received some form of immunity from the Government. The Government's position does not identify whether individuals, like Alex Rodriguez, Ryan Braun, and Melky Cabrera, are considered "co-conspirators in this case." Here, Collazo's request is not limited solely to co-conspirators but also to witnesses in this case, regardless of their classification by the Government.

Furthermore, the USAO's Response is also vague in the sense that there may exist understandings, promises, and/or tacit agreements that fall short of the Government's definition of a "non-prosecution agreement," which are still relevant to the matter at hand.[9] However, if the Government is taking the position that there are no agreements, promises, understandings (express or implied) with any witness and/or co-conspirator in this case, then the Government should have no issue submitting any responsive communications under this request to the Court for *in-camera* inspection by the Court to determine whether said request is truly moot or inapplicable.

---

[9] According to a November 15, 2014 article in the New York Daily News, AUSA Sullivan and others Justice Department officials had a "vigorous debate about bringing criminal charges against the disgraced Yankee, with the office split on whether to go forward. In the end, they decided no." *A copy of the November 15, 2014 article is attached hereto as Exhibit 1.* This article coupled with information obtained through the undersigned's independent investigation and a review of the discovery provided to date, give rise to a reasonable inferences that the USAO agreed not to prosecute certain witnesses and/or co-conspirators in this cause.

18



QUINTERO BROCHE

75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

On the other hand, the Government has taken the position that crucial witnesses in the case against Collazo, namely Bosch and Acevedo, were not given any benefits outside of their plea. However, the undersigned's investigation and the discovery provided thus far cast doubt on such a position. For instance, Bosch, according to an intercepted call with Acevedo on April 22, 2013 and an interview with DEA on April 9, 2014, was unlawfully distributing substances to clients as late as May 2013. *A copy of the relevant portion of the April 9, 2014 DEA-6 and the transcript of the April 22, 2013 call with Acevedo are attached hereto as Exhibit 2 and 3, respectively.* Noticeably, the Information filed against Bosch is limited to "beginning in and around October 2008, and continuing through in and around December 2012." *See Case No.: 14-CR-20555-DPG; DE No.: 1.*

The Factual Proffer by Bosch further states "Bosch continued to administer testosterone and other substances to underage high school athletes until December 2012…Acevedo and Bosch continued to treat customers with testosterone and other substances until Acevedo parted ways with Bosch in approximately mid-2012." *See Case No.: 14-CR-20555-DPG; DE No.: 3.* The Plea Agreement noticeably does not address Bosch's continued unlawful activity in 2013.[10] The foregoing circumstances coupled with the caliber of attorney that is representing Bosch, makes it a given that such actions and possible criminal exposure would have been addressed by Bosch's attorney(s) with the Government as part of any plea negotiations therein.[11]

---

[10] The continued dispensing of schedule III controlled substances by Bosch from December 2012 until May 2013 could very easily have increased Bosch's guidelines since his plea only made him responsible for dispensing between 5,000-10,000 units over a four (4) year period. Based on the quantity of monthly patients and their respective treatments up to and including 2013, the total units dispensed could clearly be in excess of 20,000 units, which conservatively would increase Bosch's guidelines by two (2) to four (4) levels.

[11] Facts such as these beg the question as to why the Government would choose not to seek a Title III wiretap of Bosch at any time during the course of this investigation, despite him being the main target of the investigation (as per DEA's own reports and the Government's filings) in light of the vast evidence compiled by the Government against Bosch as of April 2013.

19



QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

The Government's Response also sought to suggest to this Court that defense counsel misrepresented or embellished the facts concerning the April 28, 2014 DEA-6 Report (which memorializes when the Government became aware that Bosch had a writ of bodily attachment issued against him for failure to pay child support). Specifically, the Government is adamant that Bosch was not present at the April 28, 2014 meeting referenced in that report, and that defense counsel inaccurately depicted those events. However, a cursory review of that report, a copy of which was provided as an exhibit to Defendant's Motion to avoid confusion, confirms that the report was written in a manner that makes it seem that "Bosch was sitting in a room with several agents who had knowledge of the writ of bodily attachment but failed to arrest him." *See USAO's Response, Page 11; See also Exhibit 22, Defendant's Motion.*

The undersigned undertook a painstaking effort to draft both the Defendant's Rule 17(c) Motion and the present Reply with particular attention to detail to ensure that all facts and allegations set forth in these respective filings, and any inferences drawn therefrom, be traceable to specific documents and evidence discovered in this case. In its attempt to grasp at straws, however, the Government appears to have missed the most important and resounding fact revealed by the April 28, 2014 DEA-6 Report. Notwithstanding whether Bosch was present at the April 28, 2014 meeting or not, the subject DEA-6 report confirms that the Government became aware that a warrant was issued for Bosch's arrest, and despite knowing his whereabouts (given that he was cooperating with the Government), the Government took no action to apprehend him (or facilitate Bosch's arrest) as required by the writ of bodily attachment.

