UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,         CASE NO: 14-20550-CR-ALTONAGA-5

     Plaintiff,

v.

LAZARO DANIEL COLLAZO,

     Defendant.

_____/

### MOTION FOR RULE TO SHOW CAUSE FOR VIOLATION OF A COURT ORDER AND MOTION FOR SANCTIONS PURSUANT TO RULE 17(g), FEDERAL RULES OF CRIMINAL PROCEDURE

The Defendant, LAZARO DANIEL COLLAZO, by and through undersigned counsel, hereby moves for an Order for Rule to Show Cause as to Susy Ribero-Ayala, Susy Ribero-Ayala, P.A., Julio J. Ayala, and Law Offices of Julio J. Ayala, P.A. (hereinafter collectively the "Ribero-Ayala Parties"), as to why they should not be held in contempt for their failure to comply with this Court's January 21, 2015 Order (*DE #241*) and Motion for Sanctions pursuant to Rule 17(g), *Fed. R. Crim. P*. In support of the instant Motion, Defendant states as follows:

1. On January 21, 2015 this Court entered an Order granting in part and denying in part the Ribero-Ayala Parties' Motion for Protective Order and/or to Quash Subpoenas. *DE #241.*

2. Pursuant to the January 21st Order, the Ribero-Ayala Parties were to produce to the undersigned's office documents responsive to the Subpoenas previously served upon them, excluding only the requests concerning communications. The Court's Order was clear that the Ribero-Ayala Parties were to disclose any and all payments received for the benefit of Anthony P. Bosch (hereinafter

"Bosch"), as well as any and all payments made to and/or for the benefit of Bosch.[1] Pursuant to the Court's Order, the documents were to be produced to the undersigned's office on or before January 31, 2015.

3. Prior to the date production was due, the undersigned's office and Mrs. Ribero-Ayala communicated regarding the manner in which production was to be made in compliance with this Court's Order. After numerous communications regarding production of the requested documents, the undersigned's office agreed, as a courtesy to the Ribero-Ayala Parties, to personally send Mr. Gonzalez, an associate attorney at the undersigned's office, to pick up the documents from Mrs. Ribero-Ayala.

4. On January 30, 2015 at approximately 9:00 PM, Mr. Gonzalez met with Mrs. Ribero-Ayala outside her office and picked-up the subject documents.

5. A thorough review of the documents produced demonstrate that the Ribero-Ayala Parties clearly and unequivocally violated this Court's January 21st Order by selectively choosing what documents to produce, excessively and unjustifiably redacting the documents produced, and failing to produce documents subject to disclosure.

6. Specifically, the documents produced by the Ribero-Ayala Parties consist only of heavily redacted copies of the following: 1) invoices from Ribero-Ayala, P.A. to MLB; 2) bank statements for Ribero-Ayala P.A. showing only the payments received from MLB; and 3) invoices from Mr. Ayala's law firm to MLB.

---

[1] The Ribero-Ayala Parties were also to produce documents regarding Biogenesis Supplements, Inc., and Nuceria, Inc. However, in the January 30, 2015 cover letter provided by Mrs. Ribero-Ayala, stated that "there are no documents related to Nuceria, Inc. or Biogenesis Supplements, Inc. as those entities never had bank accounts nor were there any financial transactions ever conducted by these entities." The Ribero-Ayala Parties never provided an affidavit attesting to the foregoing, or any proof of the same.

7.  Pursuant to Rule 17(g), *Fed. R. Crim. P.*, "the court (other than a magistrate judge) may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by a federal court in that district."

8.  The Ribero-Ayala Parties failed to produce any bank statements (and/or other documents relating to payments made and/or received for the benefit of Bosch) for Mrs. Ribero-Ayala personally, Mr. Ayala personally, or Mr. Ayala's law firm.

