UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,      CASE NO: 14-20550-CR-ALTONAGA-5

     Plaintiff,

v.

LAZARO DANIEL COLLAZO,

     Defendant.

_____/

## DEFENDANT'S, LAZARO DANIEL COLLAZO, RESPONSE IN OPPOSITION TO THIRD PARTIES' MOTION TO QUASH SUBPOENA, PROTECTIVE ORDER AND SANCTIONS, AND DEFENDANT'S REQUEST FOR SANCTIONS

The Defendant, LAZARO DANIEL COLLAZO, by and through undersigned counsel, hereby files his Response in Opposition to Third Parties', Julio J. Ayala, Law Offices of Julio J. Ayala, P.A. and Susy Ribero-Ayala (collectively the "Ribero-Ayala Parties"), Motion to Quash Subpoena, Protective Order and Sanctions, and Defendant's Request for Sanctions against the Ribero-Ayala Parties. In support of Defendant's Response in Opposition, Defendant states as follows:

### FACTS

1. On January 21, 2015 this Court entered an Order granting in part and denying in part the Ribero-Ayala Parties' Motion for Protective Order and/or to Quash Subpoenas. *DE #241.*

2. Pursuant to the January 21st Order, the Ribero-Ayala Parties were to produce to the undersigned's office documents responsive to the Subpoenas previously served upon them, excluding only the requests concerning communications. The Court's Order was clear that the Ribero-Ayala Parties were to disclose any and all payments received for the benefit of Anthony P. Bosch (hereinafter "Bosch"), as well as any and all payments made to and/or for the benefit of Bosch. Pursuant to the Court's Order, the documents were to be produced to the undersigned's office on or before January 31, 2015.

3.  Over the course of numerous weeks, the undersigned and his office communicated with the Ribero-Ayala Parties regarding the manner and means for the production of the subject documents. *Copies of the relevant communications between Mrs. Ribero-Ayala and the undersigned's office are attached hereto as Composite Exhibit 1.* At all relevant times, the Ribero-Ayala Parties attempted to delay and failed to produce all the relevant documents/material in their possession. As a result of the Ribero-Ayala Parties' failure to comply with the Court's January 21st Order, Defendant was forced to file a Motion for a Rule to Show Cause/Contempt Hearing and Request for Sanctions against the Ribero-Ayala Parties. *DE #257.*

4.  After the filing of Defendant's Motion for a Show Cause/Contempt Hearing against the Ribero-Ayala Parties, from January 30, 2015 through February 17, 2015 they ended up producing documents in approximately four (4) different batches Each batch of production was incomplete and consisted of bits and pieces of information and overly redacted documents. As a result, upon receiving each batch of production, the undersigned's office was forced to painstakingly cross-check the production with that of other Parties and ultimately advise the Ribero-Ayala Parties that there were documents missing. In essence, the Ribero-Ayala Parties position was that the onus was on the Defendant to advise them, who were the ones who billed for and used the MLB monies, what documents existed and were subject to production. Such a position is not only improper, but raised considerable suspicion as to the Ribero-Ayala Parties' actions and apparent desire to hide documents.

5.  Almost simultaneously with the production woes associated with Ribero-Ayala Parties, Bhalraj Badree and Professional Protection, Inc. (hereinafter the "Badree Parties"), were undertaking an almost identical course of conduct as the Ribero-Ayala Parties by failing to comply with the subject Subpoenas, even after a Motion to Compel was filed, and forcing the undersigned to file a Motion

for Show Cause/Contempt Hearing.

6. Like the Ribero-Ayala Parties, the Badree Parties engaged in piecemeal and selective production where substantial amounts of documents were missing and the documents that were produced were redacted to such an extent that they were essentially worthless. The actions of the Badree Parties at the same time that the Ribero-Ayala Parties were also undertaking such conduct, only furthered the undersigned's suspicion and amply justifies the subject Subpoena.

7. The suspicious nature of the dilatory tactics undertaken by the Ribero-Ayala Parties is heightened by the fact that numerous other third parties, including third parties who opposed the Defendant's Subpoenas via the filing of appropriate pleadings, have complied fully as Ordered by the Court and required by the respective Subpoenas without any issue. In fact, the other attorneys for Bosch, Silvia Piñera-Vazquez and Guy A. Lewis, complied fully with Defendant's Subpoenas without any issue. Moreover, MLB, who strongly opposed the issuance of Defendant's Rule 17(c) Subpoena, once ordered by this Court to do so, made full and complete production without any delay or hassle. Furthermore, except for the Ribero-Ayala and Badree Parties, all the other parties subpoenaed by Defendant have been able to locate and identify all the documents falling under their respective Subpoenas without any guidance from the undersigned's office. Ultimately, the Badree Parties and Ribero-Ayala Parties have been the only third parties that continuously forced the undersigned counsel to proactively seek the enforcement of this Court's Orders and necessitated countless hours of communications, discussions, filings, and litigation that was otherwise unnecessary. *See Composite Exhibit 1.*

8. Nevertheless, after reviewing the bits and pieces of documents produced by the Ribero-Ayala Parties, the Badree Parties, and other third parties it became apparent that the Badree Parties and Ribero-Ayala Parties, who were the only ones undertaking dilatory tactics, were also the only ones

who made numerous and substantial payments for the benefit of Bosch that were wholly outside the terms agreed upon with MLB. The foregoing, coupled with the Ribero-Ayala Parties' conduct herein, raised considerable suspicions and led the undersigned counsel to issue the subject Subpoena directly to Mr. Ayala's bank, from which monies were paid for Bosch's benefits on at least two (2) occasions, to verify and cross-reference the information produced by the Ribero-Ayala Parties.

9. The undersigned's office issued the subject Subpoena to Apollo Bank f/k/a First Bank of Miami (hereinafter the "Bank"), on February 13, 2015, before the Notice of Withdrawal as to the Ribero-Ayala Parties was filed. *DE #265.* The Ribero-Ayala Parties improperly jump to the conclusion that the undersigned's issuance of the subject Subpoena is in bad faith, because it was done minutes before filing the Notice of Withdrawal. However, the Ribero-Ayala Parties rely on the date that the Subpoena was received by Apollo Bank to support their argument. Being veteran attorneys who have issued and received Subpoenas previously, the Ribero-Ayala Parties knew or should have known that the Subpoena was likely issued well before it was ever received by the subpoenaed party. However, as the Ribero-Ayala Parties have done throughout the course of their representation of Bosch, they have continuously twisted and manipulated the facts to their benefit.[1]

10. On February 25, 2015, Mrs. Ribero-Ayala sent an e-mail to the undersigned counsel advising that she represents Mr. Ayala in the filing of a motion to quash, for protective order, and sanctions in the present matter. *A copy of the February 25th e-mail chain between the undersigned and Mrs.*

---

[1] After the Miami New Times article broke the Biogenesis story and Bosch's prominence as a fake doctor, Mrs. Ribero-Ayala issued a public statement stating "The news report about a purported relationship between Alex Rodriguez and Anthony Bosch [is] not true. He was not Mr. Bosch's patient, he was never treated by him and he was never advised by him. The purported documents referenced in the story -- at least as they relate to Alex Rodriguez -- are not legitimate." *See DE #145, Exhibit 7, Page 1581-88.* According to Bosch's own testimony at Mr. Rodriguez' arbitration hearing, Bosch **did** treat Mr. Rodriguez. During her arbitration testimony, Mrs. Ribero-Ayala explained the apparent discrepancy by incredulously testifying "treated implies a, in my view, a doctor/patient relationship. Anthony Bosch is not a licensed physician, so I was comfortable with the word 'treated.'" *Id.*

*Ribero-Ayala is attached hereto as Exhibit 2.* In response, the undersigned counsel advised Mrs.

Ribero-Ayala that she should not be representing Mr. Ayala as there is a blatant conflict of interest.

The undersigned also warned Mrs. Ribero-Ayala that her proposed course of action would force

the undersigned to file the instant Response fleshing out the facts herein,[2] which would likely affect

her client, Bosch's, chances of obtaining a reduction of sentence in the future (the Government has

yet to seek a reduction of Sentence for Bosch). However, Mrs. Ribero-Ayala continues to place

her personal needs above her duty to her client and has forced the undersigned to file the present

Response. Moreover, the undersigned counsel provided Mrs. Ribero-Ayala with the legal authority

stating that there is no attorney-client privilege for bank records regarding trust accounts which

records are held by the bank.

## DEFENDANT DID NOT NEED TO SEEK LEAVE OF THE COURT PRIOR TO ISSUING THE SUBJECT SUBPOENA

In the January 21, 2015 Order this Court previously ruled that Defendant's Rule 17(c) Subpoenas were

not procedurally defective because Defendant did not seek approval of the Court before issuing the

Subpoenas. *DE #241, Page 4-5.* In so ruling this Court stated

> The structure of Rule 17(c) implies a party may serve a subpoena without prior court order.
> Rule 17(c)(3) contains an express limitation for subpoenas to third parties seeking personal
> or confidential information about a victim, requiring such subpoenas to be served "only by
> court order." Fed. R. Crim. P. 17(c)(3). The general rule contains no such requirement. See
> *id.* 17(c)(1). Indeed, the undersigned has previously held a party seeking to subpoena
> information from a crime victim — not a third party covered by Rule 17(c)(3) — "was not
> required to obtain a court order prior to service" of the subpoena. *United States v. Sandoval,*
> No. 10-20243-CR, 2010 WL 2757188, at *2 (S.D. Fla. July 13, 2010). This procedural
> argument also fails.

In fact, the Ribero-Ayala Parties, who were a party to January 21st Order and adopted Lewis Tein's

---

[2] The undersigned counsel has had substantial amounts of documents showing the questionable and diversionary tactics
undertaken by Parties close to Bosch to use MLB monies for Bosch's benefit. However, the undersigned counsel has made
every reasonable attempt to avoid the needless filing of the foregoing information in what is a highly publicized case to avoid
the substantial and far reaching repercussions the disclosure of such information would have on numerous individuals and
entities.

procedural argument in their prior filing, knew and were aware that Defendant did not have to seek leave of the Court to issue a Rule 17(c) Subpoena. As a result of the foregoing, this procedural argument, which the Ribero-Ayala Parties have previously raised unsuccessfully, likewise fails.

## THE RIBERO-AYALA PARTIES ARE NOT THE SUBPOENAED PARTY AND CANNOT CLAIM THAT THE PRODUCTION IS UNDULY BURDENSOME

The Ribero-Ayala Parties allege that "compliance [with the subject Subpoena] would be unreasonable and/or oppressive." Here, the Subpoena was issued directly to the Bank for records belonging to, created by, and maintained solely by the Bank. Therefore, the Ribero-Ayala Parties will not be compiling, researching, reviewing, and/or producing the responsive documents. As a result, the Ribero-Ayala Parties lack any standing to challenge the subject Subpoena as unduly burdensome. Nonetheless, the undersigned's office has been in communication with Apollo Bank's counsel and agreed to the redaction of any identifying/personal information in the records to prevent the disclosure of sensitive information. This concession was voluntarily made by the undersigned even though legally there is no requirement for such a concession. *See State v. Investigation*, 802 So. 2d 1141 (Fla. 2d DCA 2001). Moreover, the undersigned, in its communications with the Bank's Counsel, agreed to limit the scope of the subject Subpoena to address any future concerns by the Bank as to the volume of production. As a result of the foregoing, the Ribero-Ayala Parties, who are not the producing party, cannot claim that their Motion to Quash should be granted on the grounds that "compliance would be unreasonable and/or oppressive," when they will not be the ones complying, and any such concerns have already been addressed with the Bank's counsel.

## THE RIBERO-AYALA PARTIES CANNOT CLAIM A PRIVILEGE OR PRIVACY RIGHT IN CONNECTION WITH DOCUMENTS BELONGING TO A THIRD PARTY

A party only has standing to move to quash the subpoena issued to another when the subpoena infringes upon the movant's legitimate interests. *See U.S. v. Tomison*, 969 F. Supp. 587, 594 (E.D. Cal.

1997); *See also U.S. v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y.1995)(citing *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121 (2d Cir.1975)(absent claim of privilege, party usually has no standing to object to subpoena directed at non-party); *In re Grand Jury Subpoena Duces Tecum Dated May 9, 1990*, 741 F.Supp. 1059, 1060 n. 1(S.D.N.Y.1990), *aff'd.* 956 F.2d 1160 (2d Cir.1992); *Ponsford v. U.S.*, 771 F.2d 1305, 1308 (9th Cir.1985)(absent proprietary interest in documents sought, no standing to quash)).

As set forth in *Tomison*,

> In many instances, the opposing party in a criminal case will lack standing to challenge a subpoena issued to a third party because of the absence of a claim of privilege, or the absence of a proprietary interest in the subpoenaed material or of some other interest in the subpoenaed documents. 969 F. Supp. at 596 (citing *Reyes*, 162 F.R.D. at 470-71).

Here, Defendant's Subpoena is directed at Apollo Bank and requests documents belonging to, created, and maintained by the Bank. Moreover, prior to the issuance of the subject Subpoena, as it called for the production of records pertaining to an IOTA Account, the undersigned's office contacted the Florida Bar's Ethics Hotline for an opinion regarding the issuance of a Subpoena to a bank for records pertaining to an attorney's client trust fund. The undersigned's office was advised by the Florida Bar that records belonging to the bank are not subject to the attorney-client privilege and directed the undersigned to the legal authority on said issue. *See State v. Investigation*, 802 So. 2d at 1141 (holding that attorney's client trust account records were not protected from disclosure by attorney-client privilege, where records sought were those held by bank, not those held by attorney).

Furthermore, this Circuit has continuously held that generally payment of attorney's fees are not subject to an attorney-client privilege. *See U.S. v. Leventhal*, 961 F.2d 936, 940 (11th Cir.1992)(information regarding attorney's fees is not attorney-client privileged unless its disclosure would reveal other privileged information, such as trial strategy or the nature of legal services performed). Here, the production of bank records, which do not contain any information other than where monies are

coming from and where they are going, would not reveal the trial strategy or nature of legal services performed by Mr. Ayala.

As a result of the foregoing, the Ribero-Ayala Parties lack standing to quash the Subpoena to the Bank, as they have neither a proprietary interest nor claim of privilege as to the records sought by the Defendant.

## DEFENDANT HAS A RIGHT TO VERIFY THE INFORMATION PRODUCED BY THE RIBERO-AYALA PARTIES AND THIS COURT HAS PREVIOUSLY DENIED THE RIBERO-AYALA PARTIES' CUMULATIVE ARGUMENT

Here, the factual circumstances surrounding the production of documents by the Ribero-Ayala Parties in conjunction with the simultaneous dilatory tactics undertaken by the Badree Parties, as well as the information obtained from other third parties gives rise to a substantial likelihood that the subject records would further prove that Mr. Ayala diverted monies paid by MLB to and/or for the benefit of Bosch. *See U.S. v. Nixon, 418 U.S. 683, 700 (1974).* This Court has previously exercised its discretion, ruling that documents pertaining to payments to and/or for the benefit of a Government witness in the present matter are discoverable. *DE #229 and 241.*

The relevant facts necessitating the subject Subpoena to the Bank for records pertaining to Mr. Ayala are as follows:

- a) Upon being served with a subpoena pertaining to the Ribero-Ayala Parties and two other entities, Mr. Ayala contacted the undersigned's office and proceeded to disclose the following to the undersigned, in the presence of two (2) other attorneys[3] from the undersigned's office:
    - i. Mr. Ayala incorporated and was the sole officer of Biogenesis Supplements, Inc. The purpose of Biogenesis Supplements was to allow Bosch to continue to sell nutritional products. However, Bosch was not listed anywhere in the corporate documents.
    - ii. Mr. Ayala incorporated and serves as the registered agent for Nuceria, Inc., a Florida

---

[3] The undersigned and the two (2) attorneys present, Mr. Broche and Mr. Gonzalez, are willing to submit an affidavit as to the statements made by Mr. Ayala during the subject phone call should this Court so please.

corporation where Bosch is the sole officer. Mr. Ayala spontaneously revealed that he was unaware of the creation of Nuceria and "it must have been done by Tony."

iii. Mr. Ayala became agitated during the subject phone call and asked what the problem was if he (Mr. Ayala) took his own money, which MLB paid, from his trust account, moved it to his personal account, and then gave some money to his friend (Bosch)."[4] However, after making the foregoing statement, Mrs. Ribero-Ayala, who was not a party to the phone call, claimed that Mr. Ayala never made such a statement.

b) Even though Mr. Ayala is the registered agent and incorporating party for at least two (2) companies related to Bosch, as well as serving as the sole officer of one, the Ribero-Ayala Parties maintain that there are no documents pertaining to Nuceria and/or Biogenesis Supplements.

c) A review of the documents produced by the Badree and Ribero-Ayala Parties, as well as the undersigned's independent investigation proves that monies from MLB were diverted to and/or for the benefit of Bosch via numerous intermediaries, including but not limited to, Bosch family members, unqualified individuals who were allegedly hired as security personnel, "loans" to Bosch's common law wife, the leasing of a Fisher Island apartment in Bosch's name,[5] and the leasing of a million dollar unit in Downtown Miami for Bosch's common law wife, where Bosch himself would also stay.[6] For instance, the documents received and reviewed thus far demonstrate the folowing:

i. The Ribero-Ayala Parties produced a check dated October 18, 2013, which was deposited on October 28, 2013, to Mrs. Ribero-Ayala's trust account from Stella

---

[4] The undersigned's office does not have the benefit of the USAO insofar as calls are not recorded. Therefore, the information set forth herein is based on the notes of the attorneys present during the conference with Mr. Ayala.
[5] A copy of the Lease for the Fisher Island Apartment is attached hereto as Exhibit 3.
[6] A copy of the Lease for Ms. Daza's apartment, which was paid for with MLB monies, is attached hereto as Exhibit 4.

