UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 14-20550-CR-5-ALTONAGA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LAZARO DANIEL COLLAZO,

    Defendant.
    _____/

**PETITIONERS' MOTION FOR ENTRY OF CONFIDENTIALITY ORDER PROHIBITING DEFENDANT COLLAZO FROM DISCLOSING ANY AND ALL RECORDS, DOCUMENTS AND INFORMATION CONCERNING PETITIONERS OBTAINED FROM ANY FINANCIAL INSTITUTIONS PURSUANT TO RULE 17(C) SUBPOENAS AND THOSE ORDERED PRODUCED PURSUANT TO DISCOVERY AND TO COMPEL THE RETURN OF THOSE RECORDS, DOCUMENTS AND INFORMATION TO THE ENTITIES AND PERSONS WHO <u>PRODUCED THEM</u>**

    **PETITIONERS** Susy Ribero-Ayala, Susy Ribero-Ayala, P.A., Julio J. Ayala, and Law Offices of Julio J. Ayala, P.A. (collectively "Petitioners") herein move this Honorable Court, for a confidentiality order to enforce their privacy rights under Article I, Section 23 of the Florida Constitution and F.S. §655.059 and prohibit Defendant Collazo, his counsel and any affiliate from disclosing any records, documents and information concerning the Petitioners obtained from any financial institutions pursuant to Rule 17(c) subpoenas and ordered produced pursuant to Discovery and to compel their return to the respective

entities (financial institutions) and persons (Petitioners) who produced them.[1] In support, Petitioners aver:

1. Florida protects an individual's expectation of privacy in financial records. *Winfield v. Div. of Pari-Mutuel Wagering, Dep't of Bus. Regulation,* 477 So.2d 544, 548 (Fla. 1985)(discussing Fla. Const. art. I, § 23); *Berkeley v. Eisen,* 699 So.2d 789, 790 (Fla.Dist.Ct.App.1997)(noting that court orders compelling discovery constitute state action for purposes of constitutional privacy rights). In addition to constitutional protection, Florida Statutes Section 655.059(2)(b) requires financial institutions to keep confidential nonpublic account information except upon authorization from the account holder.

*Ochoa v. Empresas ICA, S.A.B. de C.V.*, 2012 WL 3260324, *6 (S.D.Fla.). *Accord Frenkel v. Acunto*, 2014 WL 4680738, *5 (S.D.Fla.)(citing *Ochoa* and *Winfield*). *Cf.* 15 U.S.C. §6802(c)[2].

2. In this case, Collazo's counsel, Mr. Frank Quintero, utilized Rule 17(c) subpoenas to obtain Petitioners' personal and business bank and other financial records. While Petitioners are aware of some entities that were subpoenaed by Collazo's counsel for records (because those entities notified Petitioners),

---

[1] This motion does not concern the propriety of the Rule 17(c) subpoenas served upon the financial institutions by Collazo's counsel, Mr. Frank Quintero, the actions taken by financial institutions in complying with those subpoenas or this Court's orders requiring Petitioners to produce documents to Collazo pursuant to Discovery.

[2] Title 15 U.S.C. §6802(c), entitled "Limits on reuse of information", provides:

Except as otherwise provided in this subchapter, a nonaffiliated third party that receives from a financial institution nonpublic personal information under this section shall not, directly or through an affiliate of such receiving third party, disclose such information to any other person that is a nonaffiliated third party of both the financial institution and such receiving third party, unless such disclosure would be lawful if made directly to such other person by the financial institution.

Petitioners believe that there are other financial institutions unknown to Petitioners who were subpoenaed that provided Collazo with records. Petitioners were also ordered to produce (and did produce) financial documents, over their objections, to Collazo pursuant to Discovery. ECF 241.