Turning to Carlos Acevedo, as set forth in Defendant's Motion, Acevedo was found in possession of a firearm at the time of the execution of a search warrant at his residence and

QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

subsequent arrest. *See Defendant's Motion. Page 26-27.* Acevedo was a convicted felon and did

not have the authority to possess a firearm. Nonetheless, Acevedo's Plea Agreement, Indictment,

and Factual Proffer are silent on this issue. The Government has taken the position that the decision

to not charge Acevedo was made solely by the Government and not bargained for by Acevedo.[12]

However, the Government once again missed the point, the analysis rests on the motivation of a

witness in giving testimony. *See Alderman, 22 F.3d 1541, 1553-54 (11th Cir. 1994)*("the thrust of

*Giglio* and its progeny has been to ensure that the jury know the facts that might motivate a witness

in giving testimony"). Here, if the Government, after Acevedo agreed to cooperate, decided to not

prosecute him for possession of a firearm and informed Acevedo of their decision, it is reasonable

for a jury to believe that Acevedo was motivated to continue cooperating with the Government,

such as by testifying against Collazo, in return for the Government's position as to the firearm.

The foregoing benefits, and other similar circumstances, are subject to disclosure via a Rule

17(c) Subpoena. While the Government argues that "some promises, agreements, or

understandings do not need to be disclosed, because they are too ambiguous, or too loose or are of

too marginal a benefit to the witness to count;" the circumstances raised by Collazo (ie. Bosch's

drug use and continued unlawful activity, as well as Acevedo's possession of a firearm and

---

[12] It is important to note that Acevedo's unlawful possession of a firearm was addressed for the first time in his case, via an amended PSR filed by the USPO on December 8, 2014 (the same day the USAO filed its Response to Defendant's Motion). *See Case No.: 14-CR-20556-DPG, DE #35.* In Acevedo's case, the initial PSR was filed on November 17, 2014 and merely tracked the sentencing calculations set forth in Acevedo's Plea Agreement. *Id.* Said Plea Agreement omitted any sentencing enhancements in connection with the subject firearm. On November 20, 2014, Mr. Collazo filed the present Motion. Neither Acevedo nor the Government filed objections to the initial PSR. However, on December 8, 2014, after Defendant's initial Motion shed light on Acevedo's unlawful possession of a firearm, Acevedo's Amended PSR was filed including a four (4) level firearm enhancement under the sentencing guidelines, increasing Acevedo's total offense levels and exposing Acevedo to a considerably lengthier sentence in his case. Acevedo's counsel subsequently filed an unopposed Motion to Continue Acevedo's sentencing (which was granted) and an Objection to the Amended PSR's inclusion of the firearm enhancement. *Id.* These circumstances and filings demonstrate Acevedo's belief that the Government would not raise and/or pursue a firearm enhancement, and/or firearm charge, in light of his cooperation/assistance to the Government.



QUINTERO BROCHE

75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

continued unlawful activity while a CS) are material and in no way ambiguous or subject to varying interpretation. *See USAO's Response, Page 9.* Therefore, communications between the USAO and these individuals concerning plea negotiations would show the true extent of any promises and/or understandings between these parties and the Government, and would provide relevant evidence in this case that goes to the heart of these witnesses' motivations to assist the Government and/or testify herein.

iii.   *Copies of any and all documents, reports, memorandums, and/or communications turned over (either by solicitation or voluntarily) to the USAO from a third person and/or entity in connection with the investigation concerning Biogenesis of America, LLC., Lazaro Collazo, and/or the related distribution of Performance Enhancing Substances to minors and/or major league baseball players, including but not limited to Case Nos.: 14-cr-20555-D, 14-cr-20556-DPG, and 14-cr-20550-CMA.*

The instant request was crafted in direct reliance on the language of the Rule 17(c) Subpoena in *Bowman*. The United States Supreme Court has expressly approved the use of a Rule 17(c) Subpoena for the exact purpose of obtaining "any document or other materials, admissible as evidence, obtained by the Government by solicitation or voluntarily from third persons." *Bowman, 341 U.S. 214, 220, 71 S.Ct. 675, 679, 95 L.Ed. 879.* Whether the Government intends to use such evidence in their case is likewise irrelevant. *See Cuthbertson I, 630 F.2d at 144.* The Government has taken the position, via its Response, that Collazo is limited to subpoenaing documents subject to disclosure pursuant to Rule 16, *Fed. R. Crim. P.*, however, the Supreme Court in *Bowman* considered this exact argument and ruled otherwise. The *Bowman* Court stated "There may be documents and other materials in the possession of the Government not subject to Rule 16. No good reason appears to us why they may not be reached by subpoena under Rule 17(c) as long as they are evidentiary. That is not to say that the materials thus subpoenaed must actually be used in evidence. It is only required that a good-faith effort be made to obtain evidence." *Bowman Dairy*

QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446–0303 • Fax: (305) 446–4503

*Co. v. United States*, 341 U.S. at 219-20 (1951). Here, Collazo's request is based on a good faith effort to obtain evidence to be used in the present cause and thus should be issued by this Court.

## C. **LEGAL ISSUES SPECIFIC TO MLB'S RESPONSE**

On December 8, 2014, MLB, by and through its counsel filed a Response to Defendant's Motion, opposing the issuance of the proposed Rule 17(c) Subpoena to MLB in this Cause. MLB has taken the position that any records pertaining to witness interviews are not subject to disclosure pursuant to Rule 17(h), 16, 26.2, *Fed. R. Crim. P.*, and/or the *Jencks* Act. Furthermore, MLB argues that should this Court issue the Rule 17(c) Subpoena to MLB it will move to quash based on the assertion of privileges, such as the attorney-client and work-product doctrines. These arguments fail as a matter of law.

It is important to note that MLB, by its own repeated admissions, turned over 12,000 pages of documents to the Government pursuant to multiple grand jury subpoenas and at least one (1) trial subpoena propounded as recently as October 27, 2014, which contained twelve (12) specific requests for documents. However, here, MLB inexplicably takes issue with the undersigned's subpoena consisting of only five (5) requests for relevant and evidentiary documents in the care, custody, and control of MLB. MLB's objections to the proposed Rule 17(c) Subpoena constitute the first such filing and/or resistance posed by MLB to a lawful request for documents. MLB's Response herein demonstrates that MLB apparently has no qualms when it comes to producing voluminous and substantial documents, including privileged documents, as long as the party requesting documents is the Government.

23

## FEDERAL RULE OF CRIMINAL PROCEDURE 16(A)(2), FEDERAL RULE OF CRIMINAL PROCEDURE 17(H), AND THE *JENCKS* ACT CANNOT BE RAISED AS A BAR TO PRODUCTION BY MLB, A THIRD-PARTY.

Rule 16 deals with documents and other materials that are in the possession of the Government and provides how they may be made available to the defendant for his information. *Bowman, 341 U.S. at 219, 71 S. Ct. at 678.* The Jencks Act, 18 U.S.C. § 3500, likewise applies only to documents in the custody of the United States government. *United States v. Shinderman, 432 F. Supp. 2d 157, 160 (D. Me. 2006).*

Federal Rule of Criminal Procedure 17(h), and the Jencks Act only apply to statements in the government's possession. *See United States v. Calderon, 127 F.3d 1314, 1334-34 (11th cir.1997)*(finding that transcript of prior testimony of government witness was not Jencks Act material which the government was required to produce because the prosecutors were not in possession of the transcript); *United States v. Durham, 941 F.2d 858, 861 (9th Cir.1991)*(finding that notes taken by a state investigator during interview of witness were not Jencks Act material which the government was obligated to produce because the interview notes were not in the prosecutor's possession).

In its Response, MLB raises the preceding Rule(s) as grounds in support of its request that the Court deny the Defendant's Motion. Apparently, both Mr. Menchel and Mr. Couriel, counsel for MLB, have forgotten that they no longer work for the United States Attorney's Office for the Southern District of Florida. As Collazo is seeking production from MLB, and MLB is not the Government, MLB has no standing whatsoever to raise any objections to the Rule 17(c) Subpoena to MLB under Rule 16 or 17(h), *Fed. R. Crim. P.,* and/or the *Jencks* Act.

24

These grounds were unsuccessfully raised by the subpoenaed parties in *U.S. v. Young*, to oppose production. *2004 WL 784840.* In denying these arguments, the court found that:

> As for the one-and-one-half hour tape of the Culpepper-Fulmer meeting, there is no indication on the record before the court that the tape itself is in the possession of the government so as to constitute Jencks Act material. For these reasons, Rules 17(h), 26.2, and the Jencks Act do not control Young's request for an order directing the issuance of subpoenas to Fulmer and the NCAA for pretrial production of items in the possession of Fulmer and the NCAA. In addition, Young is not seeking documents in the possession of the government. Young is seeking documents in the possession of the NCAA and Philip Fulmer who are not parties to this litigation. *Young, 2004 WL 784840, at *2-3.*

Therefore, any attempt by MLB to preclude production pursuant to Rule 16(a)(2), Rule 17(h), Rule 26.2, and/or the *Jencks* Act is unfounded and should be dismissed by this Court.