9.  The Ribero-Ayala Parties failure to produce documents relating to payments received and/or made for the benefit of Bosch by Mr. Ayala's law firm is an egregious violation of this Court's Order. The invoices for Mr. Ayala's firm, which were produced, show that Mr. Ayala received substantial amounts of money from MLB in connection with his "representation" of Bosch. However, the Ribero-Ayala Parties failed to produce the bank statements for Mr. Ayala's law firm evidencing the payments made and/or received for the benefit of Bosch. Moreover, the Ribero-Ayala Parties failed to disclose the bank statements from Mr. Ayala's personal account that would show that Mr. Ayala took money from his law firm account, transferred it to his personal account, and then gave the money to Mr. Bosch. In fact, during a previous conversation with the undersigned and two (2) other attorneys from the undersigned's office, Mr. Ayala personally confirmed the foregoing scenario. Noticeably, the documents that would prove these actions undertaken by the Ribero-Ayala Parties in connection with their "representation" of Bosch were not produced.

10. Moreover, as it relates to the documents actually produced by the Ribero-Ayala Parties, the redaction of the records has rendered them useless to Mr. Collazo and his defense. In fact, the Ribero-Ayala Parties (and/or their agent) redacted information that was clearly subject to disclosure in an attempt to conceal their actions and avoid the disclosure of the extent of their questionable actions in relation with their "representation" of Bosch.

11. The undersigned counsel's independent investigation has revealed proof of the extent of diversionary tactics undertaken by Bosch (and these third parties) to use the monies paid by MLB. For instance, the parties connected to Bosch (ie. The Ribero-Ayala Parties and Mr. Badree) would bill MLB for alleged services rendered on behalf of Bosch, as well as alleged expenses undertaken during the performance of their obligations. The billing party would submit a vague invoice to MLB for payment, the invoice would contain generic description of services, such as "hotel expenses," "investigative services," and "car services," without the submission of any substantiating proof (ie. receipts, statements, itineraries, bills, etc). Pursuant to their obligations, MLB would provide payment to the billing party. Lastly, the billing party would use said monies for the benefit of Bosch, such as paying for Bosch's child support payments, extravagant hotel stays totaling over tens of thousands of dollars, meals at fancy restaurants, tabs at night clubs, and expenses at strip clubs.[2]

12. For instance, the undersigned's investigation obtained proof of two payments made by Mr. Badree (through Professional Protection, Inc.'s bank account) on or about September 3, 2014 and September 15, 2014 to Mrs. Ribero-Ayala's trust account. *Copies of the subject checks are attached hereto as Exhibit 1.* The memo for both checks states "child support."[3] Based on the facts and circumstances surrounding Bosch's child support payments, these payments were meant as either a reimbursement for child support payments by Mrs. Ribero-Ayala on behalf of Bosch or a way to divert monies to Bosch via Mrs. Ribero-Ayala. Noticeably, the bank statements for Mrs.

---

[2] As it pertains to the money received by Mr. Badree (through Professional Protection, Inc.) for the security of Bosch, there is clear proof that Mr. Badree let Bosch use the account, which received over $1.7 million from MLB, as his personal slush fund. Moreover, Mr. Badree would transfer these monies to Bosch by making payments to people connected/related to Bosch for seemingly legitimate purposes. For instance, Mr. Badree would issue checks for "loans" or "security services" to Bosch's girlfriend, who was also allegedly pregnant with Bosch's child, an ex-business partner of Bosch, or business belonging to said individuals. These are just some examples of how Mr. Badree and others distributed monies to Bosch.
[3] Mrs. Ribero-Ayala is counsel for Bosch in an action for child support payments filed by his ex-wife, Aliette Bosch. *See Case No.: 2009-031098-FC-04*. Moreover, as this Court has previously been made aware, Mrs. Ribero-Ayala has on at least two (2) occasions made substantial payments towards Bosch's child support obligations in the aforesaid case.

Ribero-Ayala's law firm pertaining to September 2014 are redacted to hide the existence of said payments. *A copy of the subject bank statement, in the form received from the Ribero-Ayala Parties, is attached hereto as Exhibit 2.*