Bosch's account ending in *682 for $10,000.00 with a memo stating "trust account." *A copy of the October 18th Check is attached hereto as Exhibit 5.* However, in the documents produced by the Badree Parties there are two checks payable to cash, from the account where the Badree Parties were depositing the MLB monies (hereinafter the "BP/MLB account"), issued on October 21 and 23, 2013 for $5,000.00 each. *Copies of the subject checks are attached hereto as Composite Exhibit 6.* A close inspection of these "cash" checks reveals that the checks were deposited in Stella Bosch's account ending in *682, which is the same account where the October 28th Check originated from. Moreover, all three checks contain the same handwriting, and one of the cash check states "for trust account" in the memo portion. Therefore, less than seven (7) days before the October 28th check was deposited by Mrs. Ribero-Ayala, Stella Bosch received the same amount of monies from the Badree Parties from an account containing MLB monies. This sort of complex and multifaceted tactics employed to divert MLB monies to and/or for the benefit of Bosch only furthers the need to obtain the records from the Bank to properly evaluate the scope of the monies used for Bosch's benefit, especially when the producing parties have been less than forthcoming thus far.

ii.     Mrs. Ribero-Ayala used her personal American Express account on numerous occasions for the benefit of Bosch. For instance, on December 11, 2013 Mrs. Ribero-Ayala used an Amex account ending in *86004 to pay for Counseling Services for Bosch at Therapeutic Horizons in Miami Lakes, Florida. On at least two (2) occasions Mr. Ayala has made payments to Mrs. Ribero-Ayala's Amex account in connection

with Bosch.[7] *Copies of the Amex payments by Mr. Ayala are attached hereto as Composite Exhibit 7.* On at least two (2) occasions, Mrs. Ribero-Ayala also received payments to her Amex account ending in *86004 from the BP/MLB account totaling over $40,000.[8] *A copy of the Amex payments from the BP/MLB account are attached hereto as Composite Exhibit 8.*

iii.  On at least one (1) occasion, Mr. Ayala made payments to himself via checks simply stating "Bosch" in the memo. *A copy of said check is attached hereto as Exhibit 9.* No documentation and/or information was provided as to the circumstances giving rise to said check. However, a check from Mr. Ayala to himself is consistent with the scenario he previously conveyed to the undersigned's office that he moved monies through his accounts and gave those monies to Bosch.

iv.  On March 17, 2014, over two (2) months after Mr. Ayala stopped billing MLB in connection with his representation of Bosch (and presumably after his representation of Bosch concluded), Mr. Ayala issued a check from his IOTA Account to Arturo v. Hernandez, P.A. with a memo stating "P. Bosch M.D. Subpoena." *A copy of the March 17th check is attached hereto as Exhibit 10.* The subject check begs the question as to why Mr. Ayala is paying $2,500 in connection with a subpoena to Bosch's father, as well as why Mr. Ayala is paying for costs associated with Bosch after he is no longer billing MLB in connection with Bosch.

d)  As set forth in a July 10, 2014 letter from MLB's counsel to the Government, during the course

---

[7] To date, Mr. Ayala has failed to produce any documents justifying the payments to Mrs. Ribero-Ayala's Amex in connection with Bosch.

[8] Once the undersigned counsel brought these substantial checks to Mrs. Ribero-Ayala's attention, as well as her failure to produce them, Mrs. Ribero-Ayala stated that she "had no obligation to [disclose these payments from the Badree Parties] since this was an error and not a payment made by me for Mr. Bosch's benefit.

of approximately seven (7) months where Mr. Ayala represented Bosch, MLB paid Mr. Ayala almost $500,000.00 in connection with his representation of Bosch. *A copy of the July 10th Letter is attached hereto as Exhibit 11.* Moreover, the documents produced show that Mr. Ayala was billing at $500 per hour. Therefore, Mr. Ayala, a self-proclaimed maritime personal injury specialist, billed MLB for close to 1,000 hours' worth of purported legal work undertaken on behalf of Bosch over the span of seven (7) months. Mr. Ayala's billing equates to working approximately five (5) hours every day, including weekends, for seven (7) months in connection with Bosch's testimony at an arbitration, which lasted all of four (4) days. The volume of Mr. Ayala's billing coupled with his close relationship to Bosch create a reasonable suspicion that at least some of the monies received from MLB were given directly to Bosch.

e) Mr. Ayala was the original attorney who assisted Bosch in negotiating the agreements with MLB. Moreover, the undersigned's investigation has disclosed that Mr. Ayala served as the intermediary between MLB and other billing parties, such as the Badree Parties and Fitzpatrick communications (the publicity firm paid by MLB). For instance, the Badree Parties have advised the undersigned, through their counsel, that they would submit their invoices to Mr. Ayala, who would ensure MLB would pay the billed amounts. Therefore, Mr. Ayala knew of the services being billed for by the Badree Parties, including but not limited to, billing for additional security for Bosch, as well as the identify of these purported security personnel.

f) The additional security that MLB was being billed for in connection with Bosch was paid to three (3) alleged security personnel chosen by Bosch. In reality, all three of these "security" personnel were/are close personal friends of Bosch. Moreover, none of the three individuals were qualified to serve as security personnel.[9] Specifically, one of the individuals is Hernan

---

[9] One of these individuals is currently incarcerated as a result of Mortgage Fraud charges. This individual was a mortgage broker, and was involved in a criminal matter at the time where he was unable to even possess a firearm.

Dominguez who is a life-long friend of Bosch, is employed as an insurance adjuster, and has no security background whatsoever. *A copy of the 1099 issued by the Badree Parties to Mr. Dominguez is attached hereto as Exhibit 12.*

g) Mr. Ayala and Bosch have a long-standing personal relationship. In fact, Mr. Ayala and Bosch attended Christopher Columbus High school together, the same high school Mr. Dominguez attended. Not only did Mr. Ayala and Mr. Dominguez attend the same high school at the same time, but the two are close friends and maintain a personal relationship. *A copy of a photo showing Mr. Ayala and Mr. Dominguez together when they were younger is attached hereto as Exhibit 13.* As a result of their relationship, Mr. Ayala would have been fully aware that Mr. Dominguez was unqualified to serve as a security personnel. Moreover, given his representation over the span of seven (7) months and having received and reviewed all the billing provided by the Badree Parties, Mr. Ayala would have known that Mr. Dominguez was being paid from monies received from MLB for serving as "security" for Bosch. Therefore, Mr. Ayala facilitated the payment of monies by MLB to alleged security personnel chosen by Bosch, knowing full well that these individuals were unqualified to serve as security for Bosch, had close ties to Bosch, and were receiving monies from MLB for purported security that was not being provided in true fashion. Notwithstanding, Mr. Ayala did not advise MLB of this conflict or take any measure to ensure that these "security" employees weren't used as straw men to funnel monies to Bosch.

h) As Mr. Ayala was one of the original attorneys representing Bosch, as well as Mrs. Ribero-Ayala's husband, he would have also been aware of the false statement Mrs. Ribero-Ayala issued on or about January 30, 2013. Mrs. Ribero-Ayala issued a press-release stating "The news report about a purported relationship between Alex Rodriguez and Anthony Bosch [is]

not true. He was not Mr. Bosch's patient, he was never treated by him and he was never advised by him. The purported documents referenced in the story -- at least as they relate to Alex Rodriguez -- are not legitimate." *A copy of the November 20, 2014 article referencing Mrs. Ribero-Ayala's statement is attached hereto as Exhibit 14.* Mr. Ayala was also representing Bosch, who later testified that he **did** treat Mr. Rodriguez, and took no steps to correct his wife's plainly false statement regarding Bosch's treatment of Mr. Rodriguez. Instead, Mr. Ayala allowed and presumably assisted his wife, Mrs. Ribero-Ayala, in issuing a knowingly false press release benefitting Mr. Rodriguez and Bosch.

i) The Ribero-Ayala Parties also presumably counseled Bosch to adjust his testimony and testify falsely at the Arbitration hearing, by stating he had clients **not** patients. *A copy of the relevant portions of Bosch's arbitration testimony is attached hereto as Exhibit 15.* Such a distinction was made by the Ribero-Ayala Parties because there was an ongoing collateral investigation by the State Attorney's Office and the Florida Department of Health concerning Bosch for practicing without a license. *Copies of the relevant investigation documents from the SAO and Florida DOH are attached hereto as Composite Exhibit 16.* Bosch was counseled to testify accordingly and falsely, even though all his patient records and past conduct showed that Bosch always referred to those who he treated as "patients."

Therefore, looking at the facts herein, it is clear that Mr. Ayala has a close and lengthy relationship to Bosch. Mr. Ayala served as the intermediary between MLB and Bosch, as well as other billing parties. In the mere span of seven (7) months Mr. Ayala billed for approximately 1,000 hours of work in connection with his representation of Bosch, as a part of a three (3) member legal team, in preparation for an arbitration hearing. Mr. Ayala received almost $500,000.00 in fees from MLB for representing Bosch, where Mr. Ayala did not even have to file a Notice of Appearance or any sort of pleading, and the majority

of the work was spearheaded by the other attorneys. Mr. Ayala created, incorporated, directed, and/or serves as the registered agent of at least (2) corporations opened for Bosch's benefit after the Biogenesis Scandal broke in January 2013. However, the Ribero-Ayala Parties maintain that there are no documents pertaining to these Bosch-related companies. Mr. Ayala previously implied to the undersigned counsel that he transferred monies from his trust account, to his personal account, and then to Bosch. All of the foregoing facts, coupled with the dilatory tactics undertaken solely by the Ribero-Ayala and Badree Parties creates a reasonable suspicion that the Ribero-Ayala Parties continue to withhold information as to the monies paid to and/or for the benefit of Bosch. Therefore, the undersigned counsel has the right to subpoena Apollo Bank for records pertaining to Mr. Ayala's account to determine the full scope of the benefits and monies conferred upon Bosch.

It is important to note that while the undersigned counsel may or may not be involved in negotiations with the Government to resolve this matter, the same is irrelevant for purposes of complying with the subject Subpoena. In fact, up and until Defendant receives, and signs, a Plea Agreement and this Court accepts Defendant's Plea, the undersigned counsel must continue to prepare for trial and finalize the Defense investigations. Therefore, while the Ribero-Ayala Parties allege that a resolution is imminent, the reality is that up and until an agreement before this Court and accepted by the Court, the undersigned must proceed with trial preparations and finalize Defendant's investigations herein. Therefore, the Ribero-Ayala Parties' understanding of the case is irrelevant and is of no consequence to the compliance with the subject Subpoena.

## DEFENDANT'S REQUEST FOR SANCTIONS

The undersigned counsel has been forced to respond to this frivolous and meritless filing by Ribero-Ayala under circumstances where it is obvious that her conduct is driven by her attributing Defendant's pursuit of relevant evidence in this case as a personal attack against her (and/or her husband). In

undertaking this defensive course of conduct, Ribero-Ayala violated the Local Rules as well as Chapter 4 of the Rules Regulating the Florida Bar by making unwarranted statements to the media and filing the instant Motion without proper basis. Moreover, the Ribero-Ayala Parties were previously warned by the undersigned that there was no basis for a Motion to Quash and for Protective Order. *See Exhibit 2.*

In an effort to prevent having to file the instant Response and Motion for Sanctions seeking this Court's intervention, on February 25, 2015, the undersigned responded to Mrs. Ribero-Ayala's correspondence and advised that the filing of such a Motion on behalf of the Ribero-Ayala Parties would be without merit and force the undersigned to proceed accordingly. Unfortunately, the Ribero-Ayala Parties failed to acknowledge the aforementioned email and instead filed the present Motion on March 2, 2015. Therefore, the undersigned is left no choice but to seek sanctions against Mrs. Ribero-Ayala herein as her conduct cannot continue without proper Court intervention.

Pursuant to the Rule 1, of the Rules Governing Attorney Discipline in the Southern District of Florida,

> Acts and omissions by an attorney admitted to practice before this Court, individually or in concert with any other person or persons, which violate the Rules of Professional Conduct, Chapter 4 of the Rules Regulating The Florida Bar shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney/client relationship. Attorneys practicing before this Court shall be governed by this Court's Local Rules, by the Rules of Professional Conduct, as amended from time to time, and, to the extent not inconsistent with the preceding, the American Bar Association Model Rules of Professional Conduct, except as otherwise provided by specific Rule of this Court.

According to Rule 4-3.1, of Chapter 4 of the Rules Regulating the Florida Bar, "a lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law."

Here, the Ribero-Ayala Parties' Motion is legally unsupported and clearly devoid of any good faith. In fact, Ribero-Ayala's Motion is a needless and baseless attempt to delay a determination by this Court regarding the subject Subpoena as Mrs. Ribero-Ayala believes a plea agreement has been reached, and falsely accuses the undersigned and his office of a lack of professional integrity. The impropriety of such an accusation is only further exacerbated by the high-profile nature of the present case where every filing is scrutinized and subject to dissemination to the public across the country by the numerous national media outlets.

Ribero-Ayala is not a fledgling attorney and is no stranger to this Court or this case. Therefore, their frivolous and inflammatory filing is not reasonably attributable to inadvertence or a lack of knowledge about the legal standard concerning the subject Subpoena,[10] the proper bases for a motion to strike, or the level of publicity associated with this case. Despite lacking any credible or reasonable basis whatsoever, they filed said Motion in a clear attempt to delay this Court's ruling (on an issue that clearly and directly affects her and her husband), and improperly question the undersigned (and his office's) professional integrity and reputation. In doing so, the Ribero-Ayala Parties knowingly and/or recklessly violated the very rules which govern an attorneys' conduct, and forced the undersigned to expend considerable time and resources to respond to this needless Motion. To make matters worse, the undersigned provided the Ribero-Ayala Parties the case law holding that there was no basis for their Motion, prior to its filing. Ribero-Ayala Parties' conduct and unwarranted insistence herein, even after receiving numerous warnings from the undersigned's office, necessitates an award of sanctions against the Ribero-Ayala Parties herein.

As Chief U.S. District Judge K. Michael Moore recently stated in an Order on the recusal of Judge Cooke, "Attorneys cannot accuse other attorneys of fraud without recognizing the impact that such an

---

[10] In fact, the Ribero-Ayala Parties' Motion raises at least two (2) legal grounds which have previously been denied by this Court.

allegation will have on the thing that attorneys hold most dear—their reputation," *See Case No. 12-CV-22439-MGC, DE #417, Page 8.*

Moreover, according to Rule 3.6(a), of Chapter 4 of the Rules Regulating the Florida Bar, "a lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding due to its creation of an imminent and substantial detrimental effect on that proceeding."[11] Local Rule 77.2(c)(6) explicitly prohibits "the release of any extrajudicial statement which a reasonable person would expect to be disseminated by means of public communication, relating to that matter and concerning: **Any opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case**." *(emphasis added).*

Aside from the Ribero-Ayala Parties' Motion, it is important to point out that in a January 9, 2015 article by Michael O'Keeffe of the New York Daily News regarding this Court's Order pertaining to the Subpoenas to MLB and the USAO, Mrs. Ribero-Ayala was quoted as stating "It is unfortunate that Mr. Quintero can't avail himself to an innocent defense for his client...While his conspiracy theories are entertaining, they are untrue and a product of his imagination." *A copy of New York Daily News article is attached hereto as Exhibit 17.*

Mrs. Ribero-Ayala is an interested party in the present cause and the wife of Mr. Ayala, as well as counsel for the Government's star witness, Anthony Bosch. As a seasoned member of the Florida Bar and a long-time practicing attorney before this Court, Mrs. Ribero-Ayala is well aware of the prohibition against public statements regarding the guilt or innocence of an accused, as well as the prejudicial effect

---

[11] Rule 3.6 of the ABA Model Rules of Professional Conduct states that "a lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."

that such statements can have on a potential jury pool, especially when coming from an attorney intimately involved in the present matter, whose involvement can improperly be equated with reliability.

Furthermore, upon receiving a copy of Defendant's Motion for a Show Cause/Contempt Hearing as a result of the Ribero-Ayala Parties failure to comply with this Court's January 21st Order, Mrs. Ribero-Ayala called the undersigned's office and proceeded to verbally berate the undersigned's associate attorney, Mr. Gonzalez, for the filing of said Motion. *DE #257.* In fact, Mrs. Ribero-Ayala went as far as to threaten the undersigned and Mr. Gonzalez with the filing of a Florida Bar Complaint and a lawsuit. Pursuant to Rule 4-3.4(h), of Chapter 4 of the Rules Regulating the Florida Bar, it is unethical to threaten a fellow member of the bar with a grievance complaint. *See also The Florida Bar v. Fitzgerald, 541 So.2d 602 (Fla. 1989).*

Therefore, the Ribero-Ayala Parties' conduct is not limited to the filing of this frivolous Motion. As such, the undersigned submits that these unwarranted and blatant violations of the Rules of Professional Conduct and the Local Rules warrant sanctions against the Ribero-Ayala Parties. Although the imposition of sanctions, and the degree of the same, are within the sound discretion of this Court, the. Ribero-Ayala Parties' actions herein cannot be allowed to continue unfettered and in complete disregard for their professional and ethical obligations.

## CONCLUSION

For the reasons set forth herein, Defendant respectfully requests that the Ribero-Ayala Parties' Motion to Quash, for Protective Order, and Sanctions be denied by this Court, and that appropriate sanctions be levied against the Ribero-Ayala Parties as requested.