3.  On March 6, 2015, a superseding information was filed against Collazo, ECF 307, and a change of plea hearing and sentencing was scheduled before this Court for Collazo on March 16, 2015. ECF 308, 309. Upon learning that Collazo had agreed to enter a guilty plea, thus negating any further need to enforce any pending Rule 17(c) subpoenas for production of Petitioners financial records, Petitioners filed a Second Motion for Order Quashing Collazo's Subpoenas Served Upon any Banks and Other Entities. However, on March 9, 2015, this Court denied various motions as moot, including a Second Motion for Order Quashing Collazo's Subpoenas Served Upon any Banks and Other Entities, reasoning that the "filing of the Superseding Information" and "the change of plea hearing scheduled for Defendant … Collazo on March 16, 2015" made it "appear[] the Defendant [was] no longer … seeking the documents at issue…." ECF 311:1. While this Court's Order addressed mootness in terms of Collazo's lack of authority to obtain documents pursuant to a Rule 17(c) subpoena *after* the March 6, 2015 filing of the Superseding Information (because clearly he could not), this motion concerns whether Mr. Quintero, or his affiliates, can exploit reusing those records he did obtain pursuant to Rule 17(c) subpoenas and through Discovery for any other purpose, in connection with any other matter or by any other person or entity.

3

4. Although undersigned counsel previously requested Mr. Quintero to return all of Petitioners private banking information, which also included banking information belonging to their two daughters, ages 19 and 15, because he now has no legitimate purpose for keeping or reusing those records,[3] Mr. Quintero advised undersigned counsel (in emails shortly after this Court issued the March 9, 2015 Order) that "[a]ll documents obtained are part of my investigation and will not be returned", and that he would "not be returning any documents to any third party which provided records pursuant to valid subpoenas issued by [him]".

---

[3] On March 5, 2015, Petitioner Ribero-Ayala received notice from Wells Fargo Bank informing her that a subpoena had been issued for her private bank records on February 13, 2015 and requesting a return of those records by March 2, 2015. The envelope from Wells Fargo was postmarked on February 28, 2015 and was received by Petitioner Ribero-Ayala on March 5, 2015. As the letter from Wells Fargo did not provide an e-mail or the name of a person in order to object to the dissemination of her private banking information, Petitioner Ribero-Ayala called the phone number listed in the letter and left a voice mail informing Wells Fargo of her objection to the production of banking documents in response to the subpoena issued by Mr. Quintero. Petitioner Ribero-Ayala also communicated via telephone and in writing with Jazzlene Rivera, an officer at Wells Fargo Branch office located at 2525 Ponce de Leon Boulevard, Coral Gables, Florida, informing her of her objection to the production of her private banking information.

Despite Petitioner Ribero-Ayala's expressing her objection to the production of her private banking records to any third party, Wells Fargo nonetheless produced her bank records to Mr. Quintero on Friday, March 6, 2015. Since Mr. Quintero accepted production of those records that day notwithstanding that his client had already agreed *before* March 6, 2015 to enter a guilty plea in this case (as evidenced by the docketing on March 6, 2015 of a superseding information charging Collazo with two misdemeanors and scheduling of Collazo for a change of plea and sentencing to be held on March 16, 2015), not only was acceptance of those records illegal but so is his continued retention of them, as well as any prospective reuse.

5. However, a Rule 17(c) subpoena "only reaches specifically identified documents that will be admissible as evidence *at trial….*" *United States v. Silverman,* 745 F.2d 1386, 1397 (11th Cir.1984)(emphasis added). *Accord United States v. Robinson*, 445 Fed.Appx. 238, 244, 2011 WL 5025843, **5 (C.A.11 (Ga.))(Rule 17(c) "only reaches specifically identified documents that will be admissible as evidence at trial"). Since a defendant is only allowed to obtain records and documents pursuant to a Rule 17(c) subpoena for the limited purpose of using them at trial, once he enters a guilty plea or the trial is concluded, a defendant no longer has any recognized right to retain or use those records or documents. Mr. Quintero's suggestion that the records and documents he subpoenaed (but never got to use at trial because his client plead guilty) and possesses have now become his property and/or that he has acquired a greater right than the privacy interests Petitioners continue to have in those documents and records is simply unsupported by any legal authority. Since he has no further lawful need for those records after the conclusion of this case, neither Collazo nor his counsel or affiliates has any further right to retain or disseminate them. Given that Collazo's counsel obtained Petitioners' private financial records through the enforcement of Rule 17(c) subpoenas issued by Collazo's counsel and this Court's discovery orders in this case, it is appropriate that this Court order the appropriate relief herein which will preserve Petitioners' continued privacy rights in their financial information.