## MLB'S DISCLOSURE OF PRIVILEGED DOCUMENTS TO THE GOVERNMENT HAS WAIVED ANY WORK-PRODUCT AND/OR ATTORNEY-CLIENT PRIVILEGE THAT COULD HAVE BEEN ASSERTED.

As MLB made painstakingly obvious and continuously harped on in their Response, MLB provided substantial documents to the Government in response to numerous subpoenas.[13] Furthermore, many of these documents have been provided to the undersigned counsel during the course of discovery in this matter. Surprisingly, MLB, harping on these facts, cautions this Court and the undersigned that in the event that the Rule 17(c) Subpoena is issued to MLB, that it will seek to quash the subpoena relying on the attorney-client and work-product privileges to preclude production.[14]

---

[13] "For over a year, MLB has fully cooperated with the grand jury investigation that culminated in that indictment (and others). MLB received several grand jury subpoenas, beginning in October 1, 2013. The subpoenas were wide-ranging and ultimately resulted in the production of over 12,000 pages of documents. Moreover, as recently as October 27, 2014, the U.S. Attorney's Office issued a trial subpoena to MLB, calling for twelve specific items of trial evidence. It appears from the docket in this matter that, to date, the government has propounded nine responses to the standing discovery order in this case, including materials provided by MLB in response to compulsory process." *See MLB's Response, Page 2.*

[14] "MLB cannot raise specific objections on the grounds of the attorney-client privilege, attorney work product doctrine, or other related protections as to any particular document at this time. Nonetheless, on its face, the MLB

25



***Voluntary Disclosure of Attorney-Client documents and/or Communications to a Third-Party Waives the Privilege.***

Under Florida law, the client, who is the holder of the attorney-client privilege, may waive the privilege voluntarily. *MapleWood Partners, L.P. v. Indian Harbor Ins. Co., 295 F.R.D. 550 (S.D. Fla. 2013).* Intent to maintain confidentiality is ordinarily necessary, but it is not alone sufficient, to preserve attorney-client privilege upon disclosure to third party, and where client chooses to share privileged communications outside "magic circle" of closely related persons who are appropriate for consultation, privilege is ordinarily forfeited despite client's intent. *United States v. Massachusetts Inst. of Tech., 129 F.3d 681 (1st Cir. 1997).*

It is the burden of the party raising the attorney-client privilege to establish the critical elements of it: 1) necessary persons; 2) legitimate communications and transactions; and 3) continued assertion of the privilege. *In re Grand Jury Proceedings, 73 F.R.D. 647, 651 (M.D. Fla. 1977).* The necessary persons are i) an actual or potential client, and ii) a practicing attorney or his subordinates and agents in the particular relationship. *Id.* The legitimate communication is one made to an attorney or his subordinates, to obtain legal opinions, assistance or other services in bona fide matters, and not to immunize tortious or criminal activity. *Id.* A client may waive his privilege either expressly, or implicitly by conduct that extinguishes one of the necessary elements of the privilege. *Id. at* 652 (M.D. Fla. 1977)

---

Subpoena purports to reach – and, indeed, in some cases appears specifically aimed at – categories of materials likely to be covered by those protections. For example, internal memoranda generated by MLB during the course of its civil investigation, which were done in anticipation of litigation, are shielded from disclosure by work product and other protections. MLB reserves the right to articulate specific objections to the production of any such material if and when any subpoena is served upon it in this matter." *See MLB's Response, Page 16.*



QUINTERO BROCHE
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

The underlying concern is functional: that the lawyer be able to consult with others needed in the representation and that the client be allowed to bring closely related persons who are appropriate, even if not vital, to a consultation. *Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1424 (3d Cir.1991).*

On the contrary, where the client chooses to share communications outside this magic circle, the courts have usually refused to extend the privilege. *See Fisher v. U.S., 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976).* Fairness is also a concern where a client is permitted to choose to disclose materials to one outsider while withholding them from another. *See, Permian Corp. v. U.S.,* 665 F.2d 1214, 1221 (D.C.Cir.1981).