13. Moreover, the Ribero-Ayala Parties either redacted and/or failed to produce the documents at the heart of this Court's January 21st Order. Namely, proof of any benefits conferred upon Bosch (directly and/or indirectly) by the Ribero-Ayala Parties. The undersigned counsel had previously disclosed the existence of payments from Ribero-Ayala's trust account for Bosch's child support obligations. Nonetheless, the bank statements for Mrs. Ribero-Ayala's trust account failed to disclose any payments for Bosch's child support, where such payments clearly existed. For instance, on or about December 13, 2013 Mrs. Ribero-Ayala issued a check for $15,000.00 from her law firm's trust account for Bosch's child support obligation. *A copy of the subject payment is attached hereto as Exhibit 3.* However, the bank statements produced by the Ribero-Ayala Parties fails to disclose the aforesaid payment, which is clearly for Bosch's benefit. *A copy of the December 2013 statement for Mrs. Ribero-Ayala's trust account is attached hereto as Exhibit 4.* Noticeably, the bank statements provided for Mrs. Ribero-Ayala's law firm appear to be from the firm's operating account and not the IOTA account.

14. In fact, the bank statements produced by the Ribero-Ayala Parties are fully redacted except for payments received from MLB. However, contrary to the subject Subpoenas and this Court's Order the Ribero-Ayala Parties redacted any payments made from those accounts for Bosch's benefits (ie. payments to publicists, investigators, etc).

15. Pursuant to the language of the subject Subpoenas and this Court's Order the documents requested "excludes attorney work product and attorney-client material, which is to be redacted from disclosed documents." *See DE #241, Page 8-9.* Based on the foregoing, the redaction of the

services set forth in the invoices from the law firms to MLB are proper in light of the foregoing instruction. However, there is no attorney-client and/or work-product information contained in bank statements, which do not disclose the services rendered or billed for, that would justify the redaction undertaken by the Ribero-Ayala Parties. *See Exhibit 2 and 4.* Therefore, those documents were to be produced in unredacted form, as they are not subject to an attorney-client and/or work product privilege.

16. The production made by the Ribero-Ayala Parties is in blatant disregard for this Court's January 21st Order and constitutes an attempt by the Ribero-Ayala Parties to dictate the production of documents on their terms. Therefore, the Ribero-Ayala Parties failure to produce the bank statements (and/or other payment records) for Mrs. Ribero-Ayala personally, Mr. Ayala personally, and Mr. Ayala's law firm are clear violations of this Court's January 21, 2015 Order. Furthermore, the Ribero-Ayala Parties redaction of the records produced to hide the existence of payments made to and/or for Bosch is an egregious violation of this Court's Order and the subject Subpoenas, as well as Mrs. Ribero-Ayala and Mr. Ayala's ethical obligations as officers of the Court.[4]

17. In accordance with Local Rule 88.9, on February 2, 2015, Mr. Gonzalez attempted to confer with the Ribero-Ayala Parties concerning the issues raised in the present Motion. *A copy of the correspondence sent by Mr. Gonzalez to the Ribero-Ayala Parties is attached hereto as Exhibit 5.*

---

[4] Pursuant to the Rule 1, of the Rules Governing Attorney Discipline in the Southern District of Florida,

Acts and omissions by an attorney admitted to practice before this Court, individually or in concert with any other person or persons, which violate the Rules of Professional Conduct, Chapter 4 of the Rules Regulating The Florida Bar shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney/client relationship. Attorneys practicing before this Court shall be governed by this Court's Local Rules, by the Rules of Professional Conduct, as amended from time to time, and, to the extent not inconsistent with the preceding, the American Bar Association Model Rules of Professional Conduct, except as otherwise provided by specific Rule of this Court.

As of the time of this filing, the Ribero-Ayala Parties have ignored the undersigned's attempts to confer and fully comply with the subject Subpoenas and this Court's January 21st Order, thus necessitating the filing of the present Motion.

18. As a result of the foregoing, the Defendant requests that this Court issue a Rule to Show Cause against the Ribero-Ayala Parties for their violation of this Court's January 21, 2015 Order regarding the Rule 17(c) Subpoenas previously issued by the Defendant. Moreover, the Defendant hereby moves for an Order to the Ribero-Ayala Parties ordering the immediate production of the documents pertaining to Mrs. Ribero-Ayala (individually), Mr. Ayala (individually), and Mr. Ayala's law firm in unredacted form to the undersigned's office.