## CERTIFICATE OF GOOD FAITH CONFERRAL IN ACCORDANCE WITH LOCAL RULE 88.9

Prior to filing the instant Response and Motion for Sanctions, the undersigned counsel, in a good faith effort to avoid having to file this Motion, and in compliance with Local Rule 88.9, conferred via email

with Mrs. Ribero-Ayala as detailed herein. *See Exhibit 2.* The undersigned's conferral efforts were unsuccessful as Mrs. Ribero-Ayala failed to acknowledge said email and/or proceeded to file the Ribero-Ayala Parties' Motion.

**WHEREFORE,** Defendant, LAZARO DANIEL COLLAZO, respectfully requests that this Honorable Court deny Ribero-Ayala's Motion to Quash Subpoena, Protective Order and Sanctions (*DE #299)*, and sanction Mrs. Ribero-Ayala for her conduct detailed herein, as well as any other relief this Court deems just and proper under the circumstances.

Respectfully submitted,

QUINTERO BROCHE, P.A.
Attorney for Defendant

By:    */s/Frank Quintero, Jr.*
       FRANK QUINTERO, JR.
       Florida Bar No.: 399167

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed via CM/ECF this 3rd day of February, 2015 to all counsel of record.

Respectfully submitted,

QUINTERO BROCHE, P.A.
Attorney for Defendant
75 Valencia Ave., 8th Floor
Coral Gables, Florida 33134
Tel.:  (305) 446-0303
Fax:  (305) 446-4503

By:    */s/Frank Quintero, Jr.*
       FRANK QUINTERO, JR.
       Florida Bar No.: 399167



# COMPOSITE EXHIBIT 1

## Alex

| | |
|---|---|
| **From:** | Susy Ribero Ayala <susy@Riberoayalalaw.com> |
| **Sent:** | Friday, February 13, 2015 8:29 PM |
| **To:** | Alex |
| **Subject:** | Re: US v. Collazo; Failure to Comply with Court Order and Motion for Contempt |

I will provide legible copies and I will respond to your motion by the 18th.

Sent from my iPhone

On Feb 13, 2015, at 5:48 PM, Alex <agonzalez@quinterolaw.net> wrote:

Mrs. Ribero-Ayala,

I am cognizant of your preparation for Mr. Bosch's sentencing, however, be advised that Judge Garber has ordered a response to our Motion for Rule to Show Cause to be filed on or before February 18, 2015. We are attempting to resolve this issue, if possible, prior to that deadline. In the event that said deadline comes to pass, you will surely have to file a Response and we will have no choice but to file a Reply with supporting documentation. Therefore, while I am mindful of your obligations to Mr. Bosch, I do not see an issue with Mr. Ayala obtaining clear copies of his own documents and e-mailing them to me. I have to disagree with your assessment of the clarity of Mr. Ayala's documents. To hopefully expedite a resolution herein, I am attaching a copy of Mr. Ayala's documents in the form that we received them, so you may see what we are referring to. Therefore, we request that you provide us legible copies of Mr. Ayala's documents prior to the deadline set by the court of February 18, 2015. Once we receive those documents, we will withdraw our Motion. Thank you for your attention to this matter.

Regards,

Alejandro Gonzalez Contrera
Attorney at Law

<IMAGEOO1.JPG>

75 Valencia Avenue
Suite 800
Coral Gables, FL 33134
Tel.: 305-446-0303
Fax: 305-446-4503
E-mail: agonzalez@quinterolaw.net

**From:** Susy Ribero Ayala [mailto:susy@Riberoayalalaw.com]
**Sent:** Thursday, February 12, 2015 9:26 PM
**To:** Alex
**Cc:** <crewesq@crewadvocacy.com>; Frank Quintero JR; J P Broche; Guy Lewis; Silvia Pinera-Vazquez
**Subject:** Re: US v. Collazo; Failure to Comply with Court Order and Motion for Contempt

I am preparing for Mr Bosch's sentencing on Tuesday. I had no problem reading any of Julio's documents but I would request you wait until Wednesday. I would also ask that you identify the specific documents that are illegible or i can provide everything vis hand delivery on Wednesday.

Sent from my iPhone

On Feb 12, 2015, at 7:28 PM, Alex <agonzalez@quinterolaw.net> wrote:

Mrs. Ribero-Ayala,

Let this e-mail confirm that we are in receipt of your third batch of production. I am in the process of printing the documents and reviewing them. As Mr. Quintero and Mr. Broche have left for the day, I will review them with both of them tomorrow. However, I would like to remind you that the documents provided on behalf of Julio via e-mail previously (and hand delivery) are completely illegible. I would once again request that you produce legible copies of said documents.

As I stated previously, we will review these documents in depth (along with your prior productions) tomorrow. However, we would ask that you provide those documents pertaining to Mr. Ayala as soon as reasonably possible.

Regards,

Alex

**From:** Annette Balestra [mailto:abalestra@riberoayalalaw.com] **On Behalf Of** Susy Ribero-Ayala
**Sent:** Thursday, February 12, 2015 6:20 PM
**To:** Alex
**Cc:** crewesq@crewadvocacy.com; 'Frank Quintero JR'; 'J P Broche'; 'Guy Lewis'; 'Silvia Pinera-Vazquez'
**Subject:** Re: US v. Collazo; Failure to Comply with Court Order and Motion for Contempt

-----------------
<image002.png>
SUSY RIBERO-AYALA, Esq.
Attorney at law

The Law Office of Susy Ribero-Ayala, P.A.
201 Alhambra Circle, Suite 1200
Coral Gables, Florida 33134
Ph: 305.854.4711

LEGAL DISCLAIMER

The information transmitted is intended solely for the individual or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of or taking action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you have received this email in error please contact the sender and delete the material from any computer.

**From:** Alex <agonzalez@quinterolaw.net>
**Date:** Thursday, February 12, 2015 at 12:07 PM
**To:** Susy Ribero-Ayala <susy@riberoayalalaw.com>
**Cc:** Julio <crewesq@crewadvocacy.com>, 'Frank Quintero JR'
<fquintero@quinterolaw.net>, 'J P Broche' <jpbroche@quinterolaw.net>, 'Guy Lewis'
<glewis@lewistein.com>, Sylvia Pinera-Vazquez <spinera@aol.com>, 'John Couriel'
<John.Couriel@kobrekim.com>
**Subject:** RE: US v. Collazo; Failure to Comply with Court Order and Motion for Contempt

Mrs. Ribero-Ayala and Mr. Ayala,

Let this e-mail serve as a follow-up to Frank's correspondence moments ago.

Please be advised that it is not our obligation to inform you of the documents that we
"would like to have." The Court's Order and the subject Subpoenas are extremely clear
as to what categories of documents are to be produced. We would recommend that you
review both the Order and the Subpoenas collectively to ensure that you are providing
all the required documents. To date we have had to advise you on numerous occasions
that your productions have been insufficient and that documents we know to exist have
not been produced. There is no reason for our office to have to be pouring over the
documentation provided by you to determine if you have really turned over all
documents subject to disclosure. The onus is not on us to ensure that full compliance is
made with the Court's Order. It is on you. In fact, there is no better and/or
knowledgeable party than you to ensure full production is made. You were the one who
made the payments, who received them, and/or were aware and/or knew of said
monetary transfers. Therefore, it is clearly your responsibility and obligation to ensure
that full compliance is made and ALL the subject documentation is disclosed. Regardless
of whether you claim a payment was made in error, returned, never received, etc.,
those transactions are still subject to disclosure and this should be turned over.

As Frank has previously advised you, we are not the party who has been ordered to
produce documents by Judge Altonaga. As such, we will not be going to your office to
review documents and tell you what needs to be turned over. You are more than
capable of making that determination on your own, should you truly wish to comply
with the Court's Order and not stall a resolution to a rather simple matter. This is
honestly becoming a tiring exercise for our office and our patience towards this matter
is wearing thin. None of the other Parties (ie. the other lawyers, MLB, and Dr. Estefania)
have had any problem following the Court's Order and ensuring that they comply with
the subject subpoenas and Orders. However, on a constant basis you have stalled and
failed to fully comply with our requests. Therefore, be advised that this will be the last
attempt we will make to resolve this issue amicably. In the event that you do not
produce everything subject to the subpoenas by delivering it to our office, we will not
withdraw our motion, we will be filing a supplemental motion advising the Court of the
full scope of your actions herein (including the information in the prior draft for
sanctions that we sent to you) and move for the Court to impose severe sanctions
against you both. Enough is enough. You have played games with our office from the
beginning, when this is a simple matter that should have been resolved months ago.

To expedite production and avoid the need for you hand delivering the documents, we
would be willing to accept the production via e-mail. If I receive the documents via e-
mail I will send you a confirmation e-mail for your records advising that said production

was received. If and when full production is received, we will withdraw our Motion. However, we will not take such action until you fully comply with the Court's Order.

As to your inquiry regarding the $7,500.00 Amex payment you redacted, be advised that the redaction did not block out the information and it is clearly legible. Moreover, I will reiterate our position that such redactions are completely improper. These are your personal accounts and clearly counseling services for a drug addiction (which is publically known) are not subject to redaction. Therefore, we request for the last time that you ensure that only work-product and/or attorney-client privileged information is redacted. If you continue to overly redact the documents produced we will not consider that to be full compliance and we will proceed with our Motion. Lastly, as you are surely aware at this point, we have undertaken our own independent investigation which has revealed substantial information regarding Mr. Badree, Mr. Ayala, Mr. Bosch, and your conduct regarding the MLB monies. We have no obligation to inform you of how or what information we obtained. However, I will advise you that we have information tending to show that your position is unsupported and you continue to fail to fully disclose all the monetary benefits received and/or paid on behalf of Bosch. If you continue to underestimate our information, we will have no choice but to file it with the Court and advise the Judge that you have only provided what you think we should get and not the full amount of documents. Therefore, we suggest that you stop giving us bits and pieces as you see fit and fully comply with the Court's Order in full. This is the last communication we will have on this subject. Either comply with the Court's Order fully or you will force us to proceed accordingly.

Regards,

Alejandro Gonzalez Contrera
    Attorney at Law

<IMAGE003.JPG>

75 Valencia Avenue
Suite 800
Coral Gables, FL 33134
Tel.: 305-446-0303
Fax: 305-446-4503
E-mail: agonzalez@quinterolaw.net

From: Susy Ribero Ayala [mailto:susy@Riberoayalalaw.com]
Sent: Wednesday, February 11, 2015 9:42 PM
To: Alex
Cc: <crewesq@crewadvocacy.com>; Frank Quintero JR; J P Broche; Guy Lewis
Subject: Re: US v. Collazo; Failure to Comply with Court Order and Motion for Contempt

I am more than happy to go back and look at my american Express bills. Please let me know what other documents you would like to have

Sent from my iPhone

On Feb 11, 2015, at 6:46 PM, Alex <agonzalez@quinterolaw.net> wrote:

Mrs. Ribero-Ayala,

Let this e-mail confirm that I have just received the supplemental production hand-delivered to our office moments ago. After reviewing the supplemental production, I would like to advise you that there still remain outstanding payments that have not been disclosed. Moreover, the account information provided on behalf of Mr. Ayala is completely illegible. We would request that you provide legible copies of Mr. Ayala's documents.

As it pertains to the outstanding documents, I would like to advise you that we have documents tending to show that you continue to fail to disclose all monies spent on behalf of Mr. Bosch. In fact, our investigation has revealed that on or about February 18, 2014 you received an American Express payment to your account (which corresponds with the same account you provided excerpts from) in the amount of $20,011.96, for monies spent for the benefit of Mr. Bosch. We would once again request that you double check your records and fully comply with the requirements of the Court Order. Once we have received full compliance from you we will withdraw our Motion. However, until such time when full disclosure is made and legible copies are provided (without excessive redactions) we will not be withdrawing our Motion.

Moreover, as Mr. Quintero advised you this morning the Court's Order allowed for the redaction of work-product and/or attorney client communications. However, you have redacted records well beyond the Court's mandate. For instance, one of the payments provided as part of the supplemental production is a $7,500 payment made from your personal American Express Account, which is the same previously addressed herein, for "Therapeutic Horizons Miami Lakes...Counseling Services." There is absolutely no work-product and/or attorney-client privilege that would allow you to redact a payment for "counseling services" made on behalf of Mr. Bosch. This is just one instance of many where the redactions have gone well beyond the Court's Order. Therefore, we would request that you review the documents provided and ensure that only privileged information is redacted.

As I stated to you during our communications last night, any understanding you (or Mr. Ayala) may have regarding the Mr. Collazo's case and/or resolution thereto is immaterial. As I advised you, until we have received a signed plea agreement, the Judge has accepted a plea, and/or Mr. Collazo has been sentenced any understanding you may have has absolutely no bearing on your obligation to comply with the subject subpoenas and the Court's Order. As to your statements regarding my "last misrepresentation," be advised that the e-mail was sent at noon and you were provided until the end of business to respond. Moreover, Mr. Ayala was a party to the e-mail and could have responded and/or advised that you were unavailable and required more time. Notwithstanding, I hope that this e-mail provides you sufficient time to fully comply with the Court's Order.

Thank you for your attention to this matter. If you have any questions or wish to discuss this further, as always you may contact us at the number below.

Regards,

Alejandro Gonzalez Contrera
Attorney at Law

<IMAGE003.JPG>

75 Valencia Avenue
Suite 800
Coral Gables, FL 33134
Tel.: 305-446-0303
Fax: 305-446-4503
E-mail: agonzalez@quinterolaw.net

From: Susy Ribero-Ayala [mailto:Susy@Riberoayalalaw.com]
Sent: Tuesday, February 10, 2015 7:11 PM
To: Alex; crewesq@crewadvocacy.com
Cc: Frank Quintero JR; 'J P Broche'; Guy Lewis; crewesq@crewadvocacy.com
Subject: Re: US v. Collazo; Failure to Comply with Court Order and Motion for Contempt

Dear Alex:

While I would like to be able to respond to all my e-mails in a timely manner, my schedule does not always permit it. I was out of the office and unavailable to respond until now. First, my understanding is that Mr. Collazo has reached a plea deal with the government. It is further my understanding that Mr. Collazo will be pleading to two misdemeanor counts.

Further, you misrepresent my husband's statement. Julio Ayala NEVER said he made any payments to Tony Bosch out of our personal account. No bank statements were provided for any of our personal accounts as there are no payments which correspond to the Court's order. Furthermore, as I have repeatedly stated to you, neither Nuceria Inc. or Biogenesis Supplements Inc. ever had any bank accounts nor did they conduct any financial transactions.

As for Law Offices of Julio J. Ayala, I will provide those statements if they have not already been provided. They are attached here.

Your last misrepresentation is that you have attempted to confer or discuss this matter with either myself or Julio Ayala. I received this e-mail while in a meeting and then went to another meeting on matters that required my immediate attention. Please feel free to file your motion for contempt with the Court. I can not respond to your e-mails immediately and would be more than happy to provide additional documents if asked in a timely

6

manner. Again, I have not heard from you since we met and I provided you with the original documents. It takes a significant amount of time and effort to compile and redact all relevant documents. I am more than happy to provide you what I have right now. Otherwise, please file all appropriate motions and I will respond accordingly.

Susy Ribero-Ayala

<IMAGE002.PNG>

SUSY RIBERO-AYALA, ESQ.

201 ALHAMBRA CIRCLE

SUITE 1200

CORAL GABLES, FL 33134

TEL.: (305)854-4711

E-MAIL: SUSY@RIBEROAYALALAW.COM

THE INFORMATION CONTAINED IN THIS TRANSMISSION MAY CONTAIN PRIVILEGED AND CONFIDENTIAL INFORMATION. IT IS INTENDED ONLY FOR THE USE OF THE PERSON(S) NAMED ABOVE. IF YOU ARE NOT THE INTENDEDRECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION OR DUPLICATION OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE. TO REPLY TO US DIRECTLY, PLEASE SEND AN EMAIL TO SUSY@RIBEROAYALALAW.COM

**From:** Alex <agonzalez@quinterolaw.net>
**Date:** Tue, 10 Feb 2015 12:29:51 -0500
**To:** Suzy Ribero-Ayala <Susy@Riberoayalalaw.com>,
<crewesq@crewadvocacy.com>
**Cc:** Frank Quintero JR <fquintero@quinterolaw.net>, 'J P Broche'
<jpbroche@quinterolaw.net>
**Subject:** Re: US v. Collazo; Failure to Comply with Court Order and Motion for Contempt

Mrs. Ribero-Ayala and Mr. Ayala,

Let this e-mail serve as formal notice that the documents produced by you to our office on January 30, 2015 fail to comply with Judge Altonaga's January 21, 2015 Order. Specifically, the documents produced by you do not include any bank statements and/or documents from Mr. Ayala's and/or your personal account. Furthermore, no documents from the bank account for Julio's law firm were provided. Be advised that the Subpoenas and Order required that said records be produced and your failure to produce these documents is a clear violation of the Court's Order.

Moreover, based on a thorough review of the records provided, which consist of the bank statements and invoices for Susy Ribero-Ayala, P.A., and invoices from Julio's law firm to MLB, it is clear that the records were overedacted to the point where they are of no use to Mr. Collazo's defense. Furthermore, it has also become apparent that certain redactions were in direct violation of this Court's Order and undertaken to conceal payments that are obviously subject to the reach of the Subpoenas and the Court's Order. Pursuant to the Subpoenas and the Court's Order, the Ribero-Ayala Parties were to produce the following:

?    Copies of any and all checks, statements, invoices, receipts, and/or documents pertaining to monies paid by Major League Baseball, including but not limited to any representative, department, and/or employee (hereinafter collectively "MLB"), received by you in connection with the representation of Anthony Bosch (and/or any third-party individual and/or entity in any way related to Anthony Bosch), from January 1, 2009 through the Present.