6. What reason could Mr. Quintero possibly have to want to keep Petitioners' financial records? While Petitioners are unaware of any basis which would allow Mr. Quintero to legally retain and use Petitioners financial information after Collazo entered his guilty plea, his refusal to return Petitioners' financial records to the entities or individuals who provided it to him creates in Petitioners a well-founded fear that Mr. Quintero will improperly reuse the records he obtained in this case pursuant to subpoenas and through discovery to further his own or his firm's interests and/or advance someone else's by impermissibly and illegally disseminating information from Petitioners' banking information to the media and others to mischaracterize the use of funds used for Bosch's defense and continue to malign Petitioners' reputation by distorting and fabricating evidence of wrongdoing.

Mr. Quintero's recent actions further support Petitioners' concerns. For example, on Wednesday, March 11, 2015, Mr. Quintero resorted to pandering to the print media by making disparaging and inflammatory extrajudicial accusations about Petitioners based on the records he obtained – legally and illegally -- pursuant to the Rule 17(c) subpoenas.

> Quintero said it was his responsibility as a defense lawyer to attack Bosch — both MLB's and the prosecution's star witness. He also said the Ayalas have dodged tough questions about financially supporting Bosch with MLB's payments by shifting the blame to him.
>
> "The Ayalas once again seek to divert attention from the real issues by blaming me and my office for exposing through documentary evidence the improper conduct of the Ayalas, MLB, Badree and Bosch family members and friends in diverting monies to Bosch in violation of his contract with MLB," Quintero said in a statement.

> Quintero said the Ayalas have "diverted attention" away from the misconduct of Bosch and the others who "interfered" with state and federal criminal investigations and who "violated" Florida and U.S. privacy rights on disclosing medical records.
>
> "And the list goes on," said Quintero, who issued a challenge to the Ayalas, MLB and Badree to agree in writing to allow him to disclose all of the case's financial records to the media. "Let the press decide who's telling the truth."

See *The Miami Herald*, http://www.miamiherald.com/news/local/crime/article13244282.html.

The disclosure by Mr. Quintero to *The Miami Herald* and their readership that the financial records he obtained would, if Petitioners agreed to allow him to release them, prove his allegations, is an example of the type of conduct Florida's Constitution and the Florida legislature[4] intended to limit with respect to the reuse of information contained in financial records obtained by a litigant pursuant to a subpoena (even assuming *arguendo* that what Mr. Quintero has alleged was actually true). Since Collazo has already plead guilty to possessing an anabolic steroid testosterone on two occasions and was sentenced by this Court to probation on March 16, 2015, Mr. Quintero can no longer use pleadings and the press to blame Major League Baseball, the Government, Anthony Bosch and his attorneys and others, for somehow framing his formerly innocent client.

7. Petitioners herein seek to enforce their privacy rights under Article I, Section 23 of the Florida Constitution and F.S. §655.059 to prohibit the reuse of their financial records obtained by Mr. Quintero in this case for any other purpose

---

[4] *See, e.g.*, F.S. §655.059(c)("A person who willfully violates the provisions of this section that relate to unlawful disclosure of confidential information is guilty of a felony of the third degree…."

or by anyone else. To assure nonparties like Petitioners that their confidential financial records will not be disclosed or reused after the conclusion of the case in which production is compelled, federal district courts in Florida have approved confidentiality orders limiting the documents' use to the pending litigation. *Cf. Berlinger v. Wells Fargo, N.A.*, 2012 WL 640708, *8 (M.D.Fla.); *Callaway v. Papa John's USA, Inc.*, 2010 WL 4024883, *2 (S.D.Fla.).[5]

    *8.* Moreover, United States District Court Judge Zloch, in *Green Bullion Financial Services, LLC v. Money4Gold Holdings*, 2009 WL 799436, *1 (S.D.Fla.), entered a Confidentiality Order concerning the discovery of a party's confidential business practices which directed the return of the confidential documents produced in discovery to the entities that produced them at the conclusion of the litigation.[6]

---

[5] An attorney's violation of a confidentiality order may subject him to sanctions. *Cf. Roberts v. Bonati*, 133 So.3d 1212 (Fla. 2nd DCA 2012)(appellate court affirmed finding that plaintiff's attorney had violated confidentiality order by disclosing defendants' financial information in an email outside of the case and justified imposition of compensatory contempt sanction).