Here, MLB has voluntarily disclosed thousands of documents worth of information, among them interview notes, communications, and internal memorandum, to the Government.[15] The Government was not a necessary party to MLB's "litigation" (ie. the disciplinary proceedings against the accused baseball players or the civil lawsuit against Biogenesis and Bosch). Furthermore, MLB's disclosure of documents pursuant to a Subpoena does not render such disclosure involuntary where MLB failed to assert any privilege. *See In re Pac. Pictures Corp., 679 F.3d 1121, 1130 (9th Cir. 2012)*(finding that disclosure pursuant to a subpoena was voluntary and waived any privilege where producing party did not assert privilege or redact privileged materials); *See also In re Grand Jury Proceedings, 219 F.3d 175, 187 (2d Cir.2000)*(whether the

---

[15] A review of the discovery provided by the USAO, reveals that MLB voluntarily disclosed numerous presumably "privileged" documents, including but not limited to, interview memorandum, handwritten notes, attorney-client communications, and player interviews. *A compilation of "privileged" documents disclosed by MLB are attached hereto as Composite Exhibit 4.* In fact, a large majority of these documents caution that they are privileged (ie. work-product and/or attorney-client).



QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

subpoenaed party "chose not to assert the privilege when it was appropriate to do so is [also] relevant to the waiver analysis").

Therefore, MLB has waived the attorney-client privilege and cannot raise it to preclude production should Defendant's Motion be granted.

### Voluntary Disclosure of Work-Product Documents and/or Communications to a Third-Party, who May Produce the same to an Adversary, Waives the Privilege.

Work product protection is waived where disclosure of the otherwise privileged documents is made to a third party, and that disclosure enables an adversary to gain access to the information. *See United States v. Bergonzi,* 216 F.R.D. 487, 497 (N.D. Cal. 2003); *See also In re Columbia/HCA Healthcare Corp. Billing Practices Litig.,* 293 F.3d 289, 307 (6th Cir.2002)(rejecting argument that selective waiver of work product exception could be permitted when the recipients of the voluntary disclosures were government agencies); *JTR Enters., LLC v. An Unknown Quantity of Colombian Emeralds, Amethysts and Quartz Crystals,* 297 F.R.D. 522, 530–32 (S.D.Fla.2013)(citing *In re Columbia/HCA Healthcare* for rule rejecting selective waiver theory and granting motion to compel entire sworn statement after party voluntarily disclosed certain substantive portions of it).

Here, MLB either voluntarily disclosed documents/communications subject to the work-product doctrine to the Government and/or produced those documents pursuant to a subpoena and failed to assert any privilege. MLB knew, or should have known, at the time of disclosure that some of these "privileged" documents evidenced unlawful contact by MLB that could be used by the Government against MLB, should it so choose. Even if MLB had assurances that the Government was not a potential adversary when it turned over the protected documents, it knew, or should have known, that such disclosure would enable an adversary to gain access to the

28

documents via discovery. In fact, MLB acknowledged that it was aware of its documents being provided to Collazo and other defendants, whose interests are adverse to MLB, during discovery.

A similar situation arose in *U.S. v. Massachusetts Inst. of Tech*, where the court found that MIT's disclosure to the audit agency was a disclosure to a potential adversary. *129 F.3d 681 (1st Cir. 1997)*. In *U.S. v. MIT*, the court noted that the disclosures did not take place in the context of a joint litigation where the parties shared a common legal interest. *129 F.3d at 687*. MIT doubtlessly hoped that there would be no actual controversy between it and the Department of Defense, but the potential for dispute and even litigation was certainly there. *Id.* The Court held that this situation is one in which the work product protection is deemed forfeit. *Id.* Here, as in MIT, the disclosure of work-product to the Government by MLB waives and/or forfeits the privilege, and thus MLB cannot raise the work-product doctrine as a bar to producing responsive documents to the subject Rule 17(c) Subpoena.

### ANALYSIS OF DEFENDANT'S SPECIFICALLY TAILORED REQUESTS SUPPORT DEFENDANT'S ENTITLEMENT TO THE ISSUANCE OF THE RULE 17(c) SUBPOENA TO MLB.

A review of each of the requests for records/evidence contained in the Defendant's proposed Rule 17(c) Subpoena to MLB reveals that under federal law, Defendant's requests are proper, that Defendant is entitled to the materials sought, and that MLB's opposition to production of the sought materials is meritless. In his proposed Subpoena, Mr. Collazo requested the following:

i.   *Copies of any and all documents, records, correspondences, and/or communications between Major League Baseball, including but not limited to any of your employees, agents, and/or representatives, and any members, employees, or representatives of the Drug Enforcement Administration (DEA), United States Attorney's Office, Florida Department of Health, and/or any other State and/or Federal Law Enforcement Agency, concerning Biogenesis of America, LLC., Biokem, LLC., Anthony P. Bosch, Carlos Acevedo, Lazaro "Lazer" Collazo, from January 1, 2009 through the Present.*