**WHEREFORE**, the Defendant, LAZARO COLLAZO, respectfully requests that this Honorable Court issue a Rule to Show Cause against Susy Ribero-Ayala, Susy-Ribero-Ayala, P.A., Julio J. Ayala, and Law Offices of Julio J. Ayala, P.A., as to why they should not be held in contempt of court for violation of the Court's January 21, 2015 Order, for appropriate sanctions, including but not limited to attorney's fees and costs incurred as a result of their violation, as well as any other relief this Court deems just and proper under the circumstances.

Respectfully submitted,

QUINTERO BROCHE, P.A.
Attorney for Defendant

By:      */s/Frank Quintero, Jr.*
FRANK QUINTERO, JR.
Florida Bar No.: 399167

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed via

CM/ECF this 2nd day of February, 2015 to all counsel of record.

Respectfully submitted,

QUINTERO BROCHE, P.A.
Attorney for Defendant
75 Valencia Ave., 8th Floor
Coral Gables, Florida 33134
Tel.:    (305) 446-0303
Fax:     (305) 446-4503

By:      _/s/Frank Quintero, Jr._
FRANK QUINTERO, JR.
Florida Bar No.: 399167

# EXHIBIT 1








# EXHIBIT 2

# Essential Business Checking



Account number: ███████████   ■ September 1, 2014 - September 30, 2014   ■ Page 1 of 8



SUSY RIBERO-AYALA P.A.
201 ALHAMBRA CIR STE 1200
CORAL GABLES FL 33134-5111

## Questions?

Available by phone 24 hours a day, 7 days a week:
**1-800-CALL-WELLS**  (1-800-225-5935)

TTY: 1-800-877-4833
En español: 1-877-337-7454

Online: wellsfargo.com/biz

Write: Wells Fargo Bank, N.A. (287)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

**Wells Fargo Works for Small Business website**
The Wells Fargo Works site offers free access to business information and advice through videos, articles, and other small business resources. This site offers objective information from industry experts, best practices from real business owners, as well as numerous Wells Fargo solutions that can help you run your business. Learn more about Wells Fargo Works at wellsfargoworks.com

## Account options

A check mark in the box indicates you have these convenient services with your account(s).  Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.

| | |
|---|---|
| Business Online Banking | ✓ |
| Online Statements | ✓ |
| Business Bill Pay | ✓ |
| Business Spending Report | ✓ |
| Overdraft Protection | ✓ |

 IMPORTANT ACCOUNT INFORMATION

**Enhancements coming to your transaction descriptions including cash back detail**
Over the next few months, you will notice changes to the descriptions for debit, ATM or prepaid card transactions. These enhancements provide more detail about your transactions, and include new descriptions for purchases with cash back. For debit, ATM, or prepaid card merchant purchases with a request for cash back, the transaction description will include the words "cash" or "cash back," and may include the dollar amount of cash requested.

## Activity summary

Beginning balance on 9/1
Deposits/Credits
Withdrawals/Debits
**Ending balance on 9/30**

Average ledger balance this period



Account number: ███████████   ■ September 1, 2014 - September 30, 2014   ■ Page 2 of 8





## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|--------------|-------------|-------------------|---------------------|----------------------|



Account number: ███████████   ■ September 1, 2014 - September 30, 2014   ■ Page 3 of 8



*Transaction history (continued)*

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|--------------|-------------|-------------------|--------------------|--------------------|



Account number:          ■ September 1, 2014 - September 30, 2014   ■ Page 4 of 8



*Transaction history* (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------------|-------------|------------------|--------------------|--------------------|
| 9/26 | | MI Central Fund Major Leag 140925 01037728 03*140901\SE*8*0001\Ge*1*0001\lea*1*000000000\ | 75,072.54 | | |

Account number: ███████████   ■ September 1, 2014 - September 30, 2014   ■ Page 5 of 8



---

### Transaction history  (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|------|------|------|------|------|



*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

### Summary of checks written   *(checks listed are also displayed in the preceding Transaction history)*

### Monthly service fee summary

For a complete list of fees and detailed account information, please see the Wells Fargo Fee and Information Schedule and Account Agreement applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq to find answers to common questions about the monthly service fee on your account.



# IMPORTANT ACCOUNT INFORMATION

Account number:    ■ September 1, 2014 - September 30, 2014   ■ Page 6 of 8



The following provisions are being added to the Business Account Agreement and the Selected Terms and Conditions for Wells Fargo Business Debit Cards, Business ATM Cards and Business Deposit Cards (each, an "Agreement") to clarify the use of a Business Debit Card through a mobile device.