?    Copies of any and all invoices, statements, and/or documents provided to MLB for the payment of monies in connection with the representation of Anthony Bosch (and/or any third-party individual and/or entity in any way related to Anthony Bosch), from January 1, 2009 through the Present. This request is exclusive of any and all work-product and/or attorney-client documents.

?    Copies of any and all documents, statements, invoices, receipts, and/or records pertaining to any and all payments made by and/or on behalf of you to and/or for the benefit of Anthony Bosch (and/or any third-party individual and/or entity in any way related to Anthony Bosch), Nuceria, Inc., RPO, LLC., and/or Biogenesis Supplements, Inc., from January 1, 2009 through the Present.

However, our independent investigation has revealed that you failed to disclose payments received and/or made by you and/or your firm to and/or for the benefit of Bosch. For instance, I am attaching a copy of two (2) checks from Professional Protection, Inc.'s account which were made to Mrs. Ribero-Ayala's Trust Account for "child support." In light of the fact that we have previously discovered child support payments made by Mrs. Ribero-Ayala on behalf of Bosch, it is indisputable that Mr. Badree was paying Mrs. Ribero-Ayala for Bosch's child support. Noticeably, these payments for Bosch's child support, as well as those received from Badree (who received money from MLB), are redacted

and/or omitted from the documents produced to our office. Moreover, you have previously been made aware of the existence of child support payments in Bosch's family case, which were issued by Mrs. Ribero-Ayala's firm, however this payment on December 13, 2013 was redacted from the documents produced as well. For you ease of reference I have also attached a copy of this check. Also be advised that Mr. Ayala himself confirmed to our office that he gave money from his personal account to Bosch. However, no documents from Mr. Ayala's personal bank account (or his law firm) were produced.

Moreover, the Court's Order stated that the subpoenas "excludes attorney work product and attorney-client material, which is to be redacted from disclosed documents." The redactions undertaken by you and the failure to produce the personal bank records for you and Mr. Ayala, as well as Mr. Ayala' law firm are clear violations of the Subpoenas, as well as this Court's Order. While the Court's Order, as well as our Subpoenas, allowed for the redaction of any work-product or attorney client communication, the redactions undertaken by you (or on your behalf) go well beyond those allowed by the Court. There is no justification for the redaction of the bank records, which unlike the billing invoices, do not contain any mention of what services were being billed for and/or the services rendered as part of Bosch's representation.

Mrs. Ribero-Ayala and Mr. Ayala, our office has been more than willing to resolve these issue with you in a private and amicable manner. At every turn our professionalism and courteous actions have been rebuffed by you. You have forced our hand to litigate this issue and bring certain matters, which we were willing to keep private, to the public via our filings. Moreover, we have extended every courtesy to you in obtaining these records from you, including me personally meeting with Mrs. Ribero-Ayala to pick-up the documents on a Friday night. This is the last courtesy we will extend either of you in this matter, if we do not receive the outstanding documents (ie. Mr. Ayala's personal account, Mr. Ayala's Law firm's bank account, and Mrs. Ribero-Ayala's personal account) in unredacted form by 5:00 PM today at our office, we will be filing a Motion for Contempt with the Court at 5:01 PM today. As set forth above, the bank records sought by the Subpoenas are not subject to any work-product or attorney-client privilege and should be produced in unredacted form. Therefore, be advised that if the records are not delivered to our office in unredacted form by 5:00 PM today, we will file a Motion for Contempt against both of you with the Court immediately thereafter. If you have any questions, you may call our office at the number below. However, I advise you that anything short of producing the records to our office by 5:00 PM today will be considered a failure to comply.

Regards,

Alejandro Gonzalez Contrera
Attorney at Law

<image003.jpg>

75 Valencia Avenue
Suite 800

9

Coral Gables, FL 33134
Tel.: 305-446-0303
Fax: 305-446-4503
E-mail: agonzalez@quinterolaw.net

<Jayala docs_2015_02_13_16_30_39_410.pdf>

**From:** Alex <agonzalez@quinterolaw.net>
**Date:** Thu, 12 Feb 2015 12:07:09 -0500
**To:** Suzy Ribero-Ayala <Susy@Riberoayalalaw.com>
**Cc:** <crewesq@crewadvocacy.com>, 'Frank Quintero JR' <fquintero@quinterolaw.net>, 'J P Broche'
<jpbroche@quinterolaw.net>, 'Guy Lewis' <glewis@lewistein.com>, 'Silvia Pinera-Vazquez' <spinera@aol.com>, 'John
Couriel' <John.Couriel@kobrekim.com>
**Subject:** RE: US v. Collazo; Failure to Comply with Court Order and Motion for Contempt

Mrs. Ribero-Ayala and Mr. Ayala,

Let this e-mail serve as a follow-up to Frank's correspondence moments ago.

Please be advised that it is not our obligation to inform you of the documents that we "would like to have." The Court's
Order and the subject Subpoenas are extremely clear as to what categories of documents are to be produced. We would
recommend that you review both the Order and the Subpoenas collectively to ensure that you are providing all the
required documents. To date we have had to advise you on numerous occasions that your productions have been
insufficient and that documents we know to exist have not been produced. There is no reason for our office to have to
be pouring over the documentation provided by you to determine if you have really turned over all documents subject
to disclosure. The onus is not on us to ensure that full compliance is made with the Court's Order. It is on you. In fact,
there is no better and/or knowledgeable party than you to ensure full production is made. You were the one who made
the payments, who received them, and/or were aware and/or knew of said monetary transfers. Therefore, it is clearly
your responsibility and obligation to ensure that full compliance is made and ALL the subject documentation is disclosed.
Regardless of whether you claim a payment was made in error, returned, never received, etc., those transactions are
still subject to disclosure and this should be turned over.

As Frank has previously advised you, we are not the party who has been ordered to produce documents by Judge
Altonaga. As such, we will not be going to your office to review documents and tell you what needs to be turned over.
You are more than capable of making that determination on your own, should you truly wish to comply with the Court's
Order and not stall a resolution to a rather simple matter. This is honestly becoming a tiring exercise for our office and
our patience towards this matter is wearing thin. None of the other Parties (ie. the other lawyers, MLB, and Dr.
Estefania) have had any problem following the Court's Order and ensuring that they comply with the subject subpoenas
and Orders. However, on a constant basis you have stalled and failed to fully comply with our requests. Therefore, be
advised that this will be the last attempt we will make to resolve this issue amicably. In the event that you do not
produce everything subject to the subpoenas by delivering it to our office, we will not withdraw our motion, we will be
filing a supplemental motion advising the Court of the full scope of your actions herein (including the information in the
prior draft for sanctions that we sent to you) and move for the Court to impose severe sanctions against you both.
Enough is enough. You have played games with our office from the beginning, when this is a simple matter that should
have been resolved months ago.

To expedite production and avoid the need for you hand delivering the documents, we would be willing to accept the
production via e-mail. If I receive the documents via e-mail I will send you a confirmation e-mail for your records
advising that said production was received. If and when full production is received, we will withdraw our Motion.
However, we will not take such action until you fully comply with the Court's Order.

As to your inquiry regarding the $7,500.00 Amex payment you redacted, be advised that the redaction did not block out
the information and it is clearly legible. Moreover, I will reiterate our position that such redactions are completely
improper. These are your personal accounts and clearly counseling services for a drug addiction (which is publically
known) are not subject to redaction. Therefore, we request for the last time that you ensure that only work-product
and/or attorney-client privileged information is redacted. If you continue to overly redact the documents produced we
will not consider that to be full compliance and we will proceed with our Motion. Lastly, as you are surely aware at this
point, we have undertaken our own independent investigation which has revealed substantial information regarding Mr.

Badree, Mr. Ayala, Mr. Bosch, and your conduct regarding the MLB monies. We have no obligation to inform you of how or what information we obtained. However, I will advise you that we have information tending to show that your position is unsupported and you continue to fail to fully disclose all the monetary benefits received and/or paid on behalf of Bosch. If you continue to underestimate our information, we will have no choice but to file it with the Court and advise the Judge that you have only provided what you think we should get and not the full amount of documents. Therefore, we suggest that you stop giving us bits and pieces as you see fit and fully comply with the Court's Order in full. This is the last communication we will have on this subject. Either comply with the Court's Order fully or you will force us to proceed accordingly.

Regards,

Alejandro Gonzalez Contrera
    Attorney at Law



75 Valencia Avenue
Suite 800
Coral Gables, FL 33134
Tel.: 305-446-0303
Fax: 305-446-4503
E-mail: agonzalez@quinterolaw.net


**From:** Susy Ribero Ayala [mailto:susy@Riberoayalalaw.com]
**Sent:** Wednesday, February 11, 2015 9:42 PM
**To:** Alex
**Cc:** <crewesq@crewadvocacy.com>; Frank Quintero JR; J P Broche; Guy Lewis
**Subject:** Re: US v. Collazo; Failure to Comply with Court Order and Motion for Contempt

I am more than happy to go back and look at my american Express bills. Please let me know what other documents you would like to have

Sent from my iPhone

On Feb 11, 2015, at 6:46 PM, Alex <agonzalez@quinterolaw.net> wrote:

Mrs. Ribero-Ayala,

Let this e-mail confirm that I have just received the supplemental production hand-delivered to our office moments ago. After reviewing the supplemental production, I would like to advise you that there still remain outstanding payments that have not been disclosed. Moreover, the account information provided on behalf of Mr. Ayala is completely illegible. We would request that you provide legible copies of Mr. Ayala's documents.

As it pertains to the outstanding documents, I would like to advise you that we have documents tending to show that you continue to fail to disclose all monies spent on behalf of Mr. Bosch. In fact, our investigation has revealed that on or about February 18, 2014 you received an American Express

## Alex

| | |
|---|---|
| **From:** | Susy Ribero-Ayala <Susy@Riberoayalalaw.com> |
| **Sent:** | Thursday, February 12, 2015 1:40 PM |
| **To:** | crewesq@crewadvocacy.com; Alex |
| **Cc:** | 'Frank Quintero JR'; 'J P Broche'; 'Guy Lewis'; 'Silvia Pinera-Vazquez'; 'John Couriel' |
| **Subject:** | Re: US v. Collazo; Failure to Comply with Court Order and Motion for Contempt |
| **Attachments:** | image001.jpg |

Gentelemen:

I disagree with your assessment that counseling services for my client, are not privileged. I also disagree with you that the redacted copy is legible. That will be for the Court to decide. I am, once again, looking through all my bills and banking statements, to determine if anything was inadvertently left out of my original response. I have compiled bank statements and will cross check them with my American Express account. This will be provided to you by day's end. Again, as Julio said, if there is something in particular you're looking for, please let me know and I am more than happy to provide it.

Best,

Susy Ribero-Ayala



SUSY RIBERO-AYALA, ESQ.

201 ALHAMBRA CIRCLE

SUITE 1200

CORAL GABLES, FL 33134

TEL.: (305)854-4711

E-MAIL: SUSY@RIBEROAYALALAW.COM

THE INFORMATION CONTAINED IN THIS TRANSMISSION MAY CONTAIN PRIVILEGED AND CONFIDENTIAL INFORMATION. IT IS INTENDED ONLY FOR THE USE OF THE PERSON(S) NAMED ABOVE. IF YOU ARE NOT THE INTENDEDRECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION OR DUPLICATION OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU ARE NOT THE INTENDED RECIPIENT,

PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE. TO REPLY TO US DIRECTLY, PLEASE SEND AN EMAIL TO SUSY@RIBEROAYALALAW.COM

**From:** "crewesq@crewadvocacy.com" <crewesq@crewadvocacy.com>
**Date:** Thu, 12 Feb 2015 11:19:02 -0700
**To:** Alex <agonzalez@quinterolaw.net>, Suzy Ribero-Ayala <Susy@Riberoayalalaw.com>
**Cc:** 'Frank Quintero JR' <fquintero@quinterolaw.net>, 'J P Broche' <jpbroche@quinterolaw.net>, 'Guy Lewis' <glewis@lewistein.com>, 'Silvia Pinera-Vazquez' <spinera@aol.com>, 'John Couriel' <John.Couriel@kobrekim.com>
**Subject:** Re: US v. Collazo; Failure to Comply with Court Order and Motion for Contempt

First of all, both you and Frank really need to spare me your lectures on how to practice law. Second of all, Judge Altonaga's Order states: "the first, fourth, and fifth categories of the Ayala subpoenas are permissible; the second and third are not". I have produced all I have in my possession which fall under these permissible categories. I am not aware of anything else I have that I should have produced. Hence, my invitation for you to come and inspect with your own eyes. Alternatively, please specify what it is you think I am withholding that you feel falls under the Order and I will GLADLY produce it. If there is something you are aware that I perhaps may be overlooking or forgotten about, please advise. I am not playing any "cat and mouse" games. I am just simply very annoyed by your insistence that I produce things that I am not aware exist. As I have repeatedly told you neither Biogenesis Supplements, Nuceria (which I had forgotten I even appeared as registered agent for ) never, ever did anything other than incorporate with the Division of Corporations. I have nothing because nothing exists in any way, shape or form related to these entities. I have nothing and do not know anything about RPO LLC. I have produced all my invoices to MLB. I have offered you the 1099 issued to me by the MLB and filed by me with the IRS. I have produced invoices from Professional Services and Fitzpatrick communications. I simply do not understand what on Earth it is you think I have which I haven' t produced that has been Ordered to be produced. File whatever motion you wish and seek the death penalty if you want. I am sure Her Honor will not take kindly to you wasting everyone's time with dreamed up conspiracy theories.

Regards,

*Julio J. Ayala, Esq.*

CREWMEMBER & MARITIME ADVOCACY CENTER, P.A.



*66 West Flagler Street suite 200*
*Miami, Florida 33130*
*P. 305- 374 9099*
*F. 305- 374-5099*
mailto:crewesq@crewadvocacy.com
*Web:www.crewadvocacy.com*

**From:** Alex <agonzalez@quinterolaw.net>
**Date:** Thursday, February 12, 2015 12:07 PM
**To:** "Susy@riberoayalalaw.com" <Susy@riberoayalalaw.com>

Alex

| | |
|---|---|
| **From:** | Frank Quintero <fquintero@quinterolaw.net> |
| **Sent:** | Thursday, February 12, 2015 11:44 AM |
| **To:** | 'Susy Ribero-Ayala'; crewesq@crewadvocacy.com |
| **Cc:** | Guy Lewis; 'Alex'; 'J P Broche'; 'Silvia Pinera-Vazquez'; 'John Couriel' |
| **Subject:** | RE: US v. Collazo; Failure to Comply with Court Order and Motion for Contempt |

Susy and Julio you are not in a position to demand that we disclose investigative techniques and methods that we use in representing our clients. You are also not in a position to demand that we go to your office(s) to look at any documents. The subpoena and court order are crystal clear and you are required to produce all documentation in the categories ordered by the court. Lewis Tien, Silvia Pinera-Vazquez, and MLB complied correctly with the court's order without any kind issues such as those that you have created and caused the filing of a motion for contempt. They all delivered the documents to my office as required by the order and professionalism. We were never asked by any of those parties to go to their offices to inspect anything. As a result of having to file that motion you have hurt your client, who is scheduled for sentencing on Tuesday, because of financial documentation disclosures that we had to file. It was never our intention to disclose any financial documentation until AFTER Bosch was sentenced and only if absolutely necessary.

I recommend that you seek legal advice because your are placing yourselves in a very dangerous position with the court. All documents relating to monies paid by MLB and/or third parties for Bosch together with any payments made by you directly or indirectly for Bosch's benefit, including payments to third parties MUST be provided. Only attorney-client and work product matters may be redacted. Everything else must be disclosed. (See the court's order and subpoena).

If you continue with this cat and mouse game, you are going to force me to ask the court to impose some very serious sanctions against both of you. Be smart, turn over the documents (example: all bank statements, American Express Statements, checks, wire transfers , etc...). Once we receive the correct documents in the correct format as ordered by the court we will withdraw our motion. However if the documents are not received immediately we will not withdraw the motion.

Please don't waste our time with anymore emails pretending to want to comply. Just comply with the court's order.

*Frank Quintero Jr.*
*Attorney at Law*



QUINTERO BROCHE"
ATTORNEYS AND COUNSELORS AT LAW

*75 Valencia Avenue, Suite 800*
*Coral Gables, Fl. 33134*
*Tel: 305-446-0303*
*Fax: 305-446-4503*
*E-Mail: fquintero@quinterolaw.net*

Web: www.quinterolaw.net

AV® Preeminent™ Rated & AV®Peer Review Rated
Martindale-Hubbell® Lawyer Ratings
Super Lawyers®
Top Lawyers in Florida
TOP ATTORNEYS IN FLORIDA
The Wall Street Journal & Miami Magazine

**From:** Susy Ribero-Ayala [mailto:susy@Riberoayalalaw.com]
**Sent:** Thursday, February 12, 2015 11:03 AM
**To:** Alex
**Cc:** <crewesq@crewadvocacy.com>; Frank Quintero JR; J P Broche; Guy Lewis; Michael Patrick Sullivan; Sharad A. Motiani
**Subject:** Re: US v. Collazo; Failure to Comply with Court Order and Motion for Contempt

Gentlemen:

I am happy to cancel my schedule this afternoon and provide you with access to all documents in my possession. We would be better served meeting in my office so if there is anything more you want , I can attempt to locate it. I am providing the documents you requested in your last e-mail. More importantly, however, since My American Express bill was redacted in compliance with the court's order, how did you know who the 7500.00 payment was for? Further, how did you become aware of the payment made on my American Express card which was made in error and corrected the following day? Those accounts can only be provided by me and I did not provide that information as it is not required by the Court's order.