[6] In relevant part, Judge Zloch ordered that

> 3. No Confidential Information shall be disclosed or exhibited to any person other than (1) the Parties and their employees, agents, and representatives; (2) Counsel for the Parties and their paralegal, secretarial, and clerical employees; (3) any testifying or non-testifying expert or consultant engaged or utilized by the Parties to assist in the preparation of this case; (4) the Court; or (5) any court reporter or translator employed for purposes of deposition or other recording of testimony in this litigation, including persons operating video recording equipment at depositions;
>
> 4. The requirements in Paragraph 3 are to be maintained both during and after the conclusion of this litigation; and

9. In the best of all possible worlds, Mr. Quintero and undersigned counsel should be able to agree upon a confidentiality order to protect Petitioners' privacy interests in their business and personal financial records. *See, e.g., Her v. Regions Financial Corp.*, 2007 WL 2806558 (W.D.Ark.)(in discussing whether financial information obtained pursuant to judicial process should be maintained as confidential by all parties to the case pursuant to a protective order, the district court noted "that the parties ha[d] agreed that the discoverable information [wa]s to be held confidential by the Plaintiff and shall only be used for the purpose of this litigation and shall not be disclosed to any other party or entity except as is necessary to prosecute this case."). *See also Frenkel v. Acunto*, 2014 WL 4680738, *6 (S.D.Fla.)(while denying Non–Parties' Renewed Motions for Protective Order and to Quash Subpoena Duces Tecum concerning production of its Citibank financial records, Court ordered parties to provide to the Court a proposed Agreed Confidentiality Order for its approval).

10. However, in an email sent to Mr. Quintero on March 16, 2015 pursuant to Fla.L.R.88.9(a), undersigned counsel inquired whether he would agree to the entering of a confidentiality order with the provisions set forth below to obviate filing this motion. In response, Juan P. Broche, Mr. Quintero's law partner, "advised that we do not agree to the relief sought as conveyed in this morning's

---

5. Upon conclusion of this litigation, including any appeal, all Confidential Information and copies thereof and all deposition transcripts or discovery responses containing or referring to the Confidential Information shall be returned to the Party producing the same.

*Id.*

email" and to "please feel free to file whatever Motion(s) you wish and we will respond to any such filing(s) accordingly." Based on that response, Petitioners request the following Confidentiality Order directing Mr. Quintero and his affiliates to:

a. Identify the financial institutions from which he obtained documents concerning Petitioners pursuant to Rule 17(c) subpoenas;

b. Return any documents which he obtained from financial institutions concerning Petitioners pursuant to Rule 17(c) subpoenas to Petitioners to the entity that produced;

c. Return to Petitioners all documents which Petitioners were ordered to produce in Discovery to Collazo;

d. Not make, retain or disseminate copies of any documents obtained from financial institutions concerning Petitioners pursuant to Rule 17(c) subpoenas or ordered produced by Petitioners to Collazo by this Court ;

e. Disclose if any documents subpoenaed by Collazo or ordered produced by Petitioners by this Court have been disseminated to any other person or entity (and if so, who);

f. Retrieve any subpoenaed records or documents ordered produced by Petitioners by this Court that it has disseminated to any other person or entity;

g. Not discuss the contents of any records subpoenaed or ordered produced by Petitioners by this Court with any other person or entity.

11. Due to the privacy claims made by Petitioners, undersigned counsel further requests that any response filed by Mr. Quintero to this motion be restricted to the issues presented herein and not serve as yet another opportunity to further disclose the very confidential records (or opinions about them) that are the subject of this motion.

Wherefore, the Petitioners move this Honorable Court to grant the foregoing motion.

10

>Respectfully submitted,
>
>By: /S/ Susy Ribero-Ayala
>Susy Ribero-Ayala, Esq.
>201 Alhambra Circle
>Suite 1200
>Miami, Florida 33134
>Tel.: 305-854-4711
>Email: Susy@Riberoayala.com

## Certificate of Service

**I hereby certify** that on March 16, 2015 a true and correct copy of the foregoing document was filed with the Clerk of this Court and served by CM/ECF on counsel of record.

>/S/ Susy Ribero-Ayala
>Susy Ribero-Ayala