QUINTERO BROCHE
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

Here, Collazo is seeking the production of communications between MLB and any Federal and/or State Law Enforcement Agency concerning Biogenesis, Biokem, Anthony Bosch, Carlos Acevedo, and/or Collazo. This request is based on information obtained during the course of discovery, and set forth in further detail in Defendant's Motion, showing that MLB provided information to the Government which initiated the present investigation and the subsequent indictment of Collazo. *See Exhibit 2 and 4 of Defendant's Motion.* As this case involved other Federal and/or State agencies, such as DEA, Boca Police Department and the Florida Department of Health, the scope of this request is extended to other agencies due to the vast and complex nature of the underlying investigation in this matter. Furthermore, there is reason to believe that MLB was involved in matters beyond the Government's present investigation. For instance, Mrs. Ribero-Ayala, who was/is being paid by MLB for her representation of Bosch in the disciplinary actions against baseball players and the present criminal matter, also represented Bosch's interests in disciplinary actions taken by the Florida Department of Health.

As MLB continuously points out throughout its Response, it provided numerous and substantial documents in response to requests by the Government. Such conduct leads to the reasonable inference that MLB would have communicated with the Government concerning any questions and/or concerns that would have arisen in reviewing the responsive documents. Such communications would be relevant to the contents of the documents disclosed to the Government. Moreover, the documents MLB provided to the Government, some of which have in turn been disclosed to Collazo, show that at some point in MLB's investigation concerning Biogenesis, Collazo became a person of interest. *See Composite Exhibit 4; Gio Gonzalez, Melky*

QUINTERO BROCHE
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

*Cabrera, and Kristina Hernandez interviews. Moreover*, it stands to reason that MLB would have advised these agencies, which it was willingly cooperating with, about the fact that Collazo was a target of their investigation, as well as the content of statements made by witnesses concerning Collazo, which, by and large appear to have been exculpatory in nature.

ii.     *Copies of any and all agreements, receipts, invoices, statements, checks, and/or other documents concerning payments made by or on behalf of Major League Baseball to or for the benefit of Anthony Bosch, Nuceria, Inc., Biogenesis Supplements, Inc., Julio J. Ayala, Law Offices of Julio J. Ayala, P.A., Suzy Ribero Ayala, Lewis Tein, P.L., Silvia B. Piñera-Vazquez, Piñera-Vazquez Law Firm, P.A., Bhalraj "Raj" Badree, Professional Protection, Inc., Carlos Acevedo, Ricardo Martinez, Jorge Velazquez, Christopher Engroba, Juan Carlos Nunez, Yuri Sucart, Porter Fischer, Gary L. Jones, Reginald St. Fleur, the Drug Enforcement Administration, the United States Department of Justice and/or the United States Attorney's Office for the Southern District of Florida, from January 1, 2009 through the Present. This request also includes any written agreements between any of the individuals and/or entities referenced herein and Major League Baseball during the relevant time period.*

The instant request is specifically aimed at tracing the flow of money from MLB to the witnesses in this matter and the purchase of documents from third-party sources. MLB's Response harps on the language of the requests (ie. "any and all" and the fact that 22 individuals and/or entities are involved) for the proposition that it is proof that Collazo is on a fishing expedition. However, MLB fails to understand that it is their extensive and improper conduct that necessitated the involvement of numerous individuals and entities in the present request. MLB has paid, offered to pay, and/or entered into agreements with numerous individuals, some of which own and/or operate their own corporation(s). The majority of the individuals and/or entities included in this request are connected to Anthony Bosch, who is undoubtedly the Government's main witness in the case against Collazo. Furthermore, as set forth in detail in Defendant's Motion, MLB paid a considerable sum of money to individuals directly related to Bosch for his benefit (ie. attorney's fees and security costs). MLB has taken the position that

31

Bosch did not receive any benefits from MLB, a fact which is called into questions by the undersigned's investigation and the documents thus far disclosed in discovery and the Defense's investigation of Bosch, some of which were provided as exhibits to the initial motion filed by Collazo. Whether Bosch did in fact receive payment for his testimony and/or assistance goes directly to his credibility and shows that he is a "paid-for-witness" who will appease whoever is footing the bill. Obviously, this is a critical part of Collazo's defense, and the present request only seeks the evidence that will further such arguments.

As it pertains to any payments made by MLB to Bosch's attorney(s) for legal fees, this Circuit has continuously held that generally payment of attorney's fees are not subject to an attorney-client privilege. *See* *U.S. v. Leventhal, 961 F.2d 936, 940 (11th Cir.1992)*(information regarding attorney's fees is not attorney-client privileged unless its disclosure would reveal other privileged information, such as trial strategy or the nature of legal services performed).