**Using your Business Debit Card through a Mobile Device**

If you make Card transactions through a Mobile Device using a Business Debit Card, the terms of the Agreement apply with the same effect and coverage, including (i) any limitations the Bank places on the frequency or dollar amount of your Card transactions; and (ii) your rights and responsibilities for unauthorized transactions.

As used in this Agreement, "Mobile Device" means a smartphone, tablet, or any other hand held or wearable communication device that allows you to electronically store or electronically present your Card or Card number ("Electronic Card Information") and use that Electronic Card Information to make Card transactions.

If you use your Card through a Mobile Device, you should secure the Mobile Device the same as you would your cash, checks, credit cards, and other valuable information. The Bank encourages you to password protect or lock your Mobile Device to help prevent an unauthorized person from using it. Please notify the Bank promptly if your Mobile Device containing Electronic Card Information is lost or stolen. You may contact the Bank's National Business Banking Center at the number listed on the statement for reporting a lost or stolen Card (1-800-225-5935). Please note that your mobile carrier may charge you message and data rates, or other fees, when you use your Card through a Mobile Device.

Card transactions made through a Mobile Device may involve the electronic transmission of your Card information across wireless and computer networks. Third parties, such as merchants, card association networks, mobile carriers, mobile wallet operators, mobile device manufacturers, and software application providers may use and receive Electronic Card Information in connection with your Card transaction. Third parties may also receive information about your Mobile Device when you use it to make a Card transaction. When you use your Card through a Mobile Device, information about your Mobile Device may be transmitted to the Bank.

The Bank may, at any time, partially or fully restrict your ability to make Card transactions through a Mobile Device. If you want to remove Electronic Card Information from your Mobile Device, please contact the Bank at 1-800-225-5935.

If you have enrolled in an overdraft protection plan, the terms of that plan will apply to Card transactions made through a Mobile Device. If there are insufficient available funds under the plan to cover the amount of the overdraft, or if you do not have an overdraft protection plan, a Card transaction made through a Mobile Device will be considered to be a one-time debit card transaction. Overdraft fees will apply as provided for in the Agreement and the Business Account Fee and Information Schedule.

We want to let you know that effective November 10, 2014, we are changing the time when we charge your account for Coin Orders and Currency Orders. The fees for Coin Orders and Currency Orders will not change. The period used to calculate and charge these fees will now match the fee period dates listed in the "Monthly service fee summary" section of your statement. As a result of this change, your account could be charged on November 10th for activity in October and again later in the month for activity in November.

As a reminder, there is no fee for the first 15 rolls of coin ordered per month, with a fee of $0.15 for each additional roll. There is no fee for the first $1,000 of currency ordered per month, with a fee of $0.13 for each additional $100 ordered.

Fee changes effective January 1, 2015:
- Deposit correction/adjustment - $7.50 per correction
- Coin deposited per bag - $4 per bag
- Infofax previous day monthly base - $37 per account
- Foreign exchange online wire out - $25 each

The following Treasury Management service fees will appear with updated descriptions on your account statement on or after February 1, 2015 if you use the service:
- Information reporting Infofax monthly base will change to Infofax previous day monthly base
- Wire notification Infofax and email will change to Infofax wire item

Account number:   ▣ September 1, 2014 - September 30, 2014   ▣ Page 7 of 8



If you have any questions about these changes, please contact your local banker or call the phone number listed at the top of your statement  .

The Wells Fargo Business Account Agreement will be updated effective October 29, 2014, and the Terms & Conditions for Wells Fargo Business Debit Cards will be updated effective November 15, 2014, to clarify that if you attempt to make a debit card purchase that causes you to exceed your daily purchase limit, we may, in certain circumstances, authorize that debit card transaction provided you have a sufficient balance to cover the purchase. Your daily limits are subject to periodic review and are subject to change based on account history, activity, and other factors. (Not available for certain accounts such as savings accounts.)

For more details, refer to the Business Account Agreement Addenda at wellsfargo.com/biz/products/accounts/fee_information or contact your local banker.