Please let me know what time works for you so we can spend out time on more important matters.

Susy Ribero-Ayala


Susy Ribero-Ayala, Esq.
201 Alhambra Circle
Suite 1200
Coral Gables, FL 33134
Tel:(305)854-4711
Fax:(305)468-6197

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

On Feb 11, 2015, at 6:46 PM, Alex <agonzalez@quinterolaw.net> wrote:

Mrs. Ribero-Ayala,

Let this e-mail confirm that I have just received the supplemental production hand-delivered to our office moments ago. After reviewing the supplemental production, I would like to advise you that there still remain outstanding payments that have not been disclosed. Moreover, the account information

provided on behalf of Mr. Ayala is completely illegible. We would request that you provide legible copies of Mr. Ayala's documents.

As it pertains to the outstanding documents, I would like to advise you that we have documents tending to show that you continue to fail to disclose all monies spent on behalf of Mr. Bosch. In fact, our investigation has revealed that on or about February 18, 2014 you received an American Express payment to your account (which corresponds with the same account you provided excerpts from) in the amount of $20,011.96, for monies spent for the benefit of Mr. Bosch. We would once again request that you double check your records and fully comply with the requirements of the Court Order. Once we have received full compliance from you we will withdraw our Motion. However, until such time when full disclosure is made and legible copies are provided (without excessive redactions) we will not be withdrawing our Motion.

Moreover, as Mr. Quintero advised you this morning the Court's Order allowed for the redaction of work-product and/or attorney client communications. However, you have redacted records well beyond the Court's mandate. For instance, one of the payments provided as part of the supplemental production is a $7,500 payment made from your personal American Express Account, which is the same previously addressed herein, for "Therapeutic Horizons Miami Lakes…Counseling Services." There is absolutely no work-product and/or attorney-client privilege that would allow you to redact a payment for "counseling services" made on behalf of Mr. Bosch. This is just one instance of many where the redactions have gone well beyond the Court's Order. Therefore, we would request that you review the documents provided and ensure that only privileged information is redacted.

As I stated to you during our communications last night, any understanding you (or Mr. Ayala) may have regarding the Mr. Collazo's case and/or resolution thereto is immaterial. As I advised you, until we have received a signed plea agreement, the Judge has accepted a plea, and/or Mr. Collazo has been sentenced any understanding you may have has absolutely no bearing on your obligation to comply with the subject subpoenas and the Court's Order. As to your statements regarding my "last misrepresentation," be advised that the e-mail was sent at noon and you were provided until the end of business to respond. Moreover, Mr. Ayala was a party to the e-mail and could have responded and/or advised that you were unavailable and required more time. Notwithstanding, I hope that this e-mail provides you sufficient time to fully comply with the Court's Order.

Thank you for your attention to this matter. If you have any questions or wish to discuss this further, as always you may contact us at the number below.

Regards,

Alejandro Gonzalez Contrera
Attorney at Law

<IMAGE003.JPG>

75 Valencia Avenue
Suite 800
Coral Gables, FL 33134
Tel.: 305-446-0303
Fax: 305-446-4503
E-mail: agonzalez@quinterolaw.net

## Alex

| | |
|---|---|
| **From:** | Susy Ribero Ayala <susy@Riberoayalalaw.com> |
| **Sent:** | Friday, January 30, 2015 7:32 PM |
| **To:** | Juan Pablo Broche |
| **Cc:** | Frank Quintero; Alex Gonzalez; <fqsec@quinterolaw.net> |
| **Subject:** | Re: Subpoena Compliance |

I eill deliver to your office in an hour. Is somebody there?

Sent from my iPhone

On Jan 30, 2015, at 6:41 PM, Juan Pablo Broche <jpbroche@quinterolaw.net> wrote:

Susy:

As a point of clarification, if you review the actual subpoenas, you will see that they require that the documents be delivered to our office. The Court's Order sets forth what items in those subpoenas need to be produced and by when.

I don't understand what your issue is with delivering the responsive documents to our office as set forth in the Subpoena. Every other third party who has produced documents in compliance with our subpoena had no issue delivering the items to our office. I don't see what undue burden or special situation renders this such a problem for you, especially considering that your office is mere blocks away from ours. As I mentioned previously, you and the other parties have had the subject subpoenas since early December 2014. You've also had ten (10) days since the Court's order to produce the subject documents. Moreover, when you were subpoenaed by the Government to produce documents in connection with this case, you clearly didn't have an issue delivering the subject documents to the Government, and I sincerely doubt you charged the US Attorney's Office for those copies. However, when production involves our Subpoenas, you apparently have an issue. I am having a tough time viewing this dichotomy as anything but an arbitrary decision on your part to be difficult, and don't see any basis as to why you take such issue with affording us the same treatment you afforded the Government when subpoenaed previously.

There is no need for this back and forth. I would appreciate if you would simply advise us when the responsive documents are delivered to our office. By the same token, if you refuse to deliver the documents to us, or intend to withhold production pending payment of copying costs, please advise of the same so we can proceed accordingly.

JP Broche

Juan P. Broche
Attorney at Law

<IMAGE002.JPG>

75 Valencia Avenue
Suite 800

1

Coral Gables, FL 33134
Tel.: 305-446-0303
Fax: 305-446-4503
E-mail: jpbroche@quinterolaw.net

**From:** Susy Ribero-Ayala [mailto:Susy@Riberoayalalaw.com]
**Sent:** Friday, January 30, 2015 6:15 PM
**To:** Juan Pablo Broche
**Cc:** Frank Quintero; 'Alex Gonzalez'; fqsec@quinterolaw.net; Guy Lewis
**Subject:** Re: Subpoena Compliance

Dear Mr. Broche:

First, I was not paid the required witness fee.  Second, nothing in Judge Altonaga's order requires production *in your office.*

<IMAGE001.PNG>

SUSY RIBERO-AYALA, ESQ.

201 ALHAMBRA CIRCLE

SUITE 1200

CORAL GABLES, FL 33134

TEL.: (305)854-4711

E-MAIL: SUSY@RIBEROAYALALAW.COM

THE INFORMATION CONTAINED IN THIS TRANSMISSION MAY CONTAIN PRIVILEGED AND CONFIDENTIAL INFORMATION.  IT IS INTENDED ONLY FOR THE USE OF THE PERSON(S) NAMED ABOVE.  IF YOU ARE NOT THE INTENDEDRECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION OR DUPLICATION OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE.  TO REPLY TO US DIRECTLY, PLEASE SEND AN EMAIL TO SUSY@RIBEROAYALALAW.COM

**From:** Juan Pablo Broche <jpbroche@quinterolaw.net>
**Date:** Fri, 30 Jan 2015 16:59:21 -0500
**To:** Suzy Ribero-Ayala <Susy@Riberoayalalaw.com>

**Cc:** Frank Quintero <fquintero@quinterolaw.net>, 'Alex Gonzalez' <agonzalez@quinterolaw.net>, <fqsec@quinterolaw.net>
**Subject:** RE: Subpoena Compliance

Susy:

Thank you for getting back to me.

While we appreciate that all the third parties will produce documents, please be advised that pursuant to the Third Party Subpoenas, the production of documents pursuant to the Court's Jan. 21st Order requires that the subject documents be produced to us at our office (i.e., delivered to our office). Moreover, while you may provide me information regarding copying costs, be further advised that the court-ordered production of documents herein Is not contingent on us paying copying costs. At this juncture we have served numerous Rule 17(c) subpoenas to third parties. Not a single subpoenaed party, including MLB, sought to charge copying costs in connection with their production of documents pursuant to their subpoenas. I also remind you that upon being served with the subject Rule 17(c) subpoenas, all served parties were paid the required witness fee in connection with their obligations under the Subpoena, and provided a certification of business records (to possibly alleviate the need to call the served party as a witness at trial).

Based on the foregoing, the third parties must comply with their respective subpoenas and produce/deliver the subject documentation to us at our office before the expiration of the Court's compliance deadline. Requiring us to pick up the responsive documents from your office tomorrow (Saturday), and pay copying costs before receiving the documents, does not amount to compliance under the subpoenas. Therefore, be advised that in accordance with the Court's Order and the subject subpoenas, you and the other third parties are required to deliver the responsive documents to our office. If you wish to take up the issue of copying costs, you can go ahead and do so via Motion with the Court after you comply with your production obligations. In the event that you do so, we will be happy to respond to such a Motion accordingly. However, If you and the other third parties do not intend to deliver the responsive documents to our office before the expiration of the Court ordered deadline, or if you do not intend to produce documents until you receive payment of copying costs, please advise of the same so that we can bring this matter before the Court by way of Motion pursuant to Rule 17(g).

I will await your response to ascertain whether any further action will be necessary. In an effort to avoid needless litigation, I request that you reconsider your position and properly comply by delivering the subject documents to our office as required.

Thank you.

JP Broche

Juan P. Broche
Attorney at Law

<IMAGE002.JPG>

75 Valencia Avenue
Suite 800
Coral Gables, FL 33134
Tel.: 305-446-0303
Fax: 305-446-4503
E-mail: jpbroche@quinterolaw.net

3

**From:** Susy Ribero-Ayala [mailto:Susy@Riberoayalalaw.com]
**Sent:** Friday, January 30, 2015 2:02 PM
**To:** Juan Pablo Broche
**Subject:** Re: Subpoena Compliance

Dear Juan Pablo:

All third parties will comply. Please have somebody from your office pick up all the documents tomorrow at 4:00 p.m. At my office. I will inform you of the cost of copies later today. Please bring a check with you for said copies.

Susy Ribero-Ayala

<IMAGEOO1.PNG>

SUSY RIBERO-AYALA, ESQ.

201 ALHAMBRA CIRCLE

SUITE 1200

CORAL GABLES, FL 33134

TEL.: (305)854-4711

E-MAIL: SUSY@RIBEROAYALALAW.COM

THE INFORMATION CONTAINED IN THIS TRANSMISSION MAY CONTAIN PRIVILEGED AND CONFIDENTIAL INFORMATION. IT IS INTENDED ONLY FOR THE USE OF THE PERSON(S) NAMED ABOVE. IF YOU ARE NOT THE INTENDEDRECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION OR DUPLICATION OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE. TO REPLY TO US DIRECTLY, PLEASE SEND AN EMAIL TO SUSY@RIBEROAYALALAW.COM

**From:** Juan Pablo Broche <jpbroche@quinterolaw.net>
**Date:** Fri, 30 Jan 2015 13:12:58 -0500
**To:** Suzy Ribero-Ayala <Susy@Riberoayalalaw.com>, 'Frank Quintero' <fquintero@quinterolaw.net>

**Cc:** 'Alex Gonzalez' <agonzalez@quinterolaw.net>, 'Guy Lewis' <glewis@lewistein.com>
**Subject:** RE: Subpoena Compliance

Susy:

I was away from my office but was advised that you called me earlier to discuss our position as it relates to your request to the Court for an extension of time to comply with the Court's January 21, 2015 Order. I have conferred with Frank (who is out of town until early next week) and he asked me to respond to your prior email and convey our position.

Please be advised that in the event you file a Motion on behalf of yourself, your P.A., your husband, your husband's P.A., and/or Dr. Estefania, requesting an extension of time to comply with the Court's Order on the Third Party subpoenas, we object to such request and will oppose that Motion. We object based on the following:

- All the Parties subject to the Court's January 21, 2015 have had more than ample time to compile and produce the responsive documents to us.

- In your prior email, you seem to suggest that because you are compiling the responsive documents for other third parties as well as yourself and your firm, that you need additional time. However, each individual and entity subject to the Court's January 21, 2015 Order is responsible for complying with the Court's Order on or before January 31, 2015 by providing the subject documents directly to us. The Court Order does not allow for the Parties to turn over documents to a third party who will in turn provide them to us when they are able to. Therefore, your decision to compile documents for others other than your office, and yourself, is not proper grounds for any extension herein.

- Your representation that you are compiling Dr. Estefania's responsive documents is directly contradicted by our written communications with Dr. Estefania during the course of this week wherein he confirmed that he had compiled his responsive documents (which amount to a small number of documents) and would be providing those to our office by today. Therefore, we question whether your prior email, and any request for an extension of time, are founded in good faith and candid representations, rather than just dilatory tactics.

Frank also advised me to inform you that in the event that we do not receive the responsive documents, in their entirety, from you and all of the other Third Parties by the deadline set forth in the Court's Jan. 21st Order, we will not hesitate to file a Motion for Order to Show Cause and seek that any such party be held in contempt pursuant to Rule 17(g). Therefore, we expect production of the subject documents by the deadline set forth in the Court's Order. In the event you file a Motion seeking an extension of time, let this email serve as proper notice that we not only oppose that Motion but will also proceed accordingly with our own Motion to hold in contempt any party failing to comply with the Court's prior Order.

In the event you have any questions or wish to coordinate the delivery of the subject responsive documents, I will be available at my office. Otherwise, govern yourself accordingly.

Regards,

Juan P. Broche

Juan P. Broche

Attorney at Law

<IMAGE002.JPG>

75 Valencia Avenue
Suite 800
Coral Gables, FL 33134
Tel.: 305-446-0803
Fax: 305-446-4503
E-mail: jpbroche@quinterolaw.net

**From:** Susy Ribero-Ayala [mailto:Susy@Riberoayalalaw.com]
**Sent:** Friday, January 30, 2015 10:37 AM
**To:** Frank Quintero
**Cc:** JP Broche; Alex Gonzalez; Guy Lewis
**Subject:** Re: Subpoena Compliance

Dear Frank:
I am in the process of preparing the responses to the subpoenas issued to me, my P.A., Julio, Julio's P.A. and Ray Estefania. Although I can partially comply by the end of business today, I will be filing a motion with the court for an extension until Wednesday to compile the necessary documentation to comply with the remainder of the subpoena. Do you have an objection to an extension until Wednesday?

Best,

Susy Ribero-Ayala

<IMAGE001.PNG>

SUSY RIBERO-AYALA, ESQ.

201 ALHAMBRA CIRCLE

SUITE 1200

CORAL GABLES, FL 33134

TEL.: (305)854-4711

E-MAIL: SUSY@RIBEROAYALALAW.COM

THE INFORMATION CONTAINED IN THIS TRANSMISSION MAY CONTAIN PRIVILEGED AND CONFIDENTIAL INFORMATION.  IT IS INTENDED ONLY FOR THE USE OF THE PERSON(S) NAMED ABOVE.  IF YOU ARE NOT THE INTENDEDRECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION OR DUPLICATION OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE.  TO REPLY TO US DIRECTLY, PLEASE SEND AN EMAIL TO SUSY@RIBEROAYALALAW.COM

On 1/29/15, 2:35 PM, "Frank Quintero" <fquintero@quinterolaw.net> wrote:

I was not aware that Guy asked for an extension to comply with the subpoena. He asked for an extension to reply to our response to his motion which we agreed. They may have spoken to JP or Alex. I am on vacation and will not be back until tuesday. I have copied them on this response. You are going to have to speak to them. To my knowledge no extension has been requested on the subpoena. Also that was a court order. I can't grant extensions where the court has ordered something done by a certain date. Check with alex and jp. Thx

Frank Quintero Jr.
Attorney at Law
Quintero Broche P.A.
75 Valencia Ave, Suite 800
Coral Gables, Fl. 33134
Tel: 305-446-0303
Fax: 305-446-4503

Sent from my iPhone

On Jan 29, 2015, at 11:59 AM, Susy Ribero Ayala <susy@Riberoayalalaw.com> wrote:
Dear Frank;
Guy mentioned you were kind enough to give him an extension of a week to comply with the subpoena. As my secretary is just back from maternity leave this week I would really appreciate the same courtesy. Please let me know asap.
Sent from my iPhone

Alex
_____

| From: | Susy Ribero Ayala <susy@Riberoayalalaw.com> |
| Sent: | Thursday, January 22, 2015 7:00 AM |
| To: | Alex |
| Cc: | <crewesq@crewadvocacy.com>; <fqsec@quinterolaw.net>; Frank Quintero JR; J P Broche |
| Subject: | Re: US v. Collazo; Rule 17(c) Subpoenas |

Dear Alex:
I am in New York for a sentencing in federal court tomorrow. I will be back in Miami on Friday and will reach out to you at that time if needed. Otherwise, I will comply with the subpoena as specified in the Court's order.

Also, be advised I do not normally check my e-mails at 10:00pm. I did so last night because I was working on my sentencing.

Please do not request responses to e-mails outside of normal business hours. In the future I would appreciate a reasonable amount of time to respond to any correspondence. Courtesies such as these are customary and an accepted practice in our profession. If you have an urgent matter you need to speak to me about, you can call me on my cell phone at 305-310-7105. You can also text me at that number. Unless it is urgent, please assure all communications from your firm are in writing.

You are a young lawyer and hopefully will have a long career ahead of you. You can be a zealous advocate for your clients while conducting yourself professionally and courteously. Courts and your colleagues will respect you more as a result.

I look forward to working with you and hope we can work toward resolution of any issues without engaging in conduct unbecoming any professional.

Best,
Susy Ribero-Ayala



Sent from my iPhone

On Jan 21, 2015, at 4:52 PM, Alex <agonzalez@quinterolaw.net> wrote:

> Good afternoon,
>
> I hope this e-mail finds you doing well. As Frank has advised you, I am handling this portion of the case and would be best equipped to address any concerns, issues, and/or inquiries concerning the subject Subpoenas and production of documents. As I am unsure which subpoenas were thrown away or misplaced, I am attaching copies of all the subpoenas served upon both of you. Pursuant to the Court's Order, you must comply with the following subpoenas, to the extent set forth in said Order, no later than **January 31, 2015**:
>
> - Susy Ribero-Ayala (individually)
> - Susy Ribero-Ayala, P.A.
> - Julio J. Ayala (individually)

- Law Offices of Julio J. Ayala
- Biogenesis Supplements, Inc.