Moreover, the present request goes directly to the reliability of the documents that form the basis of the charges against Collazo (ie. the patient records and Bosch's notebook). Based on the undersigned's investigation, the individuals set forth in this request at one point in time possessed and/or delivered the relevant records to MLB, which in turn were provided to the Government. For instance, MLB made numerous attempts to purchase records from Porter Fischer. *A copy of the text messages between MLB and Mr. Fischer are attached hereto as Composite Exhibit 5.* The records at issue in this case have passed through several hands, and on at least two (2) occasions, records were destroyed, altered, and/or tampered with. *See Exhibit 19, Defendant's Motion.* In fact, MLB was cognizant and concerned about such conduct to the point that it felt compelled to address it in their agreement with Bosch. *See Exhibit 5,*

32

*Defendant's Motion.* The undersigned has no control over the fact that MLB's conduct involved so many individuals and entities, however, the fact that there are numerous parties involved does not automatically quantify Collazo's request as a "fishing expedition."

MLB's disclosure of agreements and/or payments to the Government does not preclude Collazo from seeking the production of such documents, which the Government did not request and/or MLB did not disclose.[16] This request to MLB is aimed at securing the evidence concerning the reliability of these crucial witnesses as well as the reliability of the evidence that intends to use against Collazo.

Lastly, MLB seemingly fails to understand that the Government is not the only party in this case that may call witnesses. Collazo will call the witnesses necessary, including MLB officials Dan Halem and Rob Manfred, to authenticate any documents which are to be used at trial, and to testify about how MLB obtained the documents they turned over to the Government. Moreover, proof of payments and/or benefits conferred to witnesses are very damaging pieces of impeachment evidence, but also play other evidentiary roles, such as to refresh a witness's recollection. *See Young, 2004 WL 784840, at \*4*. For these reasons, MLB's objections are without merit and the Court should issue the Rule 17(c) Subpoena to MLB, and require pre-trial production of the responsive documents.

iii.   *Copies of any and all documents, records, lab reports, investigative reports, correspondences, and/or communications relating to the 2009 investigation of Manuel Ramirez, Anthony Bosch and/or Pedro Bosch in relation with the distribution and/or use of*

---

[16] In fact, the language in MLB's Response further supports the fact that MLB only disclosed agreements and/or payments that were requested by the Government and withheld other similar documents. MLB's Response states "the fact that MLB entered into agreements with and made payments to certain individuals and entities in connection with its own civil investigation – and indeed, disclosed those agreements to the grand jury to **the extent responsive to its subpoenas** – does not speak to who the witnesses and what the evidence will be at Collazo's trial." *See MLB's Response*, Page 10.



QUINTERO BROCHE™
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503

*Performance Enhancing Substances.*

MLB's objections to the present response is direct proof of the frivolous blanket objection it has employed throughout its Response. Here, Collazo is seeking the production of MLB's investigative file pertaining to the 2009 positive test by Manny Ramirez. At the time of his positive test, Mr. Ramirez was a patient of Bosch, much like Collazo and other relevant individuals were patients of Bosch at Biogenesis. Bosch, by his own admissions to the DEA, created and falsified the entire patient file for Mr. Ramirez once he tested positive for PEDs. Here, it is a certainty that Bosch will testify on behalf of the Government against Collazo and that the medical records will be a relevant and critical part of both the Government and the Defense's case in the present cause. Pursuant to *King* and *LaRouche Campaign,* where the impeachment evidence concerns a crucial witness who will undoubtedly testify, documents useful as impeachment evidence are subject to pre-trial disclosure. Here, evidence that Bosch has created and falsified records previously goes directly to the evidence against Collazo and the reliability of Bosch's testimony. Furthermore, such evidence goes directly to the purported reliability of the records authored by Bosch, which the Government will claim hold evidentiary value herein. Therefore, such evidence is clearly relevant and evidentiary and subject to pre-trial production.

iv.   *Copies of any and all memorandums, proffers, statements, interview notes, and/or transcripts in connection with meetings with Anthony Bosch, Carlos Acevedo, and/or any other witness involved in the investigation pertaining to the two (2) aforementioned individuals, Biogenesis of America, LLC., Biokem, LLC., and/or Lazaro "Lazer" Collazo. This request extends to any of attorney and/or representative of the above referenced individuals, as well as any and all communications between Bosch (and/or his attorney) and MLB.*

Here, Collazo seeks the production of documents relating to interviews with witnesses concerning the relevant entities and parties, which give rise to the present Indictment. A review

34

of the discovery produced to the undersigned thus far, clearly shows that as of April 2013, Collazo had become a person of interest in the investigation by MLB. In fact, MLB questioned their players and witnesses concerning their knowledge of Collazo. *See Composite Exhibit 4, interview of Gio Gonzalez, Melky Cabrera, and Kristina Hernandez.*