Account number:  ▪ September 1, 2014 - September 30, 2014 ▪ Page 8 of 8



## General statement policies for Wells Fargo Bank

▣ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

## Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**
A. The ending balance
   shown on your statement . . . . . . . . . . . . . . . . . . . . . $ _____

**ADD**
B. Any deposits listed in your       $ _____
   register or transfers into        $ _____
   your account which are not        $ _____
   shown on your statement.        + $ _____

   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
   (Add Parts A and B)

   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**
C. The total outstanding checks and
   withdrawals from the chart above . . . . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**
   (Part A + Part B - Part C)
   This amount should be the same
   as the current balance shown in
   your check register . . . . . . . . . . . . . . . . . . . . . . . $ ._____

| Number | Items Outstanding | Amount |
|--------|-------------------|--------|
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        | Total amount   $  |        |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

# EXHIBIT 3

PLEASE PRINT AND FILL OUT COMPLETELY

METHOD OF PAYMEN: ☐ Cash

DATE:

TYPE OF PAYMENT: ☐ Case Success
☐ Personal Check(only if cash Accepted for private cases ONLY) ☐ Alimony
☐ Money Order  Cashier's Check ☐ Arrears
☐ Credit Card/Visa Master Amex Card ONLY ☐ Surge Payment
☐ Gift Card (Not less the $100.00) ☐ Bond Payment
☐ Other

MAKE CHECK AND MONEY ORDERS PAYABLE TO  CLERK, CIRCUIT COURT
*** We can only accept payments by check or SAO cases, all other payment types are acceptable***

PAYOR NAME

PAYOR ADDRESS

PAYOR TELEPHONE

PAYOR SOCIAL SECURITY NUMBER:

PAYEE NAME

AMOUNT PAYING TODAY: $ 15000.00  CASE NUMBER:

---

SUSY RIBERO-AYALA P. A.
ESCROW ACCOUNT
2525 PONCE DE LEON BLVD STE 300
CORAL GABLES, FL 33134-6044

WELLS FARGO BANK, N.A.
www.wellsfargo.com
63-730/531

1007

12/13/13

PAY TO THE ORDER OF  Clerk Circuit Court          | $ 15,000 00

fifteen thousand          00/xx DOLLARS

(RE PLACEMENT OF ANEX PAYMENT
MEMO BOSCH V BOSCH
CASE # 09-0031098-FC

---

9908847786 2013-12-17

CNB   >066004367<
Item Processing
2013-12-17   9900847786

# EXHIBIT 4

# Essential Business Checking

Account number: ▓▓▓▓▓▓▓▓   ◼ December 1, 2013 - December 31, 2013   ◼ Page 1 of 5



SUSY RIBERO-AYALA P.A.
2525 PONCE DE LEON BLVD STE 300
CORAL GABLES FL 33134-6044

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
**1-800-CALL-WELLS** (1-800-225-5935)

*TTY:* 1-800-877-4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (287)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Getting ready for tax season can be a challenge! Creating a checklist, and preparing in advance will set you up for a successful meeting with your tax preparer. Remember to bring your deposit routing and account number when preparing your taxes and you may be able to take advantage of using direct deposit for your tax refund into one of your Wells Fargo checking or savings accounts.

## Account options

*A check mark in the box indicates you have these convenient services with your account. Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.*

| | |
|---|---|
| Business Online Banking | ☑ |
| Online Statements | ☑ |
| Business Bill Pay | ☑ |
| Business Spending Report | ☑ |
| Overdraft Protection | ☑ |

Your statement includes a "Monthly service fee summary" section that gives you the ability to proactively manage the monthly service fee on your account. This section provides you with the view of your checking or savings account monthly service fee, the requirements to waive the monthly service fee, if applicable, and the current status for each requirement. You may view this information on your statement or in your secure online banking session by clicking "View Monthly Service Fee" on the left-hand navigation bar. If you'd like to schedule an account review or to learn about other accounts or services we offer, please contact Wells Fargo at 1-800-225-5935 or visit your local Wells Fargo store.