Moreover, as the Order did not concern the subpoena to Nuceria, Inc., production is still outstanding. However, in light of the Court's ruling on similar subpoenas, we would not object to the production of documents arising from the subpoena to Nuceria being limited similarly to the Biogenesis Supplements subpoena. Julio, I had previously e-mailed you regarding your attempted refusal of service for the Nuceria Subpoena and advised you that as the designated "Registered Agent" you could not refuse service. I have spoken to Frank and seen Susy's e-mail below which specifies that neither Biogenesis Supplements non Nuceria ever conducted any business or monetary transactions. In light of those representations, we would request that you provide an affidavit attesting to the aforesaid in lieu of the production of documents as to the Nuceria and Biogenesis Supplements subpoenas.

As you will note the attached subpoenas include the certification of business record form that was included with the original subpoenas. Furthermore, to avoid any confusion we have not made any changes to the attached subpoenas. Therefore, the attached subpoenas will be the same as those served upon you both initially. The Order is very clear and details what requests are still in effect and must be complied with. If you have any questions or wish to discuss this matter further you can e-mail me directly or call me at the number below.

Regards,

Alejandro Gonzalez Contrera
    Attorney at Law

<IMAGEOO1.JPG>

75 Valencia Avenue
Suite 800
Coral Gables, FL 33134
Tel.: 305-446-0303
Fax: 305-446-4503
E-mail: agonzalez@quinterolaw.net

From: Frank Quintero <fquintero@quinterolaw.net>
Date: January 21, 2015 at 2:31:00 PM EST
To: "crewesq@crewadvocacy.com" <crewesq@crewadvocacy.com>
Cc: Susy Ribero-Ayala <susy@Riberoayalalaw.com>, "<fqsec@quinterolaw.net>"
<fqsec@quinterolaw.net>, J P Broche <jpbroche@quinterolaw.net>
Subject: Re: US v. Collazo

Julio you and Susy need to put my associate, Alex Gonzalez, on this email list. He is running with this part of the case. He has been intentionally left off any emails when he was the first to send an email to Susy. His email is agonzalez@quinterolaw.net
I will forward this to him but from now on please deal with him on this discovery issue.
Thx

2

Frank Quintero Jr.
Attorney at Law
Quintero Broche P.A.
75 Valencia Ave, Suite 800
Coral Gables, Fl. 33134
Tel: 305-446-0303
Fax: 305-446-4503

Sent from my iPhone

On Jan 21, 2015, at 2:05 PM, "crewesq@crewadvocacy.com"
<crewesq@crewadvocacy.com> wrote:

> Frank-
>
> Just read Judge Altonaga's Order on MPO filed. Please email me a copy
> of the subpoenas you had served on me. I think I through away my
> copies.
>
> Regards
>
>
> *Julio J. Ayala, Esq.*
>
> CREWMEMBER & MARITIME ADVOCACY CENTER, P.A.
>
> <798B8486-61EE-45CD-B962-ABB3E2545C4D[46].png>
> *66 West Flagler Street suite 200*
> *Miami, Florida 33130*
> *P. 305- 374 9099*
> *F. 305- 374-5099*
> *mailto:crewesq@crewadvocacy.com*
> *Web:www.crewadvocacy.com*
>
>
>
> **From:** Frank Quintero <fquintero@quinterolaw.net>
> **Date:** Wednesday, January 21, 2015 12:20 PM
> **To:** "Susy@riberoayalalaw.com" <Susy@riberoayalalaw.com>
> **Cc:** "<fqsec@quinterolaw.net>" <fqsec@quinterolaw.net>, J P Broche
> <jpbroche@quinterolaw.net>, Guy Lewis <glewis@lewistein.com>, Julio
> Ayala <crewesq@crewadvocacy.com>
> **Subject:** Re: US v. Collazo
>
>> Susy i just called you again and again it went to vm. I have a calendar
>> call at 1pm so i will be available to talk for the next 30 min. I just got
>> out of a sentencing.
>>
>> Frank Quintero Jr.
>> Attorney at Law
>> Quintero Broche P.A.
>> 75 Valencia Ave, Suite 800

Coral Gables, Fl. 33134
Tel: 305-446-0303
Fax: 305-446-4503

Sent from my iPhone

On Jan 21, 2015, at 9:37 AM, Susy Ribero-Ayala
<susy@Riberoayalalaw.com> wrote:

Dear Frank:

I am in receipt of your e-mail dated January 20,2015 at
10:03 p.m. First, there is no need to be nasty,
unprofessional or personal. You have known me as a
prosecutor and a criminal defense attorney. I have
always been courteous, professional and reasonable
with you and expect that you would treat me in the
same manner.

Secondly, your associate's e-mail at 10:03 last night
refers to a "last ditch good faith effort" requesting I
withdraw my Amended Motion to Strike". To my
knowledge, that is the *only* effort you or anybody from
your office made to contact me to resolve any
issue. Similarly, an e-mail one and a half hours prior to
the close of business on a Friday prior to a long week-
end did not provide me with adequate notice, nor was
it a good faith effort to confer. Nonetheless, I am
always willing to speak and resolve issues if I am
informed in a timely manner. You have my cell phone
number and you can always call me or text me at that
number.

I am aware you spoke to Guy Lewis' office yesterday.
My understanding is you reached an agreement
whereby they would provide you with redacted
invoices which include the total amount paid to the
lawyers by MLB on Mr. Bosch's behalf. I am willing to
provide you with those same items for my firm and the
Law Offices of Julio J. Ayala. As stated in a prior
pleading, Biogenesis Supplements Inc. has never had a
bank account or conducted any financial
transactions. Likewise, despite the fact Julio did not
accept service on behalf of Nuceria, in an effort to
avoid unnecessary litigation I can tell you that Nuceria
never had a bank account nor were any financial
transactions conducted.

I am hopeful this resolves any pending issues as this
submission would be consistent with the Court's order
relative to MLB and the Government.

4

Regards,
Susy


Susy Ribero-Ayala, Esq.
201 Alhambra Circle
Suite 1200
Coral Gables, FL 33134
Tel:(305)854-4711
Fax:(305)468-6197

THE INFORMATION CONTAINED IN THIS
TRANSMISSION IS ATTORNEY PRIVILEGED AND
CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE
INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER
OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT,
YOU ARE HEREBY NOTIFIED THAT ANY
DISSEMINATION, DISTRIBUTION OR COPY OF THIS
COMMUNICATION IS STRICTLY PROHIBITED. IF YOU
HAVE RECEIVED THIS COMMUNICATION IN ERROR,
PLEASE IMMEDIATELY NOTIFY AND RETURN THE
ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

On Jan 20, 2015, at 10:03 PM, Alex
<agonzalez@quinterolaw.net> wrote:

Mrs. Ribero-Ayala,

Mr. Quintero requested that I send the
subject e-mail to you in connection
with your Amended Motion to Strike.
Attached please find a draft copy of
our Response and Motion for
Sanctions in connection with your
Amended Motion to Strike. As per Mr.
Quintero's instructions, and in effort to
comply with Local Rule 88.9, let this e-
mail serve as our last ditch good faith
effort requesting that you withdraw
the subject Amended Motion to Strike.
We have reviewed said Motion, and
find the same to be without any legal
basis whatsoever. Therefore, In the
event that you do not withdraw your
amended Motion by **10:00 AM
tomorrow, January 21, 2015**, let this e-
mail serve as formal notice that we will
be forced to file the enclosed Response
and Motion for Sanctions. We are
sending this e-mail with a read receipt
requested and request that you

5

acknowledge proper receipt of this e-mail.

Regards,

Alejandro Gonzalez Contrera
    Attorney at Law

<IMAGEOO1.JPG>

75 Valencia Avenue
Suite 800
Coral Gables, FL 33134
Tel.: 305-446-0303
Fax: 305-446-4503
E-mail: agonzalez@quinterolaw.net

<LCollazoResponse_2015_01_21_0
2_50_11_363.pdf>

<subpoena- Nuceria_2015_01_21_20_23_13_182.pdf>

<subpoena- biogen supps_2015_01_21_20_22_37_563.pdf>

<subpoena- Julio_2015_01_21_20_22_07_413.pdf>

<subpoena- Julio PA_2015_01_21_20_21_40_142.pdf>

<subpoena- Susy_2015_01_21_20_20_55_445.pdf>

<subpoena- Susy PA_2015_01_21_20_20_31_425.pdf>

# EXHIBIT 2

## Alex

| | |
|---|---|
| **From:** | Frank Quintero <fquintero@quinterolaw.net> |
| **Sent:** | Wednesday, February 25, 2015 11:10 AM |
| **To:** | 'Susy Ribero-Ayala'; 'Alex'; 'JP Broche' |
| **Cc:** | 'Guy Lewis'; 'Jeffrey Forman'; crewesq@crewadvocacy.com |
| **Subject:** | RE: Subpoenas issued to First Bank of Miami |

Ms. Ribero-Ayala, we will not withdraw the subpoena at this time so please feel free to file your motion for protective order. Be advised that you of all people should not be representing Julio as you have a major conflict of interest which we will be happy to explain to the court in our response to your motion. Second, please do not threaten me with sanctions as that will not solve this issue. If you feel sanctions are appropriate then feel free to request them in your motion. Of course we will respond accordingly.

I will advise you again, since you don't seem to understand what is at stake here, you are opening a pandora's box for your client and yourselves. Once your motion for protective order is filed and we are forced to respond we will lay out for the court how Bosch was provided with monies in violation of the contract with MLB with the assistance of you, Mr. Badree, Mr. Ayala and a host of Bosch family members and friends.

As to the legal issue, there is no basis whatsoever for a protective order. We checked with the Florida Bar prior to issuing the subpoena and were advised there is no attorney client privilege for bank records regarding trust accounts which records are held by the bank. (see State v. Investigation, 802 So.2d 1141, 2 DCA 2001; attorney's trust account records were not protected from disclosure by attorney client privilege, where records sought were those held by bank, not the attorney). The Florida Bar directed us to the case law on this issue as we anticipated your argument along these lines.

You have now been advised that there is no basis for a protective order with supporting case law. Proceed at your own peril.

Have a nice day.

*Frank Quintero Jr.*
*Attorney at Law*



QUINTERO BROCHE"
ATTORNEYS AND COUNSELORS AT LAW

*75 Valencia Avenue, Suite 800*
*Coral Gables, Fl. 33134*
*Tel: 305-446-0303*
*Fax: 305-446-4503*
*E-Mail: fquintero@quinterolaw.net*
*Web: www.quinterolaw.net*

1

AV® Preeminent™ Rated & AV®Peer Review Rated
Martindale-Hubbell® Lawyer Ratings
Super Lawyers®
Top Lawyers in Florida
TOP ATTORNEYS IN FLORIDA
The Wall Street Journal & Miami Magazine

**From:** Susy Ribero-Ayala [mailto:Susy@Riberoayalalaw.com]
**Sent:** Wednesday, February 25, 2015 10:44 AM
**To:** Frank Quintero; Alex; JP Broche
**Cc:** Guy Lewis; Jeffrey Forman; crewesq@crewadvocacy.com
**Subject:** Subpoenas issued to First Bank of Miami

Dear Mr. Quintero,

I represent Julio Ayala in the filing of a motion to quash, for protective order and sanctions in case number 14-CR-20550 relating to the service of a subpoena for his bank records on February 17, 2015.

Although you have given me 2 hours on one occasion and overnight on another to decide whether or not I would withdraw a motion I filed or agreed to your filing of another, I will give you until 5pm tomorrow, February 26, 2015 to advise me whether you will rescind your subpoena to Ayala's bank or whether I need to file our motion.

Have a good day.

Susy Ribero-Ayala



SUSY RIBERO-AYALA, ESQ.

201 ALHAMBRA CIRCLE

SUITE 1200

CORAL GABLES, FL 33134

TEL.: (305)854-4711

E-MAIL: SUSY@RIBEROAYALALAW.COM

# EXHIBIT 3



# Contract to Lease
FLORIDA ASSOCIATION OF REALTORS ®

This CONTRACT TO LEASE is between _____ Tony Bosch & Bhairaj Badree _____
("Prospective Tenant") and _____ Jose Garcia _____ ("Prospective Landlord")
for the proposed rental of the real property located at: _____ 19135 Fisher Island Drive, Fisher Island FL 33109

1. **DEPOSIT RECEIPT:** _____ Ocean Insiders _____ ("Broker")
acknowledges receipt of a deposit in the amount of $ ~~5,850.60~~ $6,780

2. **DESCRIPTION OF PROPERTY:** 2+ BR 2 BA ☒ furnished ☐ unfurnished ☐ inventory attached
   Parking: spaces 1 , vehicles prohibited (if any) _____
   Pets: ☒ prohibited ☐ permitted, restrictions: _____
   Property Use Restrictions: _____
   Property is to be used by _____ occupant(s) for (purpose): _____ residence _____

3. **TERMS:** Proposed Lease Term to commence on the 30 day of Janaury , 2014 and end on
the 4 5 day of February , 2014 .
   Total rent $ ~~5,020.00~~ 5,000 per entire term
   Security deposit $ 2,000.00        Pet fee(s) ☐ refundable $_____
                                              ☐ non-refundable $_____
   Advance rent $_____        Other _____        $_____
   Application fee $_____        Other local sales tax (13%)        $ 650.00
   Security deposit, advance rent, and refundable fees will be held by ☐ Broker ☒ Prospective Landlord Other
   _____ in a separate ☐ interest bearing ☐ non-interest bearing account in a Florida financial institution.

4. **EXPENSES:** To be paid by:

| UTILITIES: | Landlord | Tenant | N/A | MAINTENANCE: | Landlord | Tenant | N/A |
|---|---|---|---|---|---|---|---|
| Electric | ☒ | ☐ | ☐ | A/C and Heating | ☒ | ☐ | ☐ |
| Gas/Fuel | ☐ | ☐ | ☒ | Building Interior | ☒ | ☐ | ☐ |
| Sewer | ☒ | ☐ | ☐ | Building Exterior | ☒ | ☐ | ☐ |
| Water | ☒ | ☐ | ☐ | Lawn | ☒ | ☐ | ☐ |
| Trash Collection | ☒ | ☐ | ☐ | Pool and Equipment | ☒ | ☐ | ☐ |
| Telephone | ☒ | ☐ | ☐ | Pest Control | ☒ | ☐ | ☐ |
| | | | | Appliances | ☒ | ☐ | ☐ |
| TAXES: | | | | Common Areas | ☒ | ☐ | ☐ |
| Real Property | ☒ | ☐ | ☐ | | | | |
| Sales and Services | ☐ | ☐ | ☒ | INSURANCE: | | | |
| Personal Property | ☐ | ☐ | ☒ | Personal Liability | ☐ | ☐ | ☐ |
| Intangible | ☐ | ☐ | ☒ | Property Damage | ☐ | ☐ | ☐ |
| | | | | Flood | ☐ | ☐ | ☐ |
| OTHER: member | ☐ | ☒ | ☐ | | | | |

5. ~~PREPARATION OF LEASE AGREEMENT: The parties to this Contract agree to prepare or have prepared a lease agreement consistent with the terms and conditions of this Contract. The lease agreement will be executed by all parties no later than _____ Lease provisions which conflict with provisions of this Contract will control.~~

6. ~~ASSOCIATION APPROVAL: Where applicable, this Contract is subject to and contingent upon the Prospective Tenant being approved by the condominium/cooperative/homeowners association. Prospective Tenant will pay a non-refundable application fee of $ _____ and make application for association approval within _____ days from the effective~~

Prospective Landlord (____)(____) and Prospective Tenant (____)(____) acknowledge receipt of a copy of this page,
which is Page 1 of 2 Pages.
CL-2x 10/06    ©2006 Florida Association of REALTORS®    All Rights Reserved

~~effective date of this Contract. In the event the Prospective Tenant is not approved, this Contract will terminate and all deposit(s) made will be refunded to the Prospective Tenant unless otherwise specified. The parties will make all reasonable efforts, including any required personal appearances, to obtain Association approval.~~ Occupancy ☒ is ☐ is not permitted prior to Association approval.

**7. FAILURE TO PERFORM:** If Prospective Tenant fails to perform any of the promises of this Contract, the deposit(s) paid or agreed to be paid by **Prospective Tenant** may be retained by or for the account of **Prospective Landlord** as agreed upon liquidated damages, consideration for the execution of this Contract, and in full settlement of any claims, and **Prospective Landlord** and **Prospective Tenant** will be relieved of all obligations under this Contract. If **Prospective Landlord** fails to perform any of the promises of this Contract, the deposit(s) will be returned to **Prospective Tenant** without waiving any action for damages resulting from **Prospective Landlord's** breach.

**8. RETAINED DEPOSITS:** In the event **Prospective Landlord** retains a deposit, **Prospective Landlord** will pay to Broker 50% of the deposit, not to exceed any previously agreed upon compensation, as full consideration for Broker's services.

**9. USE RESTRICTIONS:** The Parties agree that the Property is being rented subject to zoning ordinances, restrictions, limitations, easements, and public utilities of record; however, this Contract is contingent upon the intended use stated in Paragraph 2 being permissible.

**10. ASSIGNABILITY:** This Contract is binding upon and inures to the benefit of the Parties and their respective heirs, personal representatives, and successors. **Prospective Tenant** may not assign this Contract without the prior written consent of the **Prospective Landlord**.