Thus far every instance, where MLB has questioned witnesses about Collazo, has produced exculpatory evidence regarding Collazo. For instance, the report pertaining to MLB's interview of Gio Gonzalez states "Gio knows Lazer Collazo from Miami…But Gio never discussed PES with Collazo." In MLB's interview with Kristina Hernandez, Collazo is listed under a section titled "Hernandez's comments with respect to other individuals of interest as part of our investigation." According to MLB's report, Ms. Hernandez stated "Collazo did not bring any clients while she was working at Biogenesis." Based on the fact that MLB directly questioned witnesses about Collazo, who was identified as an individual of interest by MLB, these statements are subject to subpoena, especially in light of the fact that the statements reviewed thus far constitute exculpatory evidence critical to the Defense. Furthermore, any exculpatory statements are clearly subject to a Rule 17(c) subpoena and pre-trial disclosure. *See United States v. King*, *194 F.R.D. 569, 573 (E.D. Va. 2000)*(exculpatory evidence in the possession of third parties is subject to a subpoena duces tecum).

v.    *Copies of any and all lists, correspondences, and/or documents by Anthony Bosch (and/or his attorney/representative) to MLB identifying and describing with particularity any documents destroyed, amended, sold or otherwise made unavailable prior to the effective date of the June 3, 2013 agreement between Bosch and MLB.*

As has become the norm throughout MLB's Response, MLB has chosen to take a position that is completely unsupported by Federal case law and the factual circumstances herein. First of all, MLB cannot invoke Rule 17(h), *Fed. R. Crim. P.,* as it is not the Government. *See Young,*

35



QUINTERO BROCHE¨
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446–0303 • Fax: (305) 446–4503

*2004 WL 784840, at \*2-3.* The fact that Mr. Menschel and Mr. Couriel once worked for the Department of Justice, does not give them standing to raise Rule 17(h) on behalf of their current client, MLB.

Pursuant to MLB's agreement with Bosch, he was required to detail any alterations and/or deletions to the patient files and documents at issue herein. *See Exhibit 5, Defendant's Motion.* Apparently, Bosch complied with all his obligations pursuant to the agreement, as evidenced by MLB's subsequent agreement to pay for Bosch's legal fees in his criminal matter. *See Exhibit 6, Defendant's Motion.* As detailed previously, the relevant records herein have passed through the hands of several individuals. The reliability of these records are critical to the charges herein. Therefore, a list in MLB's possession pertaining to the authenticity and/or reliability of these records is relevant and evidentiary, and any position to the contrary is absolutely absurd.

## II.   CONCLUSION

Collazo asserts that the Rule 17(c) Subpoenas to MLB and the USAO satisfy the <u>*Nixon*</u> requirements of 1) Relevance; 2) Admissibility; and 3) Specificity. As a result of the foregoing, and to prevent unnecessary delays at trial, Collazo requests that production be ordered to occur prior to trial in this cause. For the reasons set forth herein, MLB and the USAO's distinct, and at-times parallel, arguments in their respective Responses to Defendant's Motion should be denied and this Court should grant Defendant's Motion for the Issuance of the Rule 17(c) Subpoenas to MLB and the USAO.

Accordingly, Mr. Collazo, by and through the undersigned counsel, reasserts his request for an order from this Court: 1) authorizing the issuance of the subject Rule 17(c) Subpoenas to MLB

36

and the USAO; 2) compelling MLB to comply with the MLB Subpoena prior to trial to avoid any unnecessary delays of trial in this cause; and 3) compelling the USAO to comply with the USAO Subpoena prior to trial to avoid any unnecessary delays of trial in this cause.

**WHEREFORE** Defendant, LAZARO DANIEL COLLAZO, respectfully prays that this Honorable Court grants his Motion, as well as any other relief this Court deems just and proper.

Respectfully submitted,

QUINTERO BROCHE, P.A.
Attorney for Defendant

By:      /s/Frank Quintero, Jr.
FRANK QUINTERO, JR.
Florida Bar No.: 399167

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed via CM/ECF this 15th day of December, 2014 to all counsel of record.

Respectfully submitted,

QUINTERO BROCHE, P.A.
Attorney for Defendant
75 Valencia Ave., 8th Floor
Coral Gables, Florida 33134
Tel.:    (305) 446-0303
Fax:    (305) 446-4503

By:      /s/Frank Quintero, Jr.
FRANK QUINTERO, JR.
Florida Bar No.: 399167

37



QUINTERO BROCHE
75 Valencia Avenue • Suite 800 • Coral Gables, Florida 33134
Tel: (305) 446-0303 • Fax: (305) 446-4503