## Activity summary

Beginning balance on 12/1
Deposits/Credits
Withdrawals/Debits
**Ending balance on 12/31**

Average ledger balance this period



Account number:  ▫ December 1, 2013 - December 31, 2013   ▫ Page 2 of 5





## Transaction history



| Date | Check Number | Description | Deposits/Credits | Withdrawals/Debits | Ending daily balance |
|------|--------------|-------------|------------------|--------------------|----------------------|
| 12/11 | | MI Central Fund Major Leag 131210 01021638 3*131203\SE*8*0001\Ge*1*0001\lea*1*000000000\ | 30,237.17 | | |

Account number:    ▣ December 1, 2013 - December 31, 2013   ▣ Page 3 of 5



**Transaction history  (continued)**

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|--------------|-------------|-------------------|---------------------|---------------------|

Account number:    ◼ December 1, 2013 - December 31, 2013   ◻ Page 4 of 5



## Transaction history  (continued)



The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted.  If you had insufficient available funds when a transaction posted, fees may have been assessed.

**Summary of checks written**   (checks listed are also displayed in the preceding Transaction history)



Did you know that you can review your safe deposit box information through Wells Fargo Business Online Banking? Sign on to business online banking at wellsfargo.com/biz and go to your account summary page to review details.

Account number:   ▫ December 1, 2013 - December 31, 2013  ▫ Page 5 of 5



---

## General statement policies for Wells Fargo Bank

▫ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

### Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
   shown on your statement . . . . . . . . . . . . . . . . . . . . $ _____

**ADD**

B. Any deposits listed in your               $ _____
   register or transfers into                $ _____
   your account which are not                $ _____
   shown on your statement.                 + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
   (Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**

C. The total outstanding checks and
   withdrawals from the chart above . . . . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**
   (Part A + Part B - Part C)
   This amount should be the same
   as the current balance shown in
   your check register . . . . . . . . . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|--------|-------------------|--------|
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        |                   |        |
|        | Total amount $    |        |

©2010 Wells Fargo Bank, N.A. All rights reserved.  Member FDIC  NMLSR ID 399801

# EXHIBIT 5

**Alex**

| | |
|---|---|
| **From:** | Alex <agonzalez@quinterolaw.net> |
| **Sent:** | Tuesday, February 10, 2015 12:30 PM |
| **To:** | Susy Ribero-Ayala (Susy@RiberoAyalaLaw.com); 'crewesq@crewadvocacy.com' |
| **Cc:** | Frank Quintero JR (fquintero@quinterolaw.net); 'J P Broche (jpbroche@quinterolaw.net)' |
| **Subject:** | Re: US v. Collazo; Failure to Comply with Court Order and Motion for Contempt |
| **Attachments:** | SRcheck_2015_02_10_17_02_15_227.pdf; scan_2015_02_10_16_39_22_826.pdf |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Susy Ribero-Ayala (Susy@RiberoAyalaLaw.com) | |
| | 'crewesq@crewadvocacy.com' | Read: 2/10/2015 12:33 PM |
| | Frank Quintero JR (fquintero@quinterolaw.net) | |
| | 'J P Broche (jpbroche@quinterolaw.net)' | |

Mrs. Ribero-Ayala and Mr. Ayala,

Let this e-mail serve as formal notice that the documents produced by you to our office on January 30, 2015 fail to comply with Judge Altonaga's January 21, 2015 Order. Specifically, the documents produced by you do not include any bank statements and/or documents from Mr. Ayala's and/or your personal account. Furthermore, no documents from the bank account for Julio's law firm were provided. Be advised that the Subpoenas and Order required that said records be produced and your failure to produce these documents is a clear violation of the Court's Order.

Moreover, based on a thorough review of the records provided, which consist of the bank statements and invoices for Susy Ribero-Ayala, P.A., and invoices from Julio's law firm to MLB, it is clear that the records were overredacted to the point where they are of no use to Mr. Collazo's defense. Furthermore, it has also become apparent that certain redactions were in direct violation of this Court's Order and undertaken to conceal payments that are obviously subject to the reach of the Subpoenas and the Court's Order. Pursuant to the Subpoenas and the Court's Order, the Ribero-Ayala Parties were to produce the following:

- Copies of any and all checks, statements, invoices, receipts, and/or documents pertaining to monies paid by Major League Baseball, including but not limited to any representative, department, and/or employee (hereinafter collectively "MLB"), received by you in connection with the representation of Anthony Bosch (and/or any third-party individual and/or entity in any way related to Anthony Bosch), from January 1, 2009 through the Present.