**11. OTHER AGREEMENTS:** No modification or change to this Contract will be valid or binding unless in writing and signed by both Parties.

**12. RADON GAS:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

**13. BROKERAGE DISCLOSURE:** Broker represents ☐ **Prospective Landlord** ☐ **Prospective Tenant**.

**14. FACSIMILE:** A facsimile copy of this Contract and any signatures thereon will be considered for all purposes as originals.

**15. SPECIAL CLAUSES:**

The balance of lease funds ($5,650) is due upon signing this lease agreement

~~This Contract is not a lease.~~ It is intended to be a legally binding contract. If not fully understood, seek the advice of an attorney prior to signing.

Date: 1/29/14   Prospective Tenant _____   Tax ID/SSN: _____

Date: _____   Prospective Tenant _____   Tax ID/SSN: _____

Home Telephone: _____   Work Telephone: _____   Facsimile: _____
Address: _____
E-mail: _____
Date: _____   Prospective Landlord: _____

Date: _____   Prospective Landlord: _____

This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark that may be used only by real estate licensees who are members of the National Association of REALTORS and who subscribe to its Code of Ethics. The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.

Prospective Landlord (___)(___) and Prospective Tenant (___)(___) acknowledge receipt of a copy of this page, which is Page 2 of 2 Pages

CL-2x  10/06   ©2006 Florida Association of REALTORS®   All Rights Reserved



## Blank Addendum
FLORIDA ASSOCIATION OF REALTORS ®

Addendum concerning the Property described as: _____ 19135 Fisher Island Drive   Fisher Island , FL 33109

In consideration of the Leased Premises being leased to Tenant, Tenant agrees: That Tenant at all times will indemnify to keep harmless Landlord from all losses, damages, liabilities and expenses, which may arise or be claimed against Landlord in be in favor of any person, firm or corporation, for any injuries or damages to the person or property of any person, firm or corporation, consequent upon or arising from the use or occupancy of said premises by Tenant, consequent upon or arising from any acts, omissions, neglect, or fault of Tenant ( its agents, servants, employees, licensees, customers or invitees ), or consequent upon or arising from Tenant's failure to comply with the aforesaid laws, statues, ordinances or regulations, that Landlord shall not be liable to Tenant or to any third party for any damages or losses to the property of Tenant or of a third party which may be caused by the acts, neglect, omissions or faults of any person, firm or corporation which relate to Tenant's occupancy of the Leased Premises.

_____  1/29/14    _____  1/29/14
Seller                             Date       Buyer                              Date

_____  _____    _____  _____
Seller                             Date       Buyer                              Date

# EXHIBIT 4

# TEN MUSEUM PARK

1040 Biscayne Blvd, Miami, FL 33132 / T: 305.358.8631 F: 305.358.8636

**LEASE APPLICATION CHECKLIST**

1. Unit #: _2402_
2. Owner(s): _Mary Erra_
3. Applicant(s): _Maria Isabel Daza_
4. Lease Term: _5/1/14_ to _7/31/20140_
5. Expected Move in Date: _5/1/14_    Application Received Date: _4/22/2014_

6. Copy of Executed Lease Agreement: ☑

7. Fees Received:  ☑ Security Deposit $ _1,000⁼_  OR  ☐ On-hand from previous tenant

   ☑ Application Fee  $ _100⁰⁰_

   ☐ Move In/Move Out Fee $ _N/A_  (furnished unit - will provide elevator deposit)

8. Employment & Salary: _Merchandiser - $60K/yr_  ☐ Self-Employed

9. NO PETS – ADDENDUM SIGNED ACKNOWLEDGING THE NEW PET RULE  ☑

10. Evictions –  Yes ☐   No ☑

11. Owner's Maintenance Account:

    ☑ Current

    ☐ Past Due $_____    # of days? _____

12. Credit Score: _607_ (please see attached email from owner)

    ☐ 0-580   ☑ 581-620   ☐ 621-680   ☐ 681-720   ☐ 721-785
    Very Poor   Poor   Fair   Good   Excellent

13. Convictions:  Yes ☑   No ☐

    Type of Offense: ☑ Misdemeanor ☐ Felony

    Date of Offense(s): _DUI - 2007_ (please see attached email from owner)

COMMENTS: _$3,900/month for 3 months_

X _____Mur_____      Manager Approval: _____

**Board of Directors**      Date: _4/29/14_
**Ten Museum Park Residential Association**

Date: _4/24/14_

**Griselle Hernandez**

| | |
|---|---|
| **From:** | Mary Erra < |
| **Sent:** | Thursday, April 24, 2014 4:41 PM |
| **To:** | Griselle Hernandez |
| **Subject:** | 2402 |

Griselle,

This is to approve Maria Gaza's application to rent my unit, fully aware of low credit score and DUI from many years back, as she will be paying total up front.

She will have local family, maybe a baby nurse and Tony staying over at different times as guests and will register them for each visit. Tony will be out of town on business most of the time until they get their own place in NY after their lease is ended, and definitely less than 30 days spent here.

Thank you.
Please let me know ASAP when board member has approved the application

Mary Erra
2402

# EXHIBIT 5

2/11/2015 · Wells Fargo Deposited Item Details



Wells Fargo Business Online®

## Deposited Item Details

Deposit #556779538 to Trust Account

| Deposit Date | Description | | Amount | Status |
|---|---|---|---|---|
| 10/28/13 | DEPOSIT MADE IN A BRANCH/STORE #556779538 | | $10,000.00 | Posted 10/28/13 |

Deposit Item (1 of 1)

| Item # | Bank | Account # | Check # | Amount |
|---|---|---|---|---|
| 1 | CITIBANK NA | XXXX682 | Not Available | $10,000.00 |

Note: The account number, signature, and endorsement may be removed from the image(s) for security reasons. To obtain a full copy of the image, please send us a secure email or call us at 1-800-956-4442, 24 hours, 7 days a week.

STELLA BOSCH
1541 ZULETA AVE.
CORAL GABLES, FL 33146-2317

3841

154

DATE 10/18/13

PAY TO THE ORDER OF _____ $ 10,000.00

Ten thousand & 00/100 DOLLARS

citibank'

Trust Account

⌂ Equal Housing Lender
© 1995 - 2015 Wells Fargo. All rights reserved.

# COMPOSITE EXHIBIT 6



# COMPOSITE EXHIBIT 7

3/12/2015                                    American Express US: Manage Your Card Account Online Statement

ELECTRONIC PAYMENT RECEIVED-THANK                    Payment Details

Reference                                             Your payment was received for

                                                      **$5,000.00**

            DEC 25 2013*    PAYMENT RECEIVED - THANK YOU        SUSY RIBERO AYALA              -$5,500.00
                            JJA for Bosch Costs

PAYMENT RECEIVED - THANK YOU                          Payment Details

Reference                                             Your payment was received for

                                                      **$5,500.00**



Number 3009 Date: 12/27/2013 Amount: $5,600.00

# COMPOSITE
# EXHIBIT 8









# EXHIBIT 9





# EXHIBIT 10

LAW OFFICES OF JULIO J. AYALA, PA
IOTA ACCOUNT
66 W FLAGLER STE 200
MIAMI, FL 33130
PHONE:(305)374-9099

FIRST BANK OF MIAMI
235 SE 1st Street
MIAMI, FL 33131-1901   D6

3012
63-1415/020
65

3/17/14

PAY TO THE
ORDER OF   Arturo V Hernandez P.A.   $ 2,500.00

Two thousand five hundred   DOLLARS

MEMO ████ Bosch ██████████

AUTHORIZED SIGNATURE

# EXHIBIT 11



**DLA Piper US LLP**
6225 Smith Avenue
Baltimore, Maryland 21209-3600
T 410.580.3000
F 410.580.3001
W www.dlapiper.com


CHARLES P. SCHEELER
charles.scheeler@dlapiper.com
T 410.580.4250

July 10, 2014

*VIA ELECTRONIC TRANSMISSION*

Sharad Motiani, Esq.
Assistant United States Attorney
United States Attorney's Office - Southern District of Florida
99 NE 4th St.
Miami, FL 33132

Re:  **Subpoena to Testify Before A Grand Jury 12 - 02 MIA**

Dear Sharad:

I write on behalf of the Office of the Commissioner of Baseball ("MLB") in connection with the above referenced matter, in response to the Grand Jury Subpoena, dated January 14, 2014, directed to MLB (the "Subpoena").

You inquired as to amounts paid to third parties in connection with MLB's investigation of the use of banned substances supplied by Biogenesis to MLB players. We have previously produced to you the agreements between Anthony Bosch and MLB, through which he cooperated with MLB's investigation, and provided information which was instrumental in obtaining suspensions of fourteen players. The most recent agreement is produced with this letter (MLB-SDFLA GJ 011187); the first agreement was earlier produced and labeled MLB-SDFLA GJ 007718. In connection with Bosch's cooperation, MLB has made the third-party payments set forth below. No payments were made to Mr. Bosch.

- Professional Protection (security and related expenses) $1,456,176
- Law Offices of Samuel J. Rabin & The Law Office of Susy Ribero-Ayala, P.A. (legal fees and expenses) $766,849
- Pinera-Vazquez Law Firm (legal fees and expenses) $574,764
- Julio J. Ayala Law Offices (legal fees and expenses) $486,804
- Fitzpatrick Communications (public relations firm retained by Bosch's counsel) $349,683
- Lewis Tein P.L. (legal fees and expenses) $285,474

In addition, MLB has reviewed its financial records of payments to third parties in connection with the Biogenesis investigation, including the Alex Rodriguez grievance, and they indicate that MLB has made payments to the following individuals of potential note: Gary Jones

MLBCOLLAZO17C000001



July 10, 2014
Page 2

($125,000, as noted in a document provided by MLB to Arbitrator Fredric Horowitz, and produced as MLB-SDFLA GJ 011186); Porter Fischer ($5,500); Kristina Hernandez ($3,762); Xavier Romero ($5,000) and his attorney, Carlos Santisteban ($2,500). Finally, pursuant to an agreement arising out of civil litigation (produced as MLB-SDFLA GJ 011196), payments were made to attorneys of Ricardo Martinez as follows: Robert Allen Law ($3,169), and Law Offices of Oscar J. Rodriguez, P.A. ($25,000).

The attached documents are being produced with the understanding that they will be treated as grand jury material subject to, and protected from disclosure by, Rule 6(e) of the Federal Rules of Criminal Procedure.

Please do not hesitate to call me if you have any additional requests or questions.

Very truly yours,

DLA Piper LLP (US)

Charles Scheeler/em

Charles P. Scheeler
Senior Counsel

CPS/td
Enclosure

CONFIDENTIAL

# EXHIBIT 12

☐ CORRECTED (if checked)

| PAYER'S name, street address, city or town, province or state, country, ZIP or foreign postal code, and telephone no. | 1 Rents $ | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|
| PROFESSIONAL PROTECTION, INC. RAKSHA AGENCY 990 BISCAYNE BLVD SUITE 501 MIAMI, FL 33132 | 2 Royalties $ | 2013 | |
| | 3 Other income $ | 4 Federal income tax withheld $ | Form 1099-MISC |
| PAYER'S federal identification number | RECIPIENT'S identification number | 5 Fishing boat proceeds $ | 6 Medical and health care payments $ | Copy B For Recipient |
| RECIPIENT'S name, address, city, state, country and ZIP code | | 7 Nonemployee compensation $ 32294.13 | 8 Substitute payments in lieu of dividends or interest $ | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
| HERNAN DOMINGUEZ 5330 SW 64TH AVE MIAMI, FL 33155 | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds $ | |
| | | 11 Foreign tax paid $ | 12 Foreign country or U.S. possession $ | |
| Account number (see instructions) | | 13 Excess golden parachute payments $ | 14 Gross proceeds paid to an attorney $ | |
| 15a Section 409A deferrals $ | 15b Section 409A income $ | 16 State tax withheld $ $ | 17 State/Payer's state no. | 18 State income $ $ |

Form 1099-MISC (Keep for your records) Department of the Treasury - Internal Revenue Service

# EXHIBIT 13



EXHIBIT 14



# Tony Bosch's Attorney Asked A-Rod For $500,000 After *New Times* Investigation

**By Tim Elfrink**

Published Thu., Nov. 20 2014 at 4:33 PM

The date was January 29, 2013. *Miami New Times* had just published its investigation outing Coral Gables clinic Biogenesis as a steroid dealer to the stars, including Alex Rodriguez. A few hours later, A-Rod and his celebrity lawyer Roy Black met with Susy Ayala-Ribero, the high school buddy and now attorney for Tony Bosch, the clinic's owner.

Then, Ayala-Ribero made one of A-Rod's lawyers an extraordinary proposition: The superstar should pony up $500,000 to pay for Bosch's legal fight.

That eye-opening exchange is detailed in a huge batch of new evidence put onto the public record in the ongoing federal criminal case against Bosch and his associates -- a batch that also includes Bosch's allegations that super-agent Scott Boras tried to help cover up Manny Ramirez's failed steroid test.

The new evidence comes from filings by Frank Quintero Jr., an attorney representing former

University of Miami pitching coach Lazer Collazo, who is charged with conspiring with Bosch to distribute testosterone; he's pleaded not guilty.

Quintero filed a new demand for evidence from MLB and the feds this afternoon, and included dozens of pages of already submitted evidence. Among it: record of Ribero-Ayala's testimony during A-Rod's arbitration case.

In that testimony, Ribero-Ayala says she headed to Black's office the same day *New Times* published its story, and found A-Rod there with Black and Jared Lopez, another lawyer. She and Lopez later discussed the idea of Rodriguez covering Bosch's legal fees, she testified.

"I spoke to Mr. Lopez and told him it was my understanding that Mr. Rodriguez wanted to contribute to Mr. Bosch's legal fees," she said.

Lopez asked how much she'd like the ballplayer to kick in. "I said 500. And he said, 'Thousand?' And I said yes," she testified.

When Black later quizzed her on the request, she told him "that's what I thought the case would be worth." (In fact, it wasn't a bad estimate; other documents suggest that Ribero-Ayala and her husband have been paid more than a million bucks by Major League Baseball, which agreed to cover Bosch's legal fees.)

A-Rod did eventually help pay for Bosch's legal fees -- but only kicked in $25,000. Bosch later flipped and cooperated with MLB to help suspend his star client.

In the deposition, Ribero-Ayala also talked about crafting the statement Bosch later put out denying *New Times* story. She says she first warned A-Rod against issuing his own denial -- "I said something about the fact that Lance Armstrong denied allegations, and that didn't go so well for him," -- but then helped Bosch issue his own denial.

Just as a refresher, here's the statement:

> "The news report about a purported relationship between Alex Rodriguez and Anthony Bosch [is] not true. He was not Mr. Bosch's patient, he was never treated by him and he was never advised by him. The purported documents referenced in the story -- at least as they relate to Alex Rodriguez -- are not legitimate."

Didn't Ribero-Ayala know that statement was totally bogus? Not at all, the attorney says.

"Treated implies a, in my view, a doctor/patient relationship. Anthony Bosch is not a licensed physician, so I was comfortable with the word 'treated,'" she said.

OK, then. Ribero-Ayala hasn't responded to a message from Riptide asking for comment on the deposition.

Among the other newsworthy bits among the new evidence are a DEA summary of meeting with Tony Bosch that confirm what *Newsday* reported last week: Namely, that Bosch claimed that Boras, A-Rod's agent, had helped cook up an improbable story when Manny Ramirez failed a test in 2009 (namely, that he'd mistaken testosterone cream for aftershave.)

Boras has denied Bosch's claims, but the new documents now show that Bosch made them to federal

agents.

*Follow Miami New Times on Facebook and Twitter @MiamiNewTimes.*



# EXHIBIT 15

894
Bosch-Cross-Confidential

1  No.
2
3      If there weren't an agreement with
4  Major League Baseball, I would agree with
5  you, but again, it's so important that they
6  had to go put in writing that they would go
7  to bat for him with Justice, try and get him
8  immunity for other crimes committed -- not
9  violation of the JDA -- they have a civil
10  suit for that, so the agreement is relevant
11  to Mr. Rodriguez, his motivation in his
12  mind.
13      When we ask him -- you say the
14  motivation has been satisfied. I mean, it
15  hasn't been established, because he hasn't
16  said what he's concerned about. He has to
17  be concerned about something, and that's why
18  the legal conclusion is relevant.
19      If he knows whether he did something
20  illegal or not is relevant, otherwise it
21  goes to his concern --
22      **MR. MANFRED:** I can only speak for one
23  Panel member, okay. I think the point is
24  that when he takes the Fifth Amendment on
25  whether he filed a tax return or not, I

COMPUTER REPORTING NYC INC.
(212) 986-1344

895
Bosch-Cross-Confidential
1
2  think all three of us are capable of
3  understanding that he has a legal concern
4  about that, and that was one of the legal
5  concerns that goes to the motivation
6  underlying that agreement.
7      I mean, it just --
8      **MR. TACOPINA:** I agree with that.
9      **MR. MANFRED:** It's not -- it's not
10  that we disagree with your argument about
11  motivation. It's that we don't think, you
12  know, we need to drill down on every --
13      **MR. PROUTY:** No --
14      **MR. MANFRED:** Once you realize you
15  have that concern, we're there.
16      **MR. PROUTY:** I agree with Rob. My
17  point was only getting him to the point
18  where he's allowed to take the Fifth rather
19  than not answering the question at all.
20      **MR. TACOPINA:** Let him take the Fifth.
21  They are being sustained before --
22      **MR. HOROWITZ:** Look, I'm not going to
23  prejudge any of these areas, but in my view,
24  and apparently in Rob's view and Dave's
25  view, you already established it.

COMPUTER REPORTING NYC INC.
(212) 986-1344

896
Bosch-Cross-Confidential
1
2      Look, fellows, we don't want to be
3  here forever, okay, and that's the guidance
4  I'll give you, but again, each side's free
5  to ask questions and we'll deal with them on
6  the merits, but I'm -- really concerned
7  about the facts in this case that support or
8  don't support the Commissioner's allegations
9  of misconduct against Mr. Rodriguez, that
10  he's so desperately trying to defend, and
11  that's my concern.
12      And I can only, please -- please,
13  let's spend our time on that --
14      **MR. TACOPINA:** It worries --
15      **MR. HOROWITZ:** Look, my parents didn't
16  find me on the side of a turnip truck, okay?
17  Let's be realistic here. This is a labor
18  arbitration. We all bring considered
19  judgment and experience here, both to
20  evidence and procedure.
21      What I don't know is what happened
22  that caused Major League Baseball to make
23  these allegations against Mr. Rodriguez;
24  very serious. And that's my concern, all
25  right.

COMPUTER REPORTING NYC INC.
(212) 986-1344

897
Bosch-Cross-Confidential
1
2      So, please -- enough of this debate.
3  I've had it.
4      Let's go off the record and invite the
5  witness in.
6      (Discussion off the record.)
7      **MR. HOROWITZ:** All right. Mr. Bosch
8  and counsel have returned.
9      Thank you for your patience.
10      **MR. HOROWITZ:** Mr. Tacopina.
11      **MR. TACOPINA:** Thank you.
12  **CROSS-EXAMINATION (Cont'd)**
13  BY MR. TACOPINA:
14      **Q.** I was asking a list of names. You
15  acknowledged that all           were
16  patients of yours.
17      How about
18      **A.** I never said they were patients of
19  mine.
20      **Q.** You said clients?
21      **A.** I said clients, clients of Biogenesis.
22      **Q.** Can you tell us, explain the
23  distinction between patients and clients?
24      **A.** The only distinction I can, patients
25  are sick; clients may be healthy. That's my

COMPUTER REPORTING NYC INC.
(212) 986-1344

898

*Bosch-Cross-Confidential*

1 answer.

2

3 **Q.** So clients are healthy.

4 What do you do to clients as opposed

5 to do with patients?

6 Do you treat clients?

7 **A.** I don't treat. My role -- Biogenesis

8 had a medical director at all times, had a

9 registered nurse; and if not a registered nurse, a

10 licensed -- an LPN. It had a phlebotomist.

11 My role was that of a health adviser,

12 educator. I would explain what the program was

13 and I assisted with the direction of the medical

14 director. I assisted in creating a protocol for

15 that individual, depending on what the objective

16 was.

17 That was my role at Biogenesis.

18 And I called them clients.

19 **Q.** So you had a phlebotomist.

20 What does a phlebotomist do?

21 **A.** They draw blood.

22 **Q.** Were you the phlebotomist?

23 **A.** No.

24 **Q.** When you testified about, the last few

25 days, about the drawing of blood from

*COMPUTER REPORTING NYC INC.*

*(212) 986-1344*

899

1 *Bosch-Cross-Confidential*

2 did your phlebotomist do it?

3 **A.** No. I did it. didn't

4 want anybody else to know, so he asked me. both

5 himself -- both N and ·

6 So I obtained the permission of Mr.

7 Rodriguez and Mr. Sucart to assist and help draw

8 blood.

9 **Q.** How about, like, , did you

10 use your phlebotomist on ?

11 **MR. GANZ:** Objection.

12 **MR. HOROWITZ:** Yes. Sustained.

13 Why are we asking about another

14 player?

15 **MR. TACOPINA:** I want to understand if

16 his policies and methods were the same with

17 professional athletes as opposed to just

18

19 **MR. HOROWITZ:** Just ask that general

20 question.

21 **MR. GANZ:** Are we opening up the

22 door --

23 **MR. HOROWITZ:** No, we're not opening

24 up any door, but that question I'm allowing.

25 **Q.** Were your policies, Mr. Bosch, the

*COMPUTER REPORTING NYC INC.*

*(212) 986-1344*

900

*Bosch-Cross-Confidential*

1

2 same as related to other professional athletes as

3 it was with ,

4 Did you draw the blood from these

5 other athletes?

6 **A.** I want to invoke the right to my Fifth

7 Amendment.

8 **Q.** And what about is he

9 a client also?

10 **A.** Look, I've had many clients over the

11 years, thousands of clients. I don't remember all

12 their names.

13 I would go into the office --

14 **Q.** Just yes or no: Was he a client?

15 **MR. HOROWITZ:** The question is: Do

16 you remember this individual?

17 **THE WITNESS:** I don't remember.

18 **MR. HOROWITZ:** Thank you.

19 Next question.

20 **Q.** You mentioned

21 He was a client, right?

22 **A.** was a client.

23 **Q.** And was a client as

24 well, right?

25 **MR. GANZ:** Objection. I don't know

*COMPUTER REPORTING NYC INC.*

*(212) 986-1344*

901

1 *Bosch-Cross-Confidential*

2 what the relevance of that is.

3 **MR. HOROWITZ:** '

4 **MR. GANZ:**

5 **Q.** That's

6 correct?

7 **MR. GANZ:** Whether he was a client is

8 irrelevant.

9 **MR. HOROWITZ:** Yes.

10 What's the relevance?

11 **MR. TACOPINA:** He is a minor that

12 Mr. Bosch injected with controlled

13 substances and he's under federal

14 investigation, that's why it's relevant.

15 **MR. GANZ:** Mr. Bosch, obviously, will

16 take the Fifth Amendment with respect to

17 that.

18 And I will renew my proposal or my --

19 MLB's position that on this question and

20 similar questions, and without Mr. Bosch's

21 agreement, MLB is prepared to say the Panel

22 may take such adverse inference as it deems

23 appropriate from his refusal to answer the

24 question.

25 I think that should eliminate

*COMPUTER REPORTING NYC INC.*

*(212) 986-1344*

21 of 96 sheets HIGHLY CONFIDENTIAL
HIGHLY CONFIDENTIAL
HIGHLY CONFIDENTIAL
Page 898 to 901 of 1085
10/14/2013 02:21:31 PM
MLB-SDFLA GJ 000104

# COMPOSITE
# EXHIBIT 16



# STATE ATTORNEY

ELEVENTH JUDICIAL CIRCUIT OF FLORIDA
E. R. GRAHAM BUILDING
1350 N.W. 12TH AVENUE
MIAMI, FLORIDA 33136-2111

KATHERINE FERNANDEZ RUNDLE
TELEPHONE (305) 547-0100
STATE ATTORNEY

May 10, 2013

LINDA McMULLEN
ASSISTANT GENERAL COUNSEL
DEPARTMENT OF HEALTH
PROSECUTION SERVICES UNIT
4052 BALD CYPRESS WAY, BIN#C-65
TALLAHASSEE FL 32399-3265

Re: DOH v. Anthony P. Bosch Case

Our File:

Dear Ms. McMullen:

On May 8, 2013, this office received your letter and one page Uniform Unlicensed
Activity Citation regarding Anthony P. Bosch, Case #:                 . It has been
referred to me for a response.

As you are aware, the function of this office is to prosecute criminal violations.
Upon review of your correspondence, it is my determination that additional
investigative steps are required before this office can initiate criminal
proceedings.

An investigation must be conducted, which includes the taking of sworn
testimony from a material witness and a witness identification of the subject. A
police agency and / or specially trained investigative agency personnel usually
perform this function. Merely forwarding information to us is insufficient to
allow us to proceed with a criminal prosecution. May I suggest that in the
future, if during the course of an investigation you:

1. Develop evidence of misdemeanor criminal violations, before
   forwarding any documents, you should contact our Intake Unit at
   (305            .nd speak with an attorney to discuss instituting
   criminal proceedings.

2. Develop evidence indicating a possible felony, you should contact the Miami-Dade Police Department. You should describe the nature of the alleged criminal violations, and the location at which said violations occurred, and MDPD will assign this matter to the appropriate unit for criminal investigation. If, after the investigation is completed, the police believe there is sufficient evidence to prove a crime, they will present the case to our office for review, and if appropriate, the filing of charges.

If you have any questions concerning these matters, please contact Assistant State Attorney Marie Jo Toussaint, Chief of our Intake Unit; she can be contacted at .

Sincerely,

KATHERINE FERNANDEZ RUNDLE
State Attorney

By: _____

FREDRIC A. KERSTEIN
Assistant State Attorney
Chief, Economic Crimes

**Mission:**
To protect, promote & improve the health of all people in Florida through integrated state, county & community efforts.

Florida HEALTH

**Rick Scott**
Governor

**John H. Armstrong, MD, FACS**
State Surgeon General & Secretary

**Vision:** To be the Healthiest State in the Nation

May 7, 2013

BY FACSIMILE AND U.S. MAIL
(305) or (305)

Katherine Fernandez Rundle
State Attorney, 11th Judicial Circuit
State of Florida
1350 N.W. 12th Avenue
Miami, FL 33136-2102

Re: DOH v. Anthony P. Bosch, DOH Case No.

Dear Ms. Rundle:

Attached please find a Uniform Unlicensed Activity Citation that has been filed against the above referenced person for activity that may constitute a criminal violation. The Department of Health is required by statute to notify the appropriate law enforcement agency of this possible criminal activity.

If you have any questions, please feel free to contact the undersigned.

Sincerely,

Linda McMullen
Assistant General Counsel
Department of Health
Prosecution Services Unit
4052 Bald Cypress Way, Bin #C-65
Tallahassee, Florida 32399-3265
(850)245-4640 Telephone
(850)245-4680 Facsimile

Enclosure: Uniform Unlicensed Activity Citation



**UP___L__M UNLICENSED ACTIVITY CITATION**
**FLORIDA DEPARTMENT OF HEALTH**



| Issued to: | Anthony P. Bosch c/o Atn. Susy Ribero-Ayala | Case Number: | |
|---|---|---|---|
| Address: | 2525 Ponce De Leon Blvd. Coral Gables, FL 33134-6044 | Date(s) of Violation | 2009, 2010, 2011, 2012 |
| Phone: | (305) | Profession: | Medicine |
| E-mail Address: | N/A | | |
| Wk. Address | 2525 Ponce De Leon Blvd. Coral Gables, FL 33134-6044 | Driver's License | |
| Wk. Phone | (305) 864-4711 | Date of Birth: | |

Pursuant to Section 456.065, F.S. the undersigned hereby certifies that he/she has probable cause to believe that the above referenced subject did violate the following provision(s) of law, 458.327 (1) by committing the following, including but not limited to, acts: Holding himself, Anthony P. Bosch, as a medical doctor by diagnosing and treating patients of BIOKEM, BIOGENESIS and other businesses.

Pursuant to Section 456.065, F.S., and Rule 64B-6.003, F.A.C., the Department has set the following penalty for violations of the aforesaid provision: a fine in the amount of $1,000.00 plus costs in the amount of $4,000.00. Total due: $5,000.00.

ISSUED this 23rd day of April, 2013, on behalf of the State Surgeon General of the Department of Health, by:

_____
DOH Representative

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that an original of the foregoing citation has been served upon Anthony P. Bosch c/o Attorney Susy Ribero-Ayala at 2525 Ponce De Leon Boulevard #300, Coral Gables, FL 33134-6044

( ) By personal service  (x) U.S. Certified Mail, this 23rd day of April, 2013.

Signature  4/29/2013

_____
DOH Representative

RIV FORM 81612, Revised 1/11, 09/10, 05/10, 02/10, Created 11/08



STATE OF FLORIDA

# DEPARTMENT OF HEALTH

### INVESTIGATIVE REPORT

| Office: Ft. Lauderdale-ULA | Date of Case: 01/31/2013 | Case Number: |
|---|---|---|
| Subject: Anthony P. Bosch | | Source: Florida Department of Health Investigative Services Unit-Miami |

| Prefix: 1501 | License #: N/A | Profession: Medical Doctor | Board: Medicine | Report Date: 04/23/2013 |
|---|---|---|---|---|

| Period of Investigation: 01/31/2013 – 04/23/2013 | Type of Report: FINAL – SUBSTANTIATED Uniform Unlicensed Activity Citation issued on 04/23/2013 Cease and Desist Agreement issued on 04/23/2013 |
|---|---|

Alleged Violation: FS 458.327(1)(a)  Practicing medicine without a license, and 456.065(2)(d)1 Unlicensed practice of a healthcare profession.

Synopsis: A news article in the Sun Sentinel states an investigation into a physician and ANTHONY BOSCH is being conducted by DEA and Major League Baseball into inappropriate prescribing by the physician. According to the article, Anthony Bosch is connected to Wellness Clinics and posing himself as a medical doctor.

During the course of a nearly two month investigation, this Investigator was able to secure three sworn affidavits from individuals/patients stating ANTHONY P. BOSCH portrayed himself as a medical doctor. Each individual/patient was diagnosed and treated personally by ANTHONY P. BOSCH.

DOH COMPAS database reveals ANTHONY P. BOSCH does not hold any license with the State of Florida's Department of Health in any capacity.

On April 16, 2013, this Investigator notified the Office of the Attorney General, State of Florida, Miami Division of the investigation.

On April 23, 2013, this Investigator sent a cease and desist agreement letter and a citation to the Law Office of SUSY RIBERO-AYALA, P.A., via certified U.S. Mail.

ALL INFORMATION AND EVIDENCE WILL BE SUBMITTED TO THE PROPER INVESTIGATIVE AUTHORITIES.

Case was determined to be SUBSTANTIATED. No further action is anticipated at this time.

Related Case(s): N/A

| Investigator/Date: Jerome Hill ULA Investigator | 4/23/2013 | Approved By/Date: Patricia A. Callahan Investigations Manager | 4/23/2013 |
|---|---|---|---|

| Distribution: HQ/ISU | | | Page 1 |

Received
Investigative Services

APR 2 4 2013

DOH/MQA
Tallahassee HQ

INV FORM 300U, Created 11/08

# EXHIBIT 17



# Judge orders MLB to turn over documents detailing payments it may have made on behalf of Anthony Bosch to Lazaro Collazo's attorney

**The judge also ordered MLB to turn over any records provided by Bosch that list documents destroyed or no longer available before the Biogenesis founder agreed to cooperate with baseball investigators in June 2013.**

BY MICHAEL O'KEEFFE     Follow     / NEW YORK DAILY NEWS  /  Friday, January 9, 2015, 7:21 PM     A A /

29

SHARE THIS URL
nydn.us/1sfnjqQ

A federal judge in Miami ordered Major League Baseball to turn over documents detailing any payments it may have made on behalf of Biogenesis founder Anthony Bosch to an attorney representing Lazaro Collazo, the former University of Miami pitching coach accused of distributing testosterone and human growth hormone.

U.S. District Judge Cecilia M. Altonaga also ordered MLB Friday to turn over any records provided by Bosch that list documents destroyed or no longer available before the Biogenesis founder agreed to cooperate with baseball investigators in June 2013.

Altonaga denied a request by Collazo attorney Frank Quintero to order MLB to hand over communications about the Biogenesis investigation between MLB and law-enforcement agencies, records of any meetings MLB officials had with Bosch and other Biogenesis witnesses, and documents pertaining to MLB's investigation into slugger Manny Ramirez, who was suspended after he received a banned female fertility drug from Bosch and his father, Dr. Pedro Bosch.



ALAN DIAZ/A

**Anthony Bosch.**

The judge also rejected Quintero's request to order the U.S. Attorney's Office for the Southern District of Florida to provide him with a wide variety of government documents from the investigation into Biogenesis, which supplied performance-enhancing drugs to Alex Rodriguez and more than a dozen more major leaguers.

"These broad requests are precisely the type of 'fishing expedition' a court ma not permit," Altonaga wrote.

MLB attorneys also argued that Quintero's request for documents represented a "fishing expedition," but the judge did not completely agree; she ordered MLB to provide Quintero with some of the documents he requested by Jan. 22

Bosch and most of the other Biogenesis defendants have already pleaded guilty, and the Biogenesis founder is expected to be an important witness if Collazo and A-Rod's cousin Yuri Sucart go to trial as expected later this year.

Quintero has claimed in court papers that he needs the documents to prepare for Collazo's defense because he believes Bosch is a "paid-for-witness" who was compensated by MLB for his assistance in the investigation that led to Alex Rodriguez's season-long suspension. Quintero filed papers this week that alleged MLB provided money to Bosch's lawyers that were then used for the Biogenesis founder's drug treatment, home payments and other expenses.

Altonaga said she ordered MLB to turn over the documents because Bosch's agreement with baseball officials included not just compensation for his legal fees but payments for security, a publicist and a lawyer for his former attorney, Susy Ribero-Ayala.

"It is unfortunate that Mr. Quintero can't avail himself to an innocent defense for his client," Ribero-Ayala said earlier this week. "While his conspiracy theories are entertaining, they are untrue and a product of his imagination."

Quintero's filing from earlier this week includes a letter from DLA Piper Charles Scheeler, who assisted George Mitchell in the preparation of the former senator's 2007 report on baseball and steroids, to the U.S. Attorney Wilfredo Ferrer.

Scheeler asked Ferrer to be lenient with Bosch because he cooperated with the MLB Biogenesis probe that led to suspensions for Rodriguez and 13 other players.

"MLB vigorously maintains that Anthony Bosch has not only provided invaluable assistance to it in enabling the successful suspensions of 14 players, but also has assisted in sending an important message to the millions of young athletes who emulate their heroes and therefore feel pressure to use PES (performance-enhancing substances) in pursuit of their athletic dreams."

TAGS: alex rodriguez , biogenesis

## PROMOTED STORIES