- Copies of any and all invoices, statements, and/or documents provided to MLB for the payment of monies in connection with the representation of Anthony Bosch (and/or any third-party individual and/or entity in any way related to Anthony Bosch), from January 1, 2009 through the Present. This request is exclusive of any and all work-product and/or attorney-client documents.

- Copies of any and all documents, statements, invoices, receipts, and/or records pertaining to any and all payments made by and/or on behalf of you to and/or for the benefit of Anthony Bosch (and/or any third-party individual and/or entity in any way related to Anthony Bosch), Nuceria, Inc., RPO, LLC, and/or Biogenesis Supplements, Inc., from January 1, 2009 through the Present.

However, our independent investigation has revealed that you failed to disclose payments received and/or made by you and/or your firm to and/or for the benefit of Bosch. For instance, I am attaching a copy of two (2) checks from Professional Protection, Inc.'s account which were made to Mrs. Ribero-Ayala's Trust Account for "child support." In light of the fact that we have previously discovered child support payments made by Mrs. Ribero-Ayala on behalf of Bosch, it is indisputable that Mr. Badree was paying Mrs. Ribero-Ayala for Bosch's child support. Noticeably, these

payments for Bosch's child support, as well as those received from Badree (who received money from MLB), are redacted and/or omitted from the documents produced to our office. Moreover, you have previously been made aware of the existence of child support payments in Bosch's family case, which were issued by Mrs. Ribero-Ayala's firm, however this payment on December 13, 2013 was redacted from the documents produced as well. For you ease of reference I have also attached a copy of this check. Also be advised that Mr. Ayala himself confirmed to our office that he gave money from his personal account to Bosch. However, no documents from Mr. Ayala's personal bank account (or his law firm) were produced.

Moreover, the Court's Order stated that the subpoenas "excludes attorney work product and attorney-client material, which is to be redacted from disclosed documents." The redactions undertaken by you and the failure to produce the personal bank records for you and Mr. Ayala, as well as Mr. Ayala' law firm are clear violations of the Subpoenas, as well as this Court's Order. While the Court's Order, as well as our Subpoenas, allowed for the redaction of any work-product or attorney client communication, the redactions undertaken by you (or on your behalf) go well beyond those allowed by the Court. There is no justification for the redaction of the bank records, which unlike the billing invoices, do not contain any mention of what services were being billed for and/or the services rendered as part of Bosch's representation.

Mrs. Ribero-Ayala and Mr. Ayala, our office has been more than willing to resolve these issue with you in a private and amicable manner. At every turn our professionalism and courteous actions have been rebuffed by you. You have forced our hand to litigate this issue and bring certain matters, which we were willing to keep private, to the public via our filings. Moreover, we have extended every courtesy to you in obtaining these records from you, including me personally meeting with Mrs. Ribero-Ayala to pick-up the documents on a Friday night. This is the last courtesy we will extend either of you in this matter, if we do not receive the outstanding documents (ie. Mr. Ayala's personal account, Mr. Ayala's Law firm's bank account, and Mrs. Ribero-Ayala's personal account) in unredacted form by 5:00 PM today at our office, we will be filing a Motion for Contempt with the Court at 5:01 PM today. As set forth above, the bank records sought by the Subpoenas are not subject to any work-product or attorney-client privilege and should be produced in unredacted form. Therefore, be advised that if the records are not delivered to our office in unredacted form by 5:00 PM today, we will file a Motion for Contempt against both of you with the Court immediately thereafter. If you have any questions, you may call our office at the number below. However, I advise you that anything short of producing the records to our office by 5:00 PM today will be considered a failure to comply.

Regards,

Alejandro Gonzalez Contrera
        Attorney at Law



QUINTERO BROCHE P.A.
ATTORNEYS AND COUNSELORS AT LAW

75 Valencia Avenue
Suite 800
Coral Gables, FL 33134
Tel.: 305-446-0303
Fax: 305-446-4503
E-mail: agonzalez@quinterolaw.